UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS POWER, | Civil Division |
| Plaintiff, | |
| | Docket No. 2:17-CV-00154-MRH |
| v. | |
| | Hon. Mark R. Hornak |
| HEWLETT-PACKARD COMPANY, | |
| Defendant. | February 2, 2021 |

### DEFENDANT HP INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S EXPERT DISCLOSURES

The Defendant, HP, Inc., incorrectly named as Hewlett-Packard Company ("HP"), hereby submits this memorandum of law in support of its Motion to Strike the Plaintiff's Expert Disclosures, dated February 2, 2021. From the beginning of this case, "Plaintiff's claims [were] based on the fact that defendant manufactured, marketed and sold a laptop, lithium ion battery and charger, one of which caused the laptop and lithium ion battery to overheat, ignite and explore on plaintiff causing him to suffer severe burns." Doc. 53 at 4.  From the beginning of this case, HP maintained a corresponding defense: that it did not design, manufacture, or approve the battery that exploded. *See* Doc. 8 at 11-12. The Plaintiff has consistently denied this special defense, including when posited in discovery. The parties have accordingly conducted over three years of discovery about the defects alleged by the plaintiffs, including depositions and costly forensic examinations of evidence. Now–after the close of fact discovery–the Plaintiff has disclosed expert reports by Kenneth J. Kutchek, P.E., CFEI and William F. Kitzes, J.D. that **acknowledge** that HP did **not** design, manufacture, or approve the battery that allegedly exploded, and instead opine that HP failed to adequately prevent or warn the Plaintiff from using

non-HP approved batteries.  The plaintiff never amended his pleadings nor supplemented his responses to reflect this acknowledgment at any time prior to the close of discovery. The Court should not condone the Plaintiff's improper "surprise" expert disclosures. Accordingly, the Court should strike the expert reports of Kenneth J. Kutchek, P.E., CFEI and William F. Kitzes, J.D.

## BACKGROUND

The Plaintiff's Complaint, dated January 18, 2017, alleged that HP designed, manufactured, and sold a defective notebook, lithium ion battery, and charger, and that those defects caused short circuiting and explosion that resulted in his burn injuries. *See* Complaint, ¶¶ 30, 32, 41, 45, 48, 52, 53. In the Complaint's claims of products liability, negligence, and breach of warranty claims, it specifically alleged that HP defectively designed and manufactured the notebook, lithium ion battery, and charger by failing to provide safety features or warnings to prevent short-circuiting in the normal and intended manner. *See id*. at ¶¶ 40, 46, 52. No mention was made of an alleged after-market battery in the Complaint.

In correspondence dated June 14, 2017, HP advised the Plaintiff, "the battery pack at issue is an after-market battery not approved for use by HPI." Doc. 19-3. HP further advised that there was accordingly no good faith basis for the plaintiff to pursue its defect claims against HP. *Id.* On June 16, 2017, the Plaintiff responded with an Emergency Motion to Compel Production of Responses to Plaintiff's Discovery Requests and Laptop Inspection Information. Doc. 19.  HP replied that it had produced all the evidence it had collected from its inspection of the notebook, and that evidence showed that the battery was not an HP-approved battery. Doc. 22 at 3, 5.

On September 21, 2017, the Plaintiff served his initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1). Those disclosures included "Screenshot of the PayPal.com receipt evidencing plaintiff's purchase of the subject laptop, charger and lithium-ion battery" and

"Photographs taken by plaintiff of subject laptop and charger as described in plaintiff's complaint." *See* Plaintiff's Initial Disclosures, attached hereto as Exhibit A, at § II(1), (2). No mention was made of an alleged after-market battery in Plaintiff's initial disclosure.

On January 30, 2018, HP answered the Plaintiff's interrogatories–all of which requested information concerning HP's design, manufacture and testing of the notebook, lithium ion battery, and charger–by stating that the battery at issue was not designed or manufactured by HP, was not HP-approved, and is otherwise of unknown origin. *See* Affidavit of Christopher Betke, attached hereto as Exhibit B, ¶ 4.

