**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS POWER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    2:17-cv-00154 |
| | ) |
| HEWLETT-PACKARD COMPANY, | ) |
| | ) |
| Defendant. | ) |

**<u>OPINION</u>**

**Mark R. Hornak, Chief United States District Judge**

Before the Court is Defendant Hewlett-Packard Company's ("HP")[1] Motion to Strike Plaintiff Thomas Power's ("Power") expert report disclosures pursuant to Federal Rules of Civil Procedure 26(e)(1)(A) and 37(c)(1). (ECF No. 111.) HP says that those disclosures and testimony resulting from them should be removed from this case because they are based on liability theories never previously and properly disclosed by Power; that HP was unfairly surprised by the assertion of those theories; and that HP would be unfairly prejudiced by the Plaintiff's presentation of testimony based on them at trial.

After considering the Motion, the papers of record, and the arguments of counsel presented at an oral argument on the Motion, the Court concludes that (1) the expert disclosures do not expound a new and undisclosed theory of liability; (2) from an objective standpoint, HP would not be considered as being "unfairly surprised" by the expert opinions and the premises for them as set out in Power's expert disclosures; and (3) HP is not unfairly prejudiced by the consideration

---

[1] Defendant notes that it is improperly named as "Hewlett-Packard Company," indicating that its proper business name is "HP, Inc." (ECF No. 112, at 1.) The Court refers to Defendant as "HP" throughout this Opinion.

1

of these expert disclosures and related testimony in this case. As a result, the Court denies HP's Motion to Strike. (ECF No. 111.)

## I.     BACKGROUND

The Court draws the facts material to its resolution of this Motion from Power's Complaint (ECF No. 1-2) as well as the parties' briefing on the Motion to Strike. (ECF Nos. 111, 112, 112-1–112-6, 115, 115-1–115-2, and 117.)

Thomas Power purchased an HP laptop computer using www.ebay.com. (ECF No. 1-2, at 7.) The HP laptop was powered by a rechargeable lithium ion battery. (*Id.*) While Power was using the laptop, Power suffered "severe thermal and chemical burns as a result of the lithium ion battery cells contained in the subject laptop short circuiting, overheating, igniting," and exploding on Power's "arms, hands, torso[,] and lower extremities." (*Id.* at 5.) In his Complaint filed on January 18, 2017, Power raises several theories of liability against HP: (1) strict products liability; (2) negligence; and (3) breach of warranty. (*Id.* at. 9–15.) HP answered Power's Complaint and raised several affirmative defenses. (ECF No. 8.) Fact discovery began in or around June 2017 and ultimately concluded in or around January or February 2020. (ECF Nos. 18, 80, 84, 87, 89.) On September 10, 2020, after a hiatus in the proceedings to permit mediation, the Court entered the following post-fact discovery deadlines Order: Power's expert disclosures were to be filed on or before October 30, 2020; HP's expert disclosures were to be filed on or before November 30, 2020; depositions of Power's experts to be completed on or before December 30, 2020; and depositions of HP's experts to be completed on or before January 30, 2021.[2] (ECF No. 106.)

---

[2] Upon motion of the parties (ECF No. 120), the post-fact discovery deadlines were subsequently modified as follows: "deposition of Plaintiff's experts and the deposition of Defendant's experts shall be completed within 45 days of this Court's ruling on the Motion to Strike dated February 2, 2021, and all dispositive motions including Motions for Summary Judgment shall be filed within 30 days thereafter." (ECF No. 121.)

2

On October 30, 2020, Power timely disclosed two expert reports. (ECF Nos. 112-5 and 112-6.) In both reports, the experts opine that HP failed to authenticate battery packs installed in its notebook computers, and that HP failed to adequately prevent or warn Power from using non-HP approved batteries. (ECF Nos. 112, at 6; 112-5; and 112-6.) Both experts also conclude that the battery at issue here was not an HP-approved battery. (*Id*.)

On February 2, 2021, HP filed a Motion to Strike both expert disclosures pursuant to Rules 26(e)(1)(A) and 37(c)(1). (ECF Nos. 111 and 112.) Power opposed the motion, ECF Nos. 115 and 116, and HP filed a reply, ECF No. 117. On March 16, 2021, the Court held Oral Argument on the Motion. The matter is now ripe for disposition.

II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(e)(1)(A) provides that throughout discovery, a party is "under a duty to supplement or correct [a] disclosure or response to include information thereafter required if . . . the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *See Nicholas v. Pa. State Univ*., 227 F.3d 133, 148 (3d Cir. 2000). When a litigant fails to satisfy this duty, an opposing party may seek sanctions through Federal Rule of Civil Procedure 37(c)(1), which states that upon such a failure "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."

In determining "whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties," *see Nicholas*, 227 F.3d at 148, the Third Circuit instructs district courts to consider the following factors: "(1) 'the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified' or the excluded evidence would have been

3

offered; (2) 'the ability of that party to cure the prejudice'; (3) the extent to which allowing such witnesses or evidence would 'disrupt the orderly and efficient trial of the case or of other cases in the court'; (4) any 'bad faith or willfulness in failing to comply with the court's order' [where applicable]; and (5) the importance of the excluded evidence." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985)). According to the Third Circuit, "the importance of the evidence is often the most significant factor." *Id*.

### III. DISCUSSION

HP's Motion raises two central claims, namely that the liability theories set out in Power's expert reports, and his and their concession that the involved battery was not of HP origin, were unfair surprises, ones that arose from a failure of Power to timely supplement or amend his Complaint and/or his prior discovery responses. (ECF No. 112, at 6–9).

The core issue now before the Court is whether HP's requested remedy, that is to exclude both of Power's expert disclosures, is warranted. The resolution of that question turns on two more specific, yet straight-forward inquiries. First, whether the failure-to-warn theory of liability pertaining to non-HP manufactured, designed, or approved batteries was raised for the first time in Power's expert disclosure reports, and if so, should that lead to their exclusion from the case. And second, whether Power's failure to supplement discovery responses to reflect his concession as to the origin of the involved battery should lead to exclusion of the expert reports. Based on the record before it, the Court concludes that (1) this theory of liability was raised at point in time materially earlier than Power's disclosure of his expert reports, and that (2) the concession as to

4

the origin of the involved battery has not been shown to have materially impacted the arc of the pretrial proceedings. As such, the relief requested by HP is unwarranted.

As discussed at length during Oral Argument, Power's "Answers and Responses to [HP's] First Set of Interrogatories" (ECF No. 112-3, "Answer to Interrogatory 10") indicate that HP was put on notice of Power's potential theory of the case, *e.g.*, a non-HP approved battery failure-to-warn theory, as early as March 22, 2018. (ECF No. 112, at 3.) That Interrogatory and the Answer to Interrogatory 10, specifically subparts (e) and (f) stated:

> 10. Do you contend there was a design defect with respect to the Product (including any and all component parts or accessories thereof)? If so, please describe said design defect in detail and state what you contend would be the appropriate alternative design including all facts supporting that such was feasible.
>
> [ANSWER:]
>
> . . . . . . .
>
> e. The HP Elitebook Mobile Workstation . . . and HP-brand AC adaptor . . . and/or any product literature distributed therewith collectively failed to warn consumers, including Plaintiff, of the risks of bodily harm associated with using non-HP brand batteries and/or cells, although it is not admitted that the at issue batteries or cells were not HP approved.
>
> f. The HP Elitebook Mobile Workstation . . . and HP-brand AC adaptor . . . collectively failed to warn consumers, including Plaintiff, via the internal software and/or software logic that the batteries and/or cells installed in the at issue HP Elitebook Mobile Workstation were non-HP brand/[ ] non-HP approved batteries or cells. Plaintiff further contends that such warnings are commercially available on similar products . . . Again, it is not admitted that the at issue batteries or cells were not HP approved.
>
> . . . . . . .

(ECF No. 112-3, at 8–9.)[3]

---

[3] The record does not reflect that HP had ever challenged the sufficiency of the Answer to Interrogatory 10, nor any alleged variance between that Answer and the Complaint, and it does not directly do so in its Motion. The (cont.)

5

Even assuming the Court were to conclude that the experts' opinions as summarized in Power's expert disclosures constituted a "new" theory of liability and a late-arriving concession of the battery's origin and that Power had failed to supplement earlier discovery in accord with Rule 26, the remedy sought by HP to exclude the evidence is an extreme sanction. To exclude evidence that is critical to a case, such as Power's expert disclosure reports, is an outcome our Circuit has deemed disfavored—and one that this Court concludes is inappropriate to implement here. *See ZF Meritor, LLC*, 696 F.3d at 298. Here is why.

### A. The Parties' Arguments

HP asserts that throughout discovery, Power had repeatedly pled in his Complaint that the battery in the involved laptop was an HP battery; that HP told Power's lawyers early on that it was not; and that Power had never conceded that HP did not "design, approve, or manufacture" the at-issue battery. Now, HP contends that Power offers expert reports that "instead opine that HP failed to adequately prevent or warn [Power] from using non-HP approved batteries." (ECF No. 112, at 1–2.) HP argues that exclusion of these expert reports is appropriate because Power "never amended his pleadings nor supplemented his responses to reflect this acknowledgment at any time prior to the close of discovery," and admission of the expert reports would result in unfair surprise and prejudice to HP. (*Id*. at 2, 7–12.) Moreover, HP contends that striking the expert reports is the appropriate remedy because HP will not have an opportunity to cure the prejudice it has already suffered due to the significant resources it has expended on depositions and forensic examinations of the involved laptop. (*Id*. at 10–12.) Finally, HP argues that admission of these expert reports and the resulting

---

Court notes this not because there is anything facially improper about that Answer, but only to note that at least since the time it was served, it does not appear that the Answer was seen by HP as somehow out of bounds.

testimony would disrupt an orderly and fair trial, and that Power's failure to supplement the discovery responses or amend his Complaint was willful. (*Id*.)

In opposition, Power argues that he asserted numerous failure-to-warn allegations within his Complaint sufficient to place HP on notice of the experts' opinions as set out in the challenged disclosures. As a result, Power contends that his expert reports do not result in unfair surprise or prejudice to HP, and that he did not willfully avoid disclosing this theory. (ECF No. 116, at 1, 4.) As further support for the position that Power had no duty to supplement the record, Power points to the fact that HP has remained adamant throughout this litigation that the battery was non-HP approved, and that in any event, Power timely informed HP of his concession that the battery was not HP-approved through his expert disclosures. (*Id*. at 5.) Finally, Power contends that the basis of HP's argument is an attempt by HP to shift its failure to adequately prepare its defense over to Power, especially in light of the fact that HP waited three months after Power submitted its expert disclosures to file this Motion to Strike. (*Id*.)

### B. Claim 1: The Allegedly "New" Theory of Liability

First addressing the arguments raised in the parties' briefing, while the Court agrees that HP has maintained its position that the battery was not an HP-manufactured, designed, or approved battery, that latter point speaks to whether HP was unfairly surprised or prejudiced, not whether Power had a duty to supplement pursuant to Rule 26. As for Power's argument that his Complaint sufficiently placed HP on notice of this theory of liability, the Court is unpersuaded. Rather, the Court concludes that it is Power's Answer to Interrogatory 10, specifically subparts (e) and (f), that adequately placed HP on notice of the potential theory of the case as advanced by the expert report disclosures, such that Power was not under a duty to supplement his discovery responses as to that issue. (ECF No. 112-3, at 8–9.)

That said, Power could still move to amend his Complaint to conform to discovery, and Third Circuit precedent suggests that such amendment is generally to be permitted. Under Rule 15(a), "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Id.* (citing *Lorenz v. CSK Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)). Moreover, "[i]t is well-settled that prejudice to the non-moving party is the touchstone for the denial of [leave to file] an amendment." *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978) (citations omitted). Here, Power's theory of liability gained traction as discovery unfolded, so undue delay is not at issue. And for the same reasons the Court explains below, HP has not suffered unfair prejudice by Power's decision to pursue a theory of liability supported by information that was timely revealed during fact discovery.

Although Power's argument misses the mark by contending that his Complaint amply notified HP of this theory of liability,[4] the Court agrees that Power's expert disclosures do not

---

[4] It would take a generous reading of the Complaint to conclude that the theory of liability that is the focus of Power's expert disclosures was plainly and affirmatively pled in the Complaint. Suffice it to say that the Complaint has a lot of boilerplate language in it, and it repeatedly speaks of the laptop battery in a way that ties that battery specifically to HP. (ECF No. 1-2, at ¶¶ 5–7, 9–13, 16–20, 28, 30, 35–40.) And its references to any duty to warn are far more generic than those reflected in the expert disclosures. (*Id*. at ¶ 34.) If the Complaint was all that Power had going for him in terms of putting HP on notice of this theory of liability before the expert disclosures were served, he almost certainly would be out of luck in terms of this Motion, and Power's counsel would be well advised to stop advancing an argument that his Complaint does not really back up. (ECF No. 115.) But that is not all that Power has going for his position in terms of putting HP on such notice.

In Interrogatory 10, HP specifically asked one of a series of what are commonly called "contention" interrogatories, *e.g.*, something like "tell us exactly what you contend the basis for liability is." HP got its answer when Power explained his theories of liability, theories that included the ones espoused by Power's expert witnesses. So it would appear to be both unnecessary and a waste of time at this point for the parties or the Court to engage in a debate as to the breadth of what was pled in the Complaint in terms of "unfair surprise," in that HP essentially invited Power to "explain himself" as to what his (Power's) case was all about with contention interrogatories directed at how Power intended to prove HP liable. Power obliged HP by his answers to those interrogatories, including Interrogatory 10, so it seems to the Court that as to the "unfair surprise" factor, HP is not in a strong position to now complain about what the Complaint did or did not lay out, and that if Power sought leave to amend the Complaint, the Court would likely be constrained to grant such leave. More directly, HP asked (cont.)

result in unfair surprise or prejudice to HP on that point such that exclusion of the expert disclosures and resulting testimony is necessary or proper. Rather, Power's Answer to Interrogatory 10 (ECF No. 112-3, at 8–9) shows that HP objectively would not be unfairly surprised by the "failure to warn" premises of the expert disclosures. *Cf. Burdyn v. Old Forge Borough*, 330 F.R.D. 399, 410 (M.D. Pa. 2019) (explaining in general terms that "Rule 26 was designed . . . to eliminate the element of 'surprise' in litigation . . . . Thus[, in the context of moving for a new trial based on a party's failure to abide by Rule 26], a movant must show *reasonably* genuine surprise" (emphasis added)); *Starry v. United States*, No. 16-00532, 2017 WL 11103576, at *1 (M.D. Pa. Sept. 13, 2017) (treating "surprise" and "prejudice" as one element, the court explained that the United States suffered no prejudice by the plaintiff's failure to comply with disclosure requirements because "the United States could have *reasonably* anticipated [the expert testimony] given the [case was] a run-of-the-mill slip and fall matter" (emphasis added)).

In short, the experts do not now expound a theory that was not disclosed to HP far earlier in the case. The liability theory that HP argues as having never been raised can be found within subparts (e) and (f) of Power's Answer to Interrogatory 10, by which Interrogatory HP had probed Power's possible theories of liability regarding design defect. (ECF No. 112-3, at 8–9.) Because HP was on notice that the failure to warn about non-HP batteries was a potential theory of liability in Power's Answer to Interrogatory 10, it does not follow that HP would be prejudiced by information it already knew. Although the Court concludes that Power had no duty to supplement the record to reflect this theory of liability, the Court nonetheless also observes that HP had time to rebut the positions advanced by Power's expert reports, as HP's reports were due a month after

---

for the answer it was given, and at that point, was on notice of the theories Power's experts ended up outlining in their reports.

Power's. Through its Motion to Strike, HP also did not seek to reopen discovery. Both these observations would weigh against a finding of prejudice by the inclusion of these expert reports had the Court concluded that Power was under duty to supplement as to the liability theory they discuss.

### C. Claim 2: Non-HP-Manufactured, Designed, or Approved Battery Concession

HP has always asserted that the battery at-issue was not designed, manufactured, or approved by HP, so HP cannot reasonably argue that it was unfairly surprised when Power—relying on information discovery helped to uncover and solidify—conceded the same in his expert disclosures and at Oral Argument. That the battery was not designed, manufactured, installed, or approved by HP would be no surprise to HP, as that is exactly what it believed and contended all along. The only surprise that could perhaps exist was that from the perspective of HP, Power's lawyers had finally seen the light and will no longer contend that the involved battery was an "HP battery." It would strike the Court as being more than a bit odd to conclude that the type of "unfair surprise" contemplated by a rule permitting the exclusion of expert disclosures would include the "surprise" to counsel that they ultimately convinced opposing counsel of their position.

And while Power and his counsel did have the duty to supplement Power's prior discovery responses once they had concluded that the involved battery was not of HP origin, and the fact that HP already knew that fact would not relieve them of that duty, that latter point does impact the remedy (if any) that the Court should consider in such regards. Although Power has not yet moved to amend his Complaint or supplement his discovery responses,[5] HP is not prejudiced by admission

---

[5] Given the content of Power's Answer to Interrogatory 10, the Court is somewhat at a loss as to what further supplementation of that response would have been required as to the "failure to warn" theory of liability. As to the issue of Power's knowledge as to the non-HP origin of the involved battery, HP contends that it was on December 19, 2019 that one of Power's experts, Mr. Kutchek, discerned that the involved battery was not of HP origin. (ECF No. 117, at 5.) Although HP does not expressly argue such, at that point, Power should have amended its Answer to Interrogatory 10 to concede that the battery was not of HP origin. But at the same time, it appears that fact discovery ended just a month or two later, in January/February 2020, and HP does not state what discovery happened (or not) in the intervening couple of months that would have been different if Power had made the (cont.)

of these expert disclosures. First, it has consistently been HP's position that the at-issue battery was not manufactured, designed, or approved by HP, so HP cannot claim to be prejudiced by an identical substantive position that Power now concedes in those disclosures. Second, the Court observes that HP's expert reports were filed a month after Power's, so HP's experts were in a position to rebut the positions advanced by Power, and that through all of this, HP has not asked for reopened expert or other discovery. While the Court does not minimize the costs HP has generally incurred throughout discovery, that alone does not establish a basis to exclude Power's expert disclosures, especially when the record reflects that HP was on notice of this potential theory of liability regarding the implications of non-HP approved batteries as early as March 2018. (ECF No. 112, at 3.)

As for Power's alleged "willfulness," the record does not show that Power knew that the battery was not designed, manufactured, or approved by HP and that Power then purposefully, and unduly or wrongfully, delayed revealing that accepted knowledge to HP, knowledge which it is clear HP already had. At the end of the day, discovery revealed to Power that the battery was not an HP-manufactured, designed, or approved battery, a fact to which Power stipulated at Oral Argument and through his expert disclosures. If one of the purposes of discovery is for a party to litigation to learn the facts that support or undercut its own case, it would be odd indeed to in effect sanction Power because he was, eventually, educated about the facts regarding the "non-HP" origin of the laptop's battery that matched up with HP's understanding of the facts. It would appear to the Court that in those regards, the purposes of discovery were fulfilled.

---

"not an HP battery" concession on December 19, 2019. And a review of the disclosure obligations of Fed. R. Civ. P. 26(a) does not reveal a category of initial disclosures that would have required supplementation to reveal the substance of the expert disclosures.

Thus, the crux of HP's position is in reality that it took time and money to convince Power's lawyers of what HP said those facts were. But that would only matter for these purposes if such had occurred after Power already actually knew them. While it is in theory possible that had Power's lawyers subjectively come to that conclusion long before fact discovery ended, and then sandbagged HP's lawyers by keeping that acknowledgement to themselves in order to force HP to wastefully spend resources to convince Power's lawyers of what they already knew, and that Power and/or his lawyers should therefore be on the hook for the costs expended by HP after Power and his counsel had come to that conclusion and in order to so convince them, the record now does not support that such had happened, or if it did, when or what the actual tangible litigation or monetary impact on HP was.[6]

Finally, the Court notes that Power's expert disclosures are crucial to his claims, in that the expert reports and opinions summarized within them are highly relevant to Power's alleged theory of liability. Even if the Court were to conclude that HP had been unfairly surprised and prejudiced by Power's failure to amend or supplement discovery, the Third Circuit has made plain "that exclusion of critical evidence is an 'extreme' sanction, and thus, a district court's discretion is not unlimited." *See ZF Meritor, LLC*, 696 F.3d at 297 (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997); *E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 116 (5th Cir.

---

[6] And none of that is the relief sought by the Motion before the Court. The Motion as filed does not seek to reopen some segment of fact or expert discovery, or to shift costs for some now-necessary follow-up discovery directly resulting from a failure of Power to fulfill his supplementation obligations as to the origin of the involved battery. It instead seeks to exclude the expert disclosures altogether. As noted above, HP pinpoints December 19, 2019 as the date on which Power's lawyers would have actually known the battery was not of HP origin, as that is when one of their experts, Mr. Kutchek, concluded as much. (ECF Nos. 112–5 and 117.) What is not before the Court is what would have been different, if anything, had Power's lawyers served amended Interrogatory Answers the very next day. At this point, for the reasons noted, to strike the expert reports in their entirety would be a remedy that would be disproportionate to a 30 to 60 day interval between Power's learning of this "fact" from Mr. Kutchek and the conclusion of fact discovery. HP also does not indicate what did/did not happen in terms of its working up the case after fact discovery concluded and before the disclosure of Power's expert reports on October 30, 2020 that was in actuality impacted by the delay in Power making the "non-HP battery" concession.

1993)). By no means would exclusion of the involved expert reports have been automatic. But here, the record does not support excluding those expert reports or the attendant expert testimony on the grounds asserted.

### IV.    CONCLUSION

For all the reasons set forth in this Opinion, the Court denies HP's Motion to Strike Power's Expert Disclosures. (ECF No. 111.) The Court concludes that (1) Power was not under a duty to supplement his discovery responses based on the theories of liability that were summarized and disclosed in Power's Answer to Interrogatory 10; and (2) even if Power were required to amend his Complaint to conform to discovery responses or to supplement his discovery responses in terms of the "failure-to-warn" theory espoused in Power's expert disclosures, HP has not be unfairly surprised or prejudiced by the matters set out in the expert disclosures. Finally, (3) the record does not demonstrate how Power's failure to supplement his prior discovery responses relative to the origin of the involved battery after December 19, 2019 and before the close of fact discovery actually prejudiced HP. Based on the Court's consideration of the record before the Court, the exclusion of these expert reports is an unwarranted remedy.

s/ Mark R. Hornak  
Mark R. Hornak  
Chief United States District Judge

Dated: April 6, 2021

cc:    All counsel of record