UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS POWER, *Plaintiff*, | Civil Division |
| | Docket No. 2:17-CV-00154-MRH |
| v. | |
| | Hon. Mark R. Hornak |
| HEWLETT-PACKARD COMPANY, *Defendant*. | |
| | Friday, May 13, 2022 |

**MOTION TO PRECLUDE TESTIMONY FROM KENNETH W. KUTCHEK, P.E.**

Defendant, HP, Inc. (improperly named Hewlett-Packard Company in the plaintiff's complaint) moves to preclude the report and testimony of the plaintiff's expert, Kenneth Kutchek P.E. As discussed in the accompanying memorandum of law, Kutchek's opinion that the HP Elitebook 8730w had a warning defect is based on speculation and conjecture. His opinion is not based on reliable principles, methods, or sufficient facts and data. Instead, Kutchek, who is admittedly not qualified concerning battery and computer science, is also unreliable: his work was limited exclusively to unverified Google searches of patents issued after the Elitebook 8730w was manufactured. This is a willfully unreliable methodology that produced obviously irrelevant opinions. Thus, Kutchek's proposed testimony fails to meet the requirements of Fed. R. Evid. 702 and must be excluded in accordance with *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).  HP requests a *Daubert* hearing.

Wherefore, for the reasons set forth above and in its accompanying memorandum of law, HP, Inc., respectfully requests that the Court conduct a *Daubert* hearing and preclude the report and testimony of Kenneth Kutchek, P.E. , in accordance with the Court's gatekeeping function to

assure that expert testimony is reliable and in keeping with the requirements of Rule 702 and *Daubert*.

                Respectfully submitted,

                */s/ Michael A. Weiner*
                _____

                Michael A. Weiner, Esquire
                PA I.D. #93640
                Bennett, Bricklin & Saltzburg LLC
                707 Grant Street, Suite 1800
                Pittsburgh, PA 15219
                Phone: (412) 894-4101
                Fax: (412) 894-4111
                weiner@bbs-law.com

                Christopher G. Betke
                *Pro Hac Vice*
                Coughlin Betke LLP
                175 Federal Street
                Boston, MA 02110
                (617) 988-8050
                (617) 988-8005
                cbetke@coughlinbetke.com

                Attorneys for HP, Inc.

## Certificate of Service

    I hereby certify that on May 13th, 2022, a true and accurate copy of the foregoing motion was served via the Court's Electronic Case Filing System to all counsel of record.

                */s/ Michael A. Weiner*
                _____
                Michael A. Weiner

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS POWER,<br>　　　　　*Plaintiff*,<br>v.<br>HEWLETT-PACKARD COMPANY,<br>　　　　　*Defendant*. | Civil Division<br>Docket No. 2:17-CV-00154-MRH<br><br>Hon. Mark R. Hornak<br>Friday, May 13, 2022 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PRECLUDE TESTIMONY FROM KENNETH W. KUTCHEK, P.E.**

The Court is familiar with this products liability case and the plaintiff's proffered expert, Kenneth Kutchek P.E., whose unqualified, unreliable and irrelevant opinions must be excluded. The plaintiff purchased a used HP notebook computer on eBay for $230, then received a $100 refund from the seller, ultimately paying $ 130 for the Elitebook 8730w. Thereafter, he alleges it caught fire during use. From the outset of the case, Defendant HP, Inc., improperly named as Hewlett-Packard Company, ("HP") asserted that the battery that caused the fire was not original to the notebook but was an aftermarket battery. Plaintiff refused to concede this point and maintained the notebook battery was a defective HP battery for over three years. With his expert disclosures, plaintiff finally conceded that the battery was, in fact, an aftermarket battery, and abandoned the theory that "a defective HP battery" caused the plaintiff's injuries. Through his experts, Plaintiff has pursued a different theory of liability, that HP failed to adequately prevent or warn Power from using non-HP approved batteries.

As the Court noted, "Power and his counsel did have the duty to supplement Power's prior discovery responses once they had concluded that the involved battery was not of HP origin, and the fact that HP already knew that fact would not relieve them of that duty." *Power v. Hewlett-Packard Co.*, 2021 U.S. Dist. LEXIS 68093, at *14-15 (W.D. Pa. Apr. 6, 2021) (Hornak,

1

J.). Indeed, Kutchek, who stated in his report that he concluded the battery was an aftermarket battery on December 19, 2019, *see id.* at n. 6, later testified that he came to that conclusion even earlier, on September 24, 2019. *See* Dep. Tr. of Kenneth Kutchek, P.E., Exhibit A, at 25.

Unsurprisingly, given plaintiff's tortured prosecution of this case, Kutchek is not qualified concerning battery and computer science, **and he admits it**. His work was unreliable because it was limited exclusively to unverified Google searches of patents issued **after** the Elitebook 8730w was manufactured. This Court should reject such unsubstantiated opinions as *ipse dixit*. *Hurd, et al. v. Yaeger, et al.*, 2009 U.S. Dist. LEXIS 72032, 11-12 (M.D.Pa. 2009), *citing General Electric v. Joiner*, 522 U.S. 136, 142 (1997) ("Nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert."); *see also Oddi v. Ford Motor Co.*, 234 F.3d 136, 156, 158 (3d Cir. 2000) (excluding expert testimony in products liability case where expert engaged in a "haphazard, intuitive inquiry" using "little, if any, methodology beyond his own intuition" because his "*ipse dixit* [did] not withstand Daubert's scrutiny").

Kutchek's testimony was purportedly offered to "opine that HP failed to authenticate battery packs installed in its notebook computers, and that HP failed to adequately prevent or warn Power from using non-HP approved batteries." *Power, supra* at *2-4, *citing* ECF Nos. 112, at 6; 112-5. However, Kutchek is not qualified to offer such an opinion, and did not employ a reliable methodology. HP accordingly moves to preclude the opinion and testimony of Kutchek under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). HP requests a *Daubert* hearing.

I. BACKGROUND

Power filed suit against HP on January 18, 2017. In his complaint, he alleged, "[w]hile Power was using the laptop, Power suffered severe thermal and chemical burns as a result of the lithium ion battery cells contained in the subject laptop short circuiting, overheating, igniting, and exploding on Power's arms, hands, torso, and lower extremities." *Power, supra* at *2. He raised three theories of liability against HP: (1) strict products liability; (2) negligence; and (3) breach of warranty. *Id.*

For nearly four years, Powers persisted in his theory that an HP battery caused the subject explosion, despite HP's repeated representations that the Elitebook contained aftermarket batteries from an unknown origin. On October 30, 2020, Power disclosed two expert reports. In both reports, the experts opine that HP failed to authenticate battery packs installed in its notebook computers, and that HP failed to adequately prevent or warn Power from using non-HP approved batteries. *Power, supra* at *2, *citing* ECF Nos. 112-5; and 112-6. Changing his theory of liability nearly four years into this litigation, plaintiff's experts admitted that the battery at issue here was not an HP-approved battery. *Id.*

**A.  Kenneth W. Kutchek's Report**

Kutchek stated the following opinions in his report:

> 1. HP was aware that non-HP approved battery packs were available for sale by third party retailers which could fit into their HP notebooks.
>
> 2. HP ensured that its approved battery packs contained various safety protections and underwent various levels of testing and quality control.
>
> 3. HP could not ensure any safety protections, testing and quality control for non approved battery packs. This created a risk for its notebook users.
>
> 4. HP was aware of the potential safety hazard of using non-HP approved battery packs in their HP notebooks and warned users against

> it. Power was exposed to this hazard.
>
> 5. This combination of hazard and risk created an unreasonably dangerous condition. Power's exposure to this dangerous condition was a cause of his injury.
>
> 6. HP failed to authenticate battery packs installed in its notebook computers.
>
> 7. HP failed to inform or warn the user of a non-HP approved battery pack installed in its notebook computers.
>
> 8. HP failed to have interlocks to prevent the use of non-HP approved battery pack in its notebook computers.
>
> 9. Had HP prevented the use of non-HP approved battery packs, this incident would have been prevented.

ECF No. 112-5 at 21. As discussed below, these opinions are not based on reliable scientific data or methodology. Kutchek conducted no tests, examinations, or investigations. In essence, his "work" consisted of a Google search that uncovered patent information that Kutchek admitted was irrelevant. Accordingly, the court should preclude his report and testimony.

**B. The motion to strike the plaintiff's expert disclosures**

Prior to the expert disclosures, "Power repeatedly pled in his Complaint that the battery in the involved laptop was an HP battery" and "never conceded that HP did not design, approve, or manufacture the at-issue battery." *Power, supra* at \*8-9. Power only reversed this position in his expert disclosures years into the litigation, prompting HP to file a motion to strike his expert disclosures pursuant to Rules 26(e)(1)(A) and 37©(1). ECF Nos. 111, 112. On April 6, 2021, the Court, Hornak, J., denied the motion. *Id*. at \*15.

**C. Kutchek's deposition revealed that he is unqualified and that his opinions are not based on reliable facts, data, principles or methodology**

On January 4, 2022, Kutchek was deposed. *See* Ex. A. His deposition testimony revealed

that he lacks relevant education, training, and experience to offer an opinion in this case, and that his opinions are not based on reliable facts and data or reliable principles and methods. Thus, his testimony should be excluded.

### i. Kutchek is unqualified to offer an opinion in this case

At his deposition, Kutchek testified that he has never worked designing computers or in computer manufacturing. Ex. A at 17. He has no education, professional training, or experience in battery pack design, battery cell design, battery pack and cell manufacturing, printer design and manufacturing, and computer notebook design and manufacturing. Ex. A at 18, 73. He has not written any peer reviewed articles about notebook computers or lithium ion batteries. Ex. A at 18. He has never obtained a patent, filed for one, or received legal training in patent law, nor was he aware of the time between application and issuance. Ex. A at 67-68. He has never been involved in the forensic examination of notebook computers. Ex. A at 34.

Kutchek has no experience with notebook computers, and his only experience with any type of battery involved an engineering opinion in a case concerning foil pack batteries, which are distinct from the 18650 steel cased cells used in the Elitebook. Ex. A at 23-24. While Kutchek claims to be generally familiar with 18650 cells, from serving as an expert in cases involving vapes that short circuited and exploded, he has never offered an engineering opinion regarding 18650 cells in notebook computers or even evaluated 18560 cells in notebook computers. Ex. A at 36.

### ii. Kutchek's opinions are not based on reliable facts, data, principles or methodology

The vast majority of Kutchek's opinion is based on a patent search he conducted using Google. *Ex. A* at 26. Specifically, he "searched numerous patents regarding laptop batteries and

5

authentication of components, inkjet cartridges, and telephones. I was just searching on authentication of components in electronic products." Ex. A at 70. Of course, this case does not involve a telephone or an inkjet cartridge, and, in addition, as discussed below, his Google search turned up information on patents granted *after* the Elitebook at issue was designed, manufactured, and sold. As Kutchek admitted, the Elitebook in question would have been "designed some time in 2007 or 2008." Ex. A at 16. Yet, the first three patents he referenced were granted after the manufacture of the subject Elitebook. Ex. A at 77-78.

Of the patents referenced in Kutchek's report, the only ones even *applied for* before the manufacturing date of the Power notebook pertained to Lexmark inkjet printer cartridges. Ex. A at 80. Yet, Kutchek did nothing to determine whether the Lexmark printer cartridge patents could be incorporated into notebook computers, despite acknowledging that he could have tried to do so. Ex. A at 82. Importantly, on the topic relevant to this case, Kutchek admitted that he was unable to determine whether any notebook computers sold in 2009 used battery authentication. Ex. A at 83. In other words, Kutchek conceded that on the relevant topic, he has no basis for his opinion.

Even assuming Kutchek had located patents from a relevant *timeframe,* the hodgepodge of patents he found is meaningless. As he admitted at his deposition, that the fact that a patent is issued does not mean the technology is coming to market, and multitudes of patented technologies never come to market. Tr at 68-69. He also did nothing to determine whether any of the patents he reviewed went to market. Ex. A at 71. He was not aware if any of the authentication patents could be defeated, permitting use of non-approved products. Ex. A at 87. He was not aware of how quickly authentication technology is defeated, although he was aware

of commercially available methods to defeat software authentication. Ex. A at 88–89. Even worse, Kutchek admitted that he did not know whether the authentication patents he referenced in his report actually worked, that is, whether they prevented people from using inauthentic components. Ex. A at 85-86. In sum, Kutchek's "Google search" turned up no relevant information.

While Kutchek testified that he reviewed the deposition transcripts, HP documents, notebook x-ray, photographs, and physical evidence (id. 25-6), he admitted that he performed no tests. Ex. A at 30. He did not know what UL standard governed consumer electronic products such as the Elitebook or lithium ion battery packs, or whether the battery pack or cells that shipped with it were UL listed. Ex. A at 31. He did not reference relevant IEEE standards. Ex. A at 83-84. He obtained no exemplars, made no attempt to obtain an exemplar, and never disassembled the Power notebook. Ex. A at 33, Ex. A at 67.

Kutchek did not recall reviewing the schematic for the Elitebook or attempting to identify the manufacturer of the subject battery pack and cells. Ex. A at 38. He admitted that battery abuse could cause a thermal runaway, Ex. A at 40, that he did not know whether the eBay seller abused the notebook before it was sold, Ex. A at 65, and that he never spoke to Power or the seller. Ex. A at 40, 61-2, 63. Accordingly, he conceded that he did not know what the eBay seller had done to the notebook computer prior to selling it to Power. Ex. A at 64. He also did nothing to determine if any other aspects of the notebook computer were original to the computer. Ex. A at 65.

iii. **Kutchek Admitted to Lack of Knowledge Regarding Key Portions of His Report**

Given that Kutchek conducted no tests or investigations into the cause of the explosion, it

is not surprising that he could offer no opinion as to what caused the pack or cells to malfunction (Ex. A at 38), what caused this battery pack to go into thermal runaway. (Ex. A at 66), or what caused the explosion in this case. Ex. A at 93.

Kutchek also admitted at his deposition that he had no support for his proposition that HP knew that non-HP approved battery packs were available for sale by third party retailers. Ex. A at 45. He agreed that there was nothing in HP's designees' testimony that suggested any awareness by HP that non-approved batteries do not have safety protections, or of any safety hazard in using non-approved battery packs. Ex. A at 51, 52, 53. Kutchek admitted this testimony contradicted his report (ECF No. 112-5 at 16), wherein he claimed that HP was aware of potential safety hazards of using non-HP approved battery packs. Ex. A at 51.

Kutchek agreed that the original battery packs contained in the Elitebook 8730w included a warning label that stated, "Replace with HP spares". Ex. A at 53, 55, 56. Kutchek did not know if Power was aware that using a non-HP approved battery could be a safety issue. Ex. A at 56. He did not know if Power even **needed** an authentication warning. Ex. A at 58. He did not know if Power had reviewed the user's manual for the Elitebook 8730w. Ex. A at 60. Although he conceded it would be important to determine what warnings Power did or did not receive before this incident, Kutchek did not know what warnings Power had or had not received. Ex. A at 61.

## II. LEGAL STANDARDS

Expert witness testimony is governed by Fed. R. Evid. 702, which "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit":

> Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that a broad range of knowledge, skills, and

8

> training qualify an expert.
>
> Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his on her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity.
>
> Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.

*Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003), *citing In re Paoli Railroad Yard PCB Lit.*, 35 F.3d 717, 749 (3d Cir. 1994), *Daubert, supra* at 579 "Evaluating the reliability of an expert's methodology is not a credibility determination but a critical gatekeeping function for judges — not juries — to perform." *Wood v. Showers*, 822 F. App'x 122, 125 (3d Cir. 2020), *citing Kumho Tire v. Carmichael*, 526 U.S. 137, 147 (1999).

### III. ARGUMENT

**A. The testimony of Kenneth W. Kutchek, P.E. should be precluded**

**1. Kutchek has no professional background in design or manufacturing battery packs, battery cells, printers, computer notebooks**

Under Federal Rule of Evidence 702, a witness is "qualified as an expert by knowledge, skill, experience, training, or education." F.R.E. 702. Here, Kutchek has no education, training, or experience the design or manufacture of computers nor the design or manufacture of battery packs and cells. Ex. A at 18, 73. He has never written any peer reviewed articles about notebook computers or lithium ion batteries. Ex. A at 18. He has never previously rendered any opinions in any litigation regarding notebook computers. Ex. A at 17, 22. Indeed, he admitted that he had "no expertise whatsoever" in computer, battery pack or battery cell design or manufacture. Ex. A

9

at 73. His limited experience with 18650 lithium ion battery cells pertain to "vape" cases in which a single 18650 cell is used to power a vaping device. Ex. A at 36. This is most dissimilar to the types of battery packs used in a HP notebook computer, which has a series of 18650 cells with additional safety protections to monitor use and prevent overcharging, over discharging and short circuit. Ex. A. At 49. Indeed, Kutchek could not identify the UL standard governing consumer electronic products such as the Elitebook model at issue in this case. Ex. A at 31. He "did not recall" the UL standard applicable to lithium ion battery packs or the one applicable to lithium ion battery cells, and could not state what tests UL performs on the cells. Ex. A at 31. Given Kutchek's lack of relevant experience, education, or training, his testimony should be precluded.

2. **Kutchek's opinions are unreliable because they are based on irrelevant authentication technology that Kutchek admits may not even work**

In assessing the reliability of an expert's methodology under *Daubert*, the trial court must consider: (1) whether a method consists of a testable hypotheses; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness; and (8) the non-judicial uses to which the method has been put. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 746 (3d Cir. 2000); *In re Paoli*, *supra* at n.8. Additionally, "in cases involving technical subjects like engineering, trial courts may consider relevant literature, evidence of industry practice, product design and accident history in evaluating reliability." *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 788 (3d Cir. 2009).

10

Kutchek's opinions fail under every *Daubert* indicia of reliability. There was no testable hypothesis because Kutchek did not do **any** testing. Ex. A at 30. He obtained no exemplars of the Elitebook, made no attempt to obtain an exemplar, and never disassembled the Elitebook. Ex. A at 33, Ex. A at 67. There was no reliable or **coherent** methodology in Kutchek's report, which alone should be fatal to his claim. *See White v. Stanley Black & Decker, Inc*. 514 F. Supp. 3d 684 (W.D.Pa. January 22, 2021) (Ranjan, J.)("when the expert's testimony relies on his or her subjective beliefs or unsupported assertions, there is no methodology for the Court to assess, and thus the testimony is unreliable.") (collecting cases). Kutchek never spoke to Mr. Power.  Ex. A at 40, 61-2, 63. He does not know what safety features the Elitebook has.  Ex. A at 38. He does not recall reviewing the electrical schematic for the Elitebook. Ex. A at 38.  Kutchek knew that Power previously owned an Elitebook but does not know if Power bought it used or new and, therefore, does not know what, if any, prior warnings Power received regarding the need to only use HP replacement parts.  Ex. A at 53, 55, 56. However, Kutchek conceded that it would be important to know what warnings Power was aware of prior to the incident in this case.  Ex. A at 61.

Kutchek knew Power bought the notebook computer on eBay, but he made no effort to contact the eBay seller, and does not know what the eBay seller did to the computer. Ex. A at 62-64. He does not know if the eBay seller installed or uninstalled any software, if the seller did anything to the hardware, or if the seller did anything to the safety features.  Ex. A at 64. He does not know if the eBay seller physically abused the notebook–although he conceded that physical abuse can cause batteries to go into thermal runaway. Ex. A at 64–65. Importantly, Kutchek did not offer any opinion in his report as to what caused the battery pack to malfunction and go into

11

thermal runaway.  Ex. A at 38, 66, 93.

Further, relevant literature, evidence of industry practice, product design and accident history in evaluating reliability militate against finding Kutchek's opinions reliable. *See Meadows, supra* at 788. Although he was aware that there were IEEE standards concerning battery pack design in 2008 and 2009, Kutchek did not consult them. Ex. A at 83-84. Indeed, as Quinn Horn, PhD, P.E. elaborated in his expert report for HP of the relevant IEEE standards, however: "neither [IEEE 1625-2008 and IEEE 1725-2006] required or suggested that manufacturers provide an end user alert, such as a pop-up warning, when a third-party battery pack was installed." Decl. of Christopher Betke, Ex. B, ¶ 4. This is consistent with HP's designee's testimony that "in 2008 there was no industry standard for informing users of whether an approved battery pack was installed." *Id.,* ¶¶ 4-5. Accordingly, "the HP 8730W was designed to the industry standard for battery authentication as of 2008." *Id.,* ¶ 5.

In contrast, Kutchek offers "Google searches."[1] This sort of unverifiable internet search is not generally accepted science. Importantly, Kutchek agreed that if the Power Notebook was manufactured in 2009, the process of planning and designing the Elitebook model would have begun in 2007 or 2008.  Ex. A at 16. Yet, four of the five patents Kutchek found in his "Google search" were issued **after** the Elitebook at issue in this case was manufactured.  Ex. A. at 78 (conceding patent issue dates after manufacture date of August 18, 2009); *compare* ECF No. 112-5 at 19-20 (referencing patent issue dates of October 28, 2014; March 6, 2012; May 12, 2011; September 8, 2009; and May 18, 2005). Clearly, those could not support Kutchek's opinion that authentication technology would have been available for the subject Elitebook.

---

[1] Of course, anyone with a computer can conduct a Google search and doing one does not make one an expert.

Moreover, all but one of the patents Kutchek located during his Google search pertained to inkjet printers and mobile phones, not notebook computers. (The only patent he found that related to notebook computers **post-dated** the design of the Elitebook.) Thus, Kutchek's supposed "research" was worthless to show that notebook battery authentication was available at the relevant time. In fact, this information establishes the **converse**–that the battery authentication would not have been available at the time of manufacture. To the extent Kutchek relies on the results of his Google search to opine that notebook battery authentication was available in when the Elitebook was designed and manufactured, such opinion is not "based on the methods and procedures of science", but, rather, "on subjective belief or unsupported speculation." *Schneider, supra* at 404.

Further still, Kutchek admitted that just because a patent is applied for or issued does not mean that the technology actually came to market. Ex. A at 68-69. In fact, Kutchek also admitted that he did nothing to determine whether the patents that he referenced in his report ever came to market. Ex. A at 71. In addition, he did not nothing to determine whether authentication technology referenced in the inkjet patents was even transferable to notebook computers–although he concedes he could have tested this. Ex. A at 82. Moreover, Kutchek testified that he could not confirm whether any notebook computers in the marketplace in 2009 used battery authentication. Ex. A at 83. That is, on the key issue relevant to his opinion, he could offer no reliable data.

Kutchek also did not know whether the authentication patents that he referenced in his report actually worked, that is, whether they prevented people from using inauthentic components. Ex. A at 85-86. At the same time, he admitted that there is technology that permits

13

hackers to defeat authentication, that hackers do defeat authentication and, specifically, that battery authentication can be defeated at times. Ex. A at 87–89.

In sum, Kutchek's Google search uncovered patents that did not exist at the time the Elitebook was designed, that were not intended for notebook computers, that may or may not have been defeated by hackers, that may not have ever come to market, and that might not have even worked in the first place. Kutchek did not employ any reliable methodology that would support his offered opinions that HP failed to authenticate battery packs installed in its notebook computers or failed to inform or warn the user of a non-HP approved battery pack installed in its notebook computers. Kutchek offered no competent evidence that notebook battery authentication was even possible, let alone the it would have prevented this incident.

Having failed to establish that he performed any tests or identifie any contemporaneous industry practices, the reliability of Kutchek's report is "extremely questionable." *Masterson, supra* at *13-16 ("In addition to the general reliability criteria of *Daubert*, in a warnings case, where an expert proposes alternate warnings he should at least either test the effectiveness of those warnings or point to contemporaneous industry practice. Otherwise the reliability of the expert's testimony on the proposed warning is "extremely questionable"). Kutchek's report and testimony disclosed no reliable methodology. *Schneider, supra* at 404. His testimony should accordingly be precluded under Federal Rule of Evidence 702.

3. **Kutchek's opinions are irrelevant and speculative because there is no record evidence establishing that HP was aware of potential safety hazards of using non-HP approved battery packs in 2008**

The "fit" element "goes primarily to relevance." *Daubert*, *supra* at 591. To be admissible, the expert testimony must assist the trier of fact. *Id.* Here, Kutchek's speculative opinions will

14

not assist the trier of fact because his deposition disclosed that he based his opinions on a misapprehension of HP's corporate designees' testimony.

Kutchek has not been able to cite any evidence whatsoever for his proposition that HP knew that non-HP approved battery packs were available for sale by third party retailers. Ex. A at 45. At his deposition, he admitted that there was nothing in HP's designees' testimony that suggested any awareness by HP that non-approved batteries do not have safety protections, **or of any safety hazard in using non-approved battery packs**. Ex. A at 51, 52, 53. Kutchek also admitted that HP's testimony contradicted his report, ECF No. 112-5 at 16, wherein he claimed that HP was aware of potential safety hazards of using non-HP approved battery packs. Ex. A at 51. He has pointed to no evidence that HP did in fact have knowledge regarding hazards of non-approved battery packs. Kutchek thus based his opinion on what HP should and should not have done in his report on a faulty and baseless premise. *See* ECF No. 112-5 at 21, ¶ 4. The resulting opinion would not assist the trier of fact.

Additionally, "an expert witness is prohibited from rendering a legal opinion." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006). Kutchek states that the "combination of hazard and risk created an unreasonably dangerous condition" and "Power's exposure to this dangerous condition was a cause of his injury", ECF No. 112-5 at 21, ¶ 5, both legal opinions that are not proper in terms of "fit." The motion to preclude Kutchek's testimony should therefore be granted.

## IV. CONCLUSION

For the foregoing reasons, the Motion to preclude testimony from Kenneth W. Kutchek, P.E. must be granted.

        Respectfully submitted,

        /S/ Michael A. Weiner

        _____

        Michael A. Weiner, Esquire
        PA I.D. #93640
        Bennett, Bricklin & Saltzburg LLC
        707 Grant Street, Suite 1800
        Pittsburgh, PA 15219
        Phone: (412) 894-4101
        Fax: (412) 894-4111
        weiner@bbs-law.com

        Christopher G. Betke
        *Pro Hac Vice*
        Coughlin Betke LLP
        175 Federal Street
        Boston, MA 02110
        (617) 988-8050
        (617) 988-8005
        cbetke@coughlinbetke.com

        Attorneys for HP, Inc.

**Certificate of Service**

I hereby certify that on May 13th, 2022, a true and accurate copy of the foregoing motion was served via the Court's Electronic Case Filing System to all counsel of record.

        /s/ Michael A. Weiner
        _____
        Michael A. Weiner