On March 22, 2018, the Plaintiff answered HP's interrogatories. In response to HP's inquiry as to how the incident occurred, the Plaintiff answered, "the at issue HP Elitebook Mobile Workstation and/or HP charger overcharged and/or allowed one or more cells to overheat, thereby causing an explosion." *See* Plaintiff's Answers to Defendant's Interrogatories, attached hereto as Exhibit C, ¶ 5. In response to HP's inquiry concerning specifications of alleged design and manufacturing defects, the Plaintiff identified six specifications of defects, including that: [1] the AC adapter overcharged, [2] the notebook and AC adapter failed to prevent overcharging, [3] the notebook and AC adapter failed to prevent overheating, [4] the thermal sensors and temperature regulators of the notebook and AC adaptor failed to prevent overcharging and/or overheating. *Id.*, ¶¶ 10, 11. The Plaintiff further disclosed that he retained a consultant to determine "whether or not the at-issue HP-brand AC Adaptor, bearing model number F3-07100343220C, overcharged the batteries and/or cells in the laptop." *Id.,* ¶ 12. The Plaintiff also produced both redacted data and video from the examination, purporting to illustrate that an HP AC adaptor overcharged the batteries. *See* Plaintiff's Answers to Defendant's Requests for Production, attached hereto as Exhibit D, ¶¶ 7, 18.

The Plaintiff's specifications also included that: [5] the notebook, AC adaptor, and/or product literature failed to warn about the risk of using non-HP batteries, and [6] the notebook and AC adaptor failed to warn via software about the risk of using non-HP batteries. Exhibit C, ¶¶ 10, 11. However, as to these last two specifications, the Plaintiff added the caveat, "it is not admitted that the at issue batteries or cells were not HP approved." *Id.* The Plaintiff further refused to answer whether he disputes that the battery was not original, stating only "it is not admitted that the at issue batteries or cells were not HP approved. Discovery in this matter is ongoing, and Plaintiff reserves the right to supplement this Answer." *Id.* ¶ 12. Importantly, Plaintiff never supplemented these discovery responses, nor did Plaintiff amend his prior pleadings to make this claim.

On July 26, 2018, HP filed a Motion for Protective Order seeking to quash the Plaintiff's Rule 30(b)(6) deposition notice of an HP corporate designee. Doc. 49. In his response, Plaintiff referred to his interrogatory responses and the allegations of his Complaint and summarized them as follows: "Plaintiff's claims are based on the fact that defendant manufactured, marketed and sold a laptop, lithium ion battery **and** charger, one of which caused the laptop and lithium ion battery to overheat, ignite and explode on plaintiff causing him to suffer severe burns." Doc. 53 at 4 (emphasis added). In other words, Plaintiff was, again, contending the alleged defects were original to the notebook computer.

During the November 26, 2018, deposition of David Pipho, an HP electrical hardware engineer, Mr. Pipho was asked if HP was aware that non-HP approved batteries existed. Exhibit B, ¶ 5. Mr. Pipho responded that he was aware and that the notebook was designed to function with HP-approved batteries. *Id*. When asked if there was a software warning concerning unapproved batteries, he said he was not sure. *Id*. Mr. Pipho was asked no other questions on this issue. However, he was questioned extensively concerning the AC adaptor. *Id.*

On June 3, 2019, the Plaintiff moved to compel a second Rule 30(b)(6) deposition. Doc. 72. Specifically, the Plaintiff requested a second deposition because Mr. Pipho was unable to answer the question, "for the battery pack that is sold with the at-issue notebook, looking at the specifications, can you describe the difference between nominal voltage and rated charge voltage?" Doc. 72 at 2. Notably, Plaintiff did not seek to compel further testimony about an after-market battery but, instead, testimony about a battery sold by HP **with** the at-issue notebook. HP objected because, among other things, the second 30(b)(6) notice of deposition sought discovery on the battery "sold with the laptop," despite the fact that its position was the at-issue battery was not sold with the laptop. Doc. 74 at 7-8.

Nevertheless, the Court ordered a limited second 30(b)(6) deposition. Doc. 75. During the July 18, 2019 deposition of John Wozniak, who formerly oversaw battery development and qualification for HP, Mr. Wozniak testified extensively regarding overcharging and short-circuiting of batteries original to HP. Exhibit B, ¶ 6. When asked if there was an aftermarket battery software alert, Mr. Wozniak replied there was not because it was not industry standard at the time. *Id.* Those were the sole questions put to Mr. Wozniak on the topic. *Id.*

On May 23, 2019, the parties conducted a CT examination of the notebook at issue. Doc. 82 at 2. HP required higher quality imaging and so arranged for a second round of CT imaging at a different facility on September 30, 2019. Doc. 84 at 1.

On February 7, 2020, the parties stipulated to mediation of the case. Doc. 88. On July 14, 2020, the parties reported that they were unable to resolve the case by mediation. Doc. 103.

On October 30, 2020, the plaintiff served his expert disclosure, which included expert reports by Kenneth J. Kutchek, P.E., CFEI and William F. Kitzes, J.D. Mr. Kutchek opined that HP failed to authenticate battery packs installed in its notebook computers and failed to inform or

5

warn the user of a non-HP approved battery pack installed in its notebook computers. Kutchek Expert Disclosure, attached hereto as Exhibit E, at 16. Mr. Kutchek concluded," [h]ad HP prevented the use of non-HP approved battery packs, this incident would have been prevented." *Id*. Mr. Kitzes opined that HP failed to include a written warning concerning using non-HP approved battery pack on the AC adapter or in the form of a battery authentication alert. Kitzes Expert Disclosure, attached hereto as Exhibit F, at 12-13, 34-35. Mr. Kitzes further concluded that HP failed to assist users in selecting HP approved replacement batteries. *Id.* Both Mr. Kutchek and Mr. Kitzes concluded that the battery at issue was not an HP approved battery pack. Exhibit E at 12; Exhibit F at 13.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 26(e)(2)(B) requires a party who has responded to an interrogatory or request for production to "supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Federal Rule of Civil Procedure 37(c)(1) provides the sanction for a party's failure to comply: "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The Third Circuit Court of Appeals has set forth the following factors to consider when excluding an untimely or improper disclosure under Federal Rule of Civil Procedure 37:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.

6

*Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). District courts are also to consider the "importance of the excluded testimony." *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997).

## ARGUMENT

### I. Admission of the Expert Reports Would Result in Surprise Against HP

The surprise to HP is significant because from the outset, "Plaintiff's claims [were] based on the fact that defendant manufactured, marketed and sold a [1] laptop, [2] lithium ion battery and [3] charger, one of which caused the laptop and lithium ion battery to overheat, ignite and explore on plaintiff causing him to suffer severe burns." Doc. 53 at 4. Indeed, in the face of HP asserting over and over, that the battery at issue was **not** an HP approved battery, Plaintiff refused to concede the point, never amended his pleadings, and, over and over, asserted his position that HP sold and distributed a defective battery. Further, Plaintiff has always claimed that HP defectively designed and manufactured the notebook, the battery, and the charger, and those defects caused the battery to explode. Now, after fact discovery is closed, his experts opine that HP did not sell, design, and manufacture the battery, but it is nevertheless liable for failing to prevent or warn against the use of non-HP approved batteries.

The Plaintiff initially alleged HP's defective design and manufacture of the notebook, battery, and charger in his Complaint. *See* Complaint, ¶¶ 30, 32, 41, 45, 48, 52, 53. He never amended that Complaint to allege that a third party manufactured the battery, or to allege that HP failed to prevent or warn against non-HP approved batteries, notwithstanding HP's special defense. Doc. 8. He initially disclosed documents "evidencing [his] purchase of the subject laptop, charger, and lithium ion battery" to HP. Exhibit A, § II(1), (2).

7

The Plaintiff then sought discovery concerning HP's alleged defective design and manufacture of the battery, notwithstanding HP's continued denials that it manufactured the battery at issue. Exhibit B, ¶ 4. He never served any additional discovery concerning non-HP approved batteries.

The Plaintiff provided written discovery responses to HP stating that the AC adapter was defectively designed and manufactured and caused overcharging that resulted in the explosion. Exhibit C, ¶¶ 5, 10, 11. The Plaintiff provided a redacted video of an expert consultant performing his analysis of the AC adapter, as well as redacted data from that analysis. Exhibit D, ¶¶ 7, 18. The Plaintiff never formally disclosed this expert, and never disclosed his or her unredacted analysis. This expert's theory–that the AC adapter caused overcharging–has apparently been abandoned by the Plaintiff, without any notice or supplement to HP. *See* F.R.C.P. 26(e).

In his written responses, the Plaintiff refused to state any facts supporting the contention that the battery at issue was HP approved. Exhibit C, ¶ 12. Equally, he refused to admit the battery was non-HP approved. *Id.* Though the Plaintiff noted that discovery remained ongoing and expressly reserved the right to supplement, he never did, in violation of Federal Rule of Civil Procedure 26. *See* F.R.C.P. 26(e).

At the depositions of the Plaintiff and HP's two corporate designees, the Plaintiff directed virtually all of his inquiries towards the claims actually alleged in his Complaint–that HP defectively designed and manufactured the notebook, battery and charger, and that those defects caused the overcharging, overheating, and explosion. Indeed, the Plaintiff moved to compel a second HP corporate designee deposition, that of Mr. Wozniak, expressly pertaining to the nominal voltage and rated charge of "the battery sold with the subject laptop." *See* Docs. 80, 72-2 at 3. Clearly, this would be irrelevant discovery if the battery at issue was not "sold with the subject

laptop." *Id.* Based on Plaintiff's positions, the Court ordered the deposition. The parties conducted multiple costly forensic analyses of the subject laptop precisely because the Plaintiff continued to allege that HP defectively designed and manufactured the notebook, battery, and charger, and that those defects caused the overcharging, overheating, and explosion.

Now, after all of this, the Plaintiff has disclosed experts that opine HP did not design and manufacture the battery after all. Nor do his experts opine that the HP notebook or charger was defectively designed and manufactured, which caused overcharging, overheating and explosion. Instead, they opine that HP failed to prevent or warn adequately against the use of non-HP approved batteries. This is essentially a new theory not adequately pled.

**II.     Admission of the Expert Reports Would Result in Prejudice Against HP**

The prejudice to HP in the Plaintiff's improper expert disclosures is significant. Fact discovery is now closed. The Plaintiff and HP's two 30(b)(6) witnesses have been deposed. HP was constrained both to retain an engineering expert to address a theory of liability the Plaintiff has only now disclosed after over three years of litigation, and to finalize and disclose that expert's report in two months. Had the plaintiff previously supplemented his discovery responses to state that the at issue battery was non-HP approved and the notebook was defective for failing to prevent or warn against the use of non-HP approved batteries, HP would have developed the factual record differently. HP would have queried the Plaintiff at length concerning potential warnings–if the Plaintiff would not have acted differently, his claim would fail. HP would have made in-depth discovery of Plaintiff's knowledge of, and adherence to warnings that were given. HP would have proffered its witness to testify on the applicable standards governing written warnings, or potentially have designated different witnesses. Importantly, HP would not have proceeded with

additional costly forensic examinations and CT scans of the battery, which obviously would disclose nothing in respect of written warnings.

HP would also have proceeded with expert discovery differently. HP could have retained further experts who could address the industry standard of the non-HP approved battery software alert in 2008. HP could have done discovery of others in the industry. HP may also have retained safety experts to rebut Mr. Kitzes and to address the standards governing written warnings.

There is no way to know how HP's expert opinions would have developed had the plaintiff timely informed HP of defective design claims in respect of the aftermarket battery software alert or failure to warn in respect of the battery charger. *See Finjan, Inc. v. Rapid7, Inc.*, 2020 U.S. Dist. LEXIS 178523, *9 (D. Del. September 28, 2020) (Stover, C.) (striking expert report alleging new infringement theories). Simply put, the Plaintiff did not pursue claims of defective design in respect of the non-HP battery software alert or failure to warn until the plaintiff served his expert disclosures. *See Tq Delta v. Adtran, Inc.*, 2019 U.S. Dist. LEXIS 155470, *4 (D. Del. September 12, 2019) (Andrews, J.) (same). Indeed, Plaintiff refused to concede it was an after-market battery at all. As a result, the Plaintiff's disclosure therefore provides an "entirely new basis" for its theory of liability. *See McDaniel v. Kidde Residential & Commer.,* 2015 U.S. Dist. LEXIS 148892, *14 (W.D. Pa. November 3, 2015) (striking supplemental expert report).

### III. There Is No Opportunity for HP to Cure the Prejudice that Would Result from Admission of the Expert Reports

From the start, HP repeatedly raised the issue of the non-HP approved battery with the Plaintiff, affording multiple opportunities to amend pleadings and to concede the battery at issue was not originally sold with the notebook at issue. Yet, Plaintiff never did so, instead steadfastly refusing to concede the point–until after the close of discovery when he submitted his expert reports. With HP's expert designations due, HP was faced with "two bad options: either scramble

to have an expert respond … or offer no response and risk not preserving an opinion for trial if the pending Motion to Strike [is] denied." *Galderma Labs., L.P. v. Amneal Pharms., LLC*, 2018 U.S. Dist. LEXIS 9538, 2018 WL 508876, *2 (D. Del. Jan. 22, 2018) (Stark, J.). While HP chose the former–disclosing an expert engineering report at the very close of expert disclosure–it has suffered patent prejudice in being constrained to do so.

Nor will a modification of the scheduling order to allow HP to conduct additional factual and expert discovery provide an opportunity to cure the prejudice. HP has conducted multiple days of depositions and forensic examinations in respect of the plaintiff's previously articulated theory of defect. HP was required to litigate the scope of both of the depositions of its corporate designees. Docs. 49, 74. Plaintiff obtained the second deposition based on the claim he has now abandoned. HP has expended significant time and costs in respect of this discovery–as has the Court–all of which must be reviewed, reassessed and revisited in view of the Plaintiff's expert disclosures.

### IV.     Admission of the Expert Reports Would Disrupt an Orderly and Efficient Trial

Further, such a modification of the scheduling order, which HP would require to conduct additional factual and expert discovery, would necessarily delay both dispositive motions and trial. While the Court could so modify the scheduling order to permit HP needed additional discovery, "the Court would then reward [plaintiff's] failure to disclose … and further delay resolution of [this] matter." *Mercedes Benz USA LLC v. Coast Auto. Grp. Ltd.*, 2008 U.S. Dist. LEXIS 72172, at *10 (D.N.J. Sep. 23, 2008) (Walls, J.) (striking expert rebuttal report).

### V.     The Plaintiff's Failure to Supplement His Discovery Responses Was Willful

While HP is not in a position to state if Plaintiff acted in bad faith in failing to supplement his discovery responses concerning whether the battery at issue was not HP-approved prior to his recent expert disclosures, his failure is apparently willful. The Plaintiff never disclosed that he

11

abandoned the allegation that HP defectively designed and manufactured the battery at issue–not after the deposition of either of HP's corporate designees or after the deposition of the Plaintiff. Indeed, Mr. Kutchek, the Plaintiff's engineering expert who opined the at-issue battery was not HP-approved, reported that he examined the notebook on December 19, 2019. Exhibit E at 6. At a minimum, in the 314 days between that date and the Plaintiff's October 30, 2020, expert disclosures, during which time Mr. Kutchek was presumably finalizing his report, the Plaintiff never disclosed that he no longer alleged an HP adapter overcharged an HP-approved battery and caused the explosion. "Even if there is no evidence of bad faith, where an oversight is not rationally explained and is surely prejudicial, exclusion is appropriate." *Mercedes Benz, supra,* at *11.

## CONCLUSION

The Plaintiff, with his disclosures of Mr. Kutchek and Mr. Kitzes' reports, attempts to pursue a new theory of defect–failure to prevent or warn against the use of non-HP batteries–for the first time in this case. Admission of their reports would result in surprise and prejudice to HP because the Plaintiff had previously maintained that HP defectively designed and manufactured the notebook, battery, and charger, and that those defects caused overcharging and explosion. There is no reasonable opportunity for HP to cure the prejudice that would result from the admission of the expert reports, because even a modification of the scheduling order will delay dispositive motions and trial during the conduct of unnecessarily cumulative discovery.

Respectfully submitted,

*/s/ Michael A. Weiner*

_____

Michael A. Weiner, Esquire
PA I.D. #93640
Bennett, Bricklin & Saltzburg LLC
707 Grant Street, Suite 1800
Pittsburgh, PA 15219
Phone: (412) 894-4101
Fax: (412) 894-4111
weiner@bbs-law.com
Attorney for HP, Inc.