# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS POWER,
     *Plaintiff*,

v.

HEWLETT-PACKARD COMPANY,
     *Defendant*.

Civil Division

Docket No. 2:17-CV-00154-MRH

Hon. Mark R. Hornak

Friday, May 13, 2022

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The plaintiff, Thomas Power, has no evidence to support his three claims of product liability arising under [1] strict liability; [2] negligence; or [3] breach of warranty, and therefore cannot establish a prima facie case under these doctrines. Expert evidence is required to establish [1] the HP Elitebook 8730w notebook was defective under a failure to warn, [2] a causal relationship between the claimed warning defect and injury, and [3] attribution of injury causation concerning his claimed incontinence. As set forth in the motions to exclude the testimony of Kenneth Kutchek, PE, William Kitzes, JD, and Michael Drew, MD, filed herewith, the plaintiff's expert witnesses are unqualified, unreliable, and offer irrelevant opinions that will not assist the trier of fact. As their reports and testimony are inadmissible, the plaintiff's claims fail, and summary judgment should enter against him.

Further, even if the experts' reports were admitted, the record reflects that: [1] HP gave multiple warnings to only use HP-approved battery packs with the Elitebook 8730W notebook; [2] there is no evidence plaintiff would have avoided the risk of his injury had he received a different battery authentication warning; and [3]  there is no evidence the June 20, 2015 incident that is the subject of this lawsuit caused his incontinence.

Accordingly, under Rule 56 of the Federal Rules of Civil Procedure, the Defendant HP, Inc., improperly named as Hewlett-Packard Company, ("HP") hereby moves for summary

judgment against the plaintiff, Thomas Power, with respect to his operative three-count Complaint dated January 18, 2017, Doc. 1-2, in its entirety. Summary judgment should enter for HP on the plaintiff's Complaint.

## I. BACKGROUND

### A. The HP Elitebook 8730w and warnings

Prior to April 2013, the plaintiff Thomas Power purchased a used HP Elitebook 8730w notebook computer; he did not recall if he received product documentation therewith. *See* L.R. 56(b)(1) Statement of Undisputed Material Facts ("Facts"), ¶ 1. After breaking the screen of that Elitebook 8730w, on April 29, 2013, plaintiff purchased a used replacement Elitebook 8730w that had been previously leased for two years from eBay for $ 130, which he received without product documentation included. Facts, ¶¶ 2-3.

The Elitebook 8730w notebook computer, as sold by HP, included multiple warnings to only use HP-approved battery packs, including: [1] a warning on the battery pack itself stating "Replace with HP spares". [2] a warning in the product documentation stating "⚠WARNING! To reduce potential safety issues, use only the battery provided with the computer, a replacement battery provided by HP, or a compatible battery purchased from HP"; and [3] "⚠WARNING: To reduce the possibility of heat-related injuries or of overheating the computer, do not place the computer directly on your lap or obstruct the computer or vents." Facts, ¶¶ 4-5, 8. When the Elitebook 8730w was manufactured on August 18, 2009, *see* Facts, ¶ 19, "industry standards did not prohibit the use of third-party accessories, nor require an end-user alert when a third-party battery pack was installed." Facts, ¶ 5.

In the two years after April 29, 2013, plaintiff never received any type of warning while

using the Elitebook 8730w, including any warning about the battery's end of life or other issue. Facts, ¶ 6. The plaintiff did not otherwise testify concerning warnings and the Elitebook 8730w.

## B.  The June 20, 2015 incident and the plaintiff's injuries

At 1:00 a.m. in the morning in the lobby of a 24-hour gym, the plaintiff had been using his computer for 20 to 60 minutes directly on his lap, with most of it on his bare skin, when it suddenly exploded into flame, burning his legs. Facts, ¶¶ 7-8. The plaintiff was hospitalized, and after his discharge treated with Paul Ogagan, MD to address complaints of bladder and bowel incontinence; Dr. Ogagan concluded he was "uncertain of the etiology of [Power's] bowel and bladder incontinence as I do not suspect any relationship between his chemical burn and his bladder and bowel incontinence." Facts, ¶¶ 9-10. Plaintiff ceased medical treatment related to the June 20, 2015 incident in early 2016. Facts, ¶ 11.

## C.  The plaintiff's experts

On January 18, 2017, plaintiff filed a three-count complaint against HP alleging strict products liability, negligence and breach of warranty . Facts, ¶ 12.

While plaintiff previously maintained that his claims were based on allegations of a defect in the HP Elitebook 8730w causing overheating and ignition, he ultimately disclosed on October 30, 2020, after three years of litigation, reports of experts Kenneth Kutchek, P.E. and William Kitzes, J.D., who opined only as to a failure to warn concerning the use of non-HP approved battery packs. Facts, ¶¶ 12-15,  21. Kutchek and Kitzes did not opine as to any alleged design or manufacturing defect. Because Kutchek and Kitzes are unqualified to offer testimony concerning notebook batteries, employed unreliable methods in relying on documents that post-dated the Elitebook 8730w's manufacture, and offer irrelevant opinions in view of their inability

to establish whether HP knew or should have known of any risk associated with non-HP approved or aftermarket battery packs, HP has moved herewith to exclude their reports and testimony under Fed. R. Evid. 702.[1]

Plaintiff also disclosed the report of Michael Drew, MD, who opined that the plaintiff's incontinence was "clearly related" to the injuries plaintiff suffered in the June 20, 2015 incident, "whether physical, psychological, or a combination of the two." Facts ¶ 25. Because he relies solely on the temporal relationship between the accident and the onset of incontinence  as the basis for his causation opinion, and because his opinion is not based on reliable methodology, HP has moved herewith to exclude Dr. Drew's report and testimony.

## 1.   Kenneth Kutchek, P.E.

Kutchek opined in his report that "HP failed to inform or warn the user of a non-HP approved battery pack installed in its notebook computers" and "HP failed to authenticate battery packs installed in its notebook computers." Facts, ¶ 15. Kutchek further testified in his deposition on January 4, 2022, that his "opinion in this case is that the technology existed to warn a user like Mr. Power, through a pop up window, that a non-HP approved battery pack being used posed a potential risk of harm." Facts, ¶ 16.

Kutchek conducted a Google search of patent in his attempt to determine whether any notebook computers in the marketplace in 2009 used battery authentication. His search was unsuccessful. None of the patents Kutchek found in his Google search concerned notebook computers designed, manufactured, or sold in 2009. As Kutchek admitted at his deposition, the Elitebook at issue in this case would have been designed in 2007 or 2008. Thus, by Kutchek's

---

[1] HP incorporates herein the arguments made in its motions to exclude the reports and testimony of Kutchek and Kitzes filed herewith.

own admission, the patents he found are irrelevant, and none of the patents support Kutchek's position that "authentication technology was available at the time." Facts, ¶¶ 17-19.

## 2.   William Kitzes, J.D.

Kitzes opined in his report that: "HP failed to warn HP notebook owners of the dangers of fire, burns and explosions associated with HP's belief that "non-compatible" replacement battery packs create "potential safety issues" and "By late 2008, HP developed a battery authentication system for certain laptops to identify "counterfeit" battery packs, yet the subject HP EliteBook did not include such system to identify non-HP batteries." Facts, ¶¶ 21-22.

Kitzes testified in his deposition on March 14, 2022 that the sole source of his belief that in 2008 "there was pop-up technology that would alert someone to a counterfeit battery" is an HP document entitled "HP Notebook PCs-601 or 60X error displays on a black screen" that included a reference to a "605 — Battery Counterfeit Check Error." Facts, ¶ 23. However, that document was published on September 29, 2020, over ten years after the date of manufacture of the notebook in this case. Facts, ¶ 24. Thus, it has no relevance to the Elitebook at issue in this case.

## 3.   Michael Drew, MD

Dr. Drew opined that the plaintiff's urinary incontinence "is clearly related to the [June 20, 2015] injuries whether physical, psychological or a combination of the two," although he testified in his March 8, 2022 deposition that he was "unable to render an opinion within a reasonable degree of scientific or medical certainty that Mr. Power's incontinence is psychological versus physical, some combination thereof." Facts, ¶¶ 25-26. However, in view of the lack of any reported evidence of injury to plaintiff's genitourinary system and the opinion of

Dr. Ogagan, plaintiff's treating urologist, that he did not "suspect any relationship between [plaintiff's] chemical burn and his bladder and bowel incontinence," the urinary incontinence issues "suffered by plaintiff are not due to damage from the burns he sustained after the explosion of his computer on June 20, 2015." Facts, ¶ 10.[2]

## II.  LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A disputed fact is material if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 L. Ed. 2d 265 (1986).

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56; *Celotex, supra* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some

---

[2] HP incorporates herein its motion to exclude the report and testimony of Dr. Drew filed herewith.

metaphysical doubt as to the material facts"). The party opposing the motion must produce

evidence to show the existence of every element essential to its case, which it bears the burden of

proving at trial, because "a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Celotex, supra* at 323.

## B. Strict Liability

Pennsylvania has adopted Section 402A of the Restatement (Second) of Torts for strict

products liability claims. *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 399 (Pa. 2014). Section

402A provides, in pertinent part, that a seller is strictly liable for physical harm caused by "any

product in a defective condition unreasonably dangerous to the user or consumer." Restatement

(Second) of Torts § 402A. A plaintiff "seeking relief under a strict product liability cause of

action must prove that the product was defective, the defect existed when it left the defendant's

hands, and the defect caused the harm." *High v. Pennsy Supply, Inc.*, 154 A.3d 341,

345-46, *reargument denied* (Mar. 16, 2017), *appeal denied*, 171 A.3d 1287 (Pa. 2017) (quotation

omitted).  "A dangerous product can be considered 'defective' for strict liability purposes if it is

distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the

product." *Davis v. Berwind Corp.*, 547 Pa. 260, 267 (Pa. 1997), *citing Mackowick v.

Westinghouse Electric Corp.*, 575 A.2d 100 (1990). "The determination of whether a warning is

adequate and whether a product is defective due to inadequate warnings are questions of law to

be answered by the trial judge." *Id.*

## C. Negligence

To sustain a claim for negligence under Pennsylvania law, Plaintiff must show that: (1)

Defendants owed a duty to Plaintiff; (2) Defendants breached that duty; and (3) that breach was

the proximate cause of Plaintiff's injuries. *Rowland v. Novartis Pharms. Corp.*, 34 F. Supp. 3d

556, 569 (W.D. Pa. 2014) (citation omitted). Plaintiff must also show that the manufacturer was

at fault. *Igwe v. Skaggs*, 258 F. Supp. 3d 596, 614 (W.D. Pa. 2017) (Kearney, J.).

## D. Breach of Warranty

The Third Circuit has endorsed the general understanding that the implied warranty of

merchantability[3] and the rule of strict products liability are "essentially the same." S*mith v.*

*Howmedica Osteonics Corp.*, 251 F. Supp. 3d 844, 854-55 (E.D. Pa. 2017) (Beetlestone, J.),

*quoting Gumbs v. Int'l Harvester, Inc.*, 718 F. 2d 88, 94 (3d Cir. 1983); *White v. Home Depot,*

*Inc.*, 2018 U.S. Dist. LEXIS 79694 (W.D. Pa. May 10, 2018) (Leeson, J.) (same).

## III.ARGUMENT

There is no genuine dispute of material fact that the plaintiff has failed to establish a

prima facie case of strict liability, negligence and breach of warranty, because he has failed to

establish a defect. He has failed to establish that the Elitebook 8730w had a warning defect by

admissible expert testimony, which is required in view of the scientific, technical, and other

specialized knowledge implicated by the subject matter of lithium ion battery authentication. The

report and testimony of Kutchek and Kitzes are inadmissible in view of their lack of

qualifications, unreliable methods, and irrelevant conclusions, which is the subject of a pending

motion to preclude the same filed herewith. And, even if the plaintiff had adduced admissible

expert testimony concerning the alleged battery authentication warning defect, the plaintiff's

---

[3] "As for Plaintiffs' warranty claims, they have produced no evidence of an express warranty, or that they communicated a particular purpose for the [Elitebook 8730w] to Defendants at the time of purchase, as required for an implied warranty of fitness for a particular purpose. *See Meyers v. LVD Acquisitions, LLC*, 168 A.3d 359, 2017 WL 1163056, at *5 (Pa. Super. Ct. 2017). Thus they are limited to an implied warranty of merchantability, which the Third Circuit Court of Appeals considers "essentially the same" as the rule of strict products liability in Restatement (Second) of Torts § 402A. See Smith, *supra* at 854-55.

claim would still fail. The uncontroverted evidence shows that HP gave **multiple** warnings to only use HP-approved battery packs with the Elitebook 8730W notebook.

Further, there is no genuine dispute of material fact that the plaintiff has failed to establish a prima facie case of strict liability, negligence and breach of warranty, because he has failed to establish causation. Again, the plaintiff's failure to adduce admissible expert testimony concerning causation is fatal to his claim. Even if the plaintiff's experts were admissible, his claim still fails, because he has not and cannot show that he would have avoided the risk of his injury had he received a battery authentication warning.

Finally, there is no genuine dispute of material fact that the plaintiff failed to establish injury causation concerning his claimed incontinence. The plaintiff failed to adduce admissible expert testimony on this issue, which is fatal to his claim. Even if his expert medical testimony were admissible, his claim would fail because that testimony is not stated within a reasonable degree of medical certainty and it is further controverted by the record evidence showing plaintiff had no genitourinary injury.

As the plaintiff has failed to establish that the Elitebook 8730w had a battery authentication warning defect; that the alleged defect caused his injuries; and that those causally related injuries included his urinary incontinence, the motion for summary judgment should be granted under Federal Rule of Civil Procedure 56.

**A. The plaintiff failed to establish a prima facie case of strict liability, negligence, and breach of warranty, because he failed to establish that the Elitebook 8730w was defective for failure to warn**

"Plaintiffs bring claims of strict liability, negligence, and breach of warranty, all of which are premised on Defendants' alleged failure to provide adequate warnings." *White, supra* at *9.

"The "threshold inquiry" for all of these theories is whether the product was defective." *Id.* "A product is defective due to a failure-to-warn where the product was distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product." *Pennsy, supra* at 351, *quoting Phillips v. A—Best Prods. Co.*, 665 A.2d 1167, 1171 (Pa. 1995), *reargument denied* (Pa. Super. Ct. Mar. 16, 2017), *appeal denied*, 171 A.3d 1287 (Pa. 2017). A plaintiff can show a product was defective under this theory by showing that "a warning of a particular danger was either inadequate or altogether lacking, and that this deficiency in warning made the product 'unreasonably dangerous.'" *Id., quoting Phillips* at 1171. "[E]xpert testimony is required in a warning defect case where the subject matter falls outside of the common knowledge of the factfinder and depends on scientific, technical, or other specialized knowledge." *Nelson v. Am. Honda Motor Co.*, 2021 U.S. Dist. LEXIS 93503, at *17 (W.D. Pa. May 17, 2021) (Lanzillo, J.), *citing Ruggiero v. Yamaha Motor Corp., U.S.A.*, 2017 WL 1197755, at *10 (D.N.J. Mar. 31, 2017), *aff'd sub nom. Ruggiero v. Yamaha Motor Corp., U.S.A,* 778 Fed. Appx. 88 (3d Cir. 2019); *see also Thomas Power v. Hewlett-Packard Co.,* 2021 U.S. Dist. LEXIS 68093, at *17 (W.D. Pa. Apr. 6, 2021) ("Power's expert disclosures are crucial to his claims"). Here, the plaintiff cannot establish a defect because he has adduced no admissible expert evidence as to the claimed warning defect, nor can he contravene the record evidence showing that HP gave multiple warnings to only use HP-approved battery packs with the Elitebook 8730W notebook. There is no genuine issue of material fact concerning the plaintiff's failures to establish a defect, and this is fatal to his claims. Accordingly, the motion for summary judgment should be granted.

1. **Plaintiff has failed to adduce admissible expert testimony concerning the alleged failure to provide a battery authentication warning of the Elitebook 8730w which is fatal to his claims**

"While some failure to warn claims can proceed without supporting expert testimony, [Power's] claim is not one of them." *Nelson, supra* at *17. Here, as in *Nelson, supra,* the scientific, technical, and specialized nature of the plaintiff's failure to warn claim – specifically, that the Elitebook should have been equipped with battery authentication technology –  means that expert testimony is required; similarly, as in *Nelson,* the plaintiff's two proffered experts on failure to warn here–Kutchek and Kitzes–have not identified any different or additional battery authentication language they believe was necessary for the Elitebook 8730w, and offer no analysis or proposed methodology to analyze the issue. *Id*. at 23. And neither expert has been able to demonstrate that such technology existed when the Elitebook was designed and manufactured in 2008. As set forth more fully in the motion to exclude the reports and testimony of Kutchek and Kitzes filed herewith, the report and testimony of Kutchek and Kitzes are inadmissible in view of their lack of qualifications, unreliable methods, and irrelevant conclusions, which is the subject of a pending motion to preclude the same filed herewith.

Indeed, *Nelson,* supra, is instructive. Magistrate Judge Lanzillo, whose "meticulous and well-reasoned" report and recommendation was subsequently adopted as the Opinion of the Court, *see* 2021 U.S. Dist. LEXIS 119685, at *1 (W.D. Pa. June 28, 2021) (Baxter, J.), granted the defendant manufacturer summary judgment on the plaintiff's failure to warn claim because plaintiff did not establish a technical failure to warn defect by expert testimony. *Nelson, supra* at *23. First, Magistrate Judge Lanzillo held that expert testimony was required in view of the scientific and technical nature of the failure to warn claim–involving the steering mechanics of an all-terrain vehicle–and given that "contents of the existing warnings and any potential

additional warnings are squarely at issue." *Id.* at *22, *citing Ruggiero, supra* at *10[4]. This case also presents a technical failure to warn claim involving lithium ion notebook batteries–and the contents of additional battery authentication warnings is squarely at issue, so expert testimony is similarly required.

Second, as in *Nelson,* where plaintiff proffered the expert testimony of an engineer like Kutchek and Kitzes–the same expert proffered by plaintiff in this case[5]–the experts here "have not identified any different or additional language they believe was necessary" for the Elitebook 8730w; "nor have they offered any analysis or even proposed a methodology to analyze the issue." *Nelson, supra* at *23, *citing Ruggiero*. These deficiencies justify their exclusion under Fed. R. Evid. 702–and these deficiencies are further fatal to plaintiff's warning defect claim. *Id.* The Court should accordingly grant the motion for summary judgment.

## 2.  HP gave multiple warnings to only use HP-approved battery packs with the Elitebook 8730W notebook

Notwithstanding plaintiff's failure to adduce admissible expert testimony on his failure to warn defect claim, the uncontroverted evidence shows that HP gave **multiple** warnings to only use HP-approved battery packs with the Elitebook 8730W notebook, and so his claim still fails.

The Elitebook 8730w notebook computer, as sold by HP, included the following warnings:

> [1] A warning on the battery pack itself stating "Replace with HP spares";

---

[4] It is worth noting that *Ruggiero, supra,* also excluded on multiple grounds Kitzes' expert opinion regarding failure to warn including its unreliability and irrelevance, which decision was subsequently affirmed by the Court of Appeals for the Third Circuit. *See Ruggiero v. Yamaha Motor Corp., U.S.A,* 778 Fed. Appx. 88 (3d Cir. 2019).

[5] It bears emphasis that plaintiff's counsel who retained Kitzes to his exclusion in *Nelson, supra* is counsel to the plaintiff in this case.

[2] a warning in the product documentation stating
"⚠WARNING! To reduce potential safety issues, use only the
battery provided with the computer, a replacement battery provided
by HP, or a compatible battery purchased from HP"; and

[3] a warning in the product documentation stating "⚠WARNING:
To reduce the possibility of heat-related injuries or of overheating
the computer, do not place the computer directly on your lap or
obstruct the computer or vents."

Facts, ¶¶ 4-5, 8. Accordingly, insofar as plaintiff argues that notwithstanding the clarity of these warnings, "a hypothetical reasonable consumer would be unaware of the risk of injury" after reading them, "Pennsylvania law forecloses [Power's] argument." *Chandler v. L'Oreal USA, Inc.*, 774 F. App'x 752, 754 (3d Cir. 2019). "Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." *Id, citing* Restatement (Second) of Torts § 402A cmt. j (Am. Law. Inst. 1965)*; accord Davis v. Berwind Corp.,*690 A.2d 186, 190 (Pa. 1997). Applying the foregoing here, "a reasonable consumer reads and heeds the warnings and expects exactly what they state": failure to use a battery provided with the computer, a replacement battery provided by HP, or a compatible battery purchased from HP can cause safety issues, and placing the computer directly on your lap can cause heat-related injuries. *Id.* There is no genuine issue of material fact concerning that these warnings were given with the Elitebook 8730w notebook. Summary judgment should be granted.

**B. The plaintiff failed to establish a prima facie case of strict liability, negligence, and breach of warranty, because he failed to establish that there was a causal connection between the injuries he allegedly sustained and the alleged defect in the product**

"The law is well established in Pennsylvania that a plaintiff must prove, as a necessary element of his products liability action, a causal connection between the injuries he allegedly

sustained and the alleged defect in the product, regardless of whether the claim sounds in negligence, strict liability or breach of warranty." *See Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc*., 171 F.3d 912, 937 n.23 (3d Cir. 1999). A plaintiff cannot do so where, as here, his required experts are subject to exclusion from testifying at trial. *See Oddi v. Ford Motor Co*., 234 F.3d 136, 159 (3d Cir. 2000).  Here, the plaintiff cannot establish causation because he has adduced no admissible expert evidence as to causation, nor has he otherwise adduced any evidence that he would have avoided the risk of his injury had he received a battery authentication warning. There is no genuine issue of material fact concerning the plaintiff's failures to establish causation, and this is fatal to his claims. Accordingly, the motion for summary judgment should be granted.

**1.  Plaintiff has failed to adduce admissible expert testimony concerning causation of his injury which is fatal to his claims**

"Pursuant to Pennsylvania law, proof of causation is a necessary element in a products liability action. Absent a causal relationship between the defendant's product and the plaintiff's injury the defendant cannot be held liable on a theory of negligence, strict product liability, or misrepresentation." *Ream v. Ethicon, Inc.*, 2020 U.S. Dist. LEXIS 219919, at *10 (M.D. Pa. Nov. 24, 2020) (Kane, J.) (alterations omitted), *quoting Soldo v. Sandoz Pharms. Corp*., 244 F. Supp. 2d 434, 524-25 (W.D. Pa. 2003). "[T]o meet her causation burden, plaintiff must first establish that the product is capable of causing the alleged injury (general causation). She must then establish that, in her particular case, the product did in fact cause her alleged injury (specific causation)." *Ream, supra* at *10, *citing Soldo v. Sandoz Pharms. Corp*., 244 F. Supp. 2d 434, 524-25 (W.D. Pa. 2003), *citing Heller v. Shaw Indus*., 1997 U.S. Dist. LEXIS 12399, at *6 (E.D. Pa. 1997), *aff'd,* 167 F. 3d 146 (3d Cir. 1999). "Further, a plaintiff must establish causation

through admissible expert testimony." *Ream, supra* at *10, *citing Soldo, supra* at 525 ("[i]n a case such as this one involving complex issues of causation not readily apparent to the finder of fact, plaintiff must present admissible expert testimony to carry her burden. If her expert testimony cannot support both general and specific causation, summary judgment for the defendant must be granted.")

In this case, the plaintiff has failed to establish causation through admissible expert testimony, as he must. As set forth more fully in the motion to exclude the reports and testimony of Kutchek and Kitzes filed herewith, the report and testimony of Kutchek and Kitzes are inadmissible in view of their lack of qualifications, unreliable methods, and irrelevant conclusions, which is the subject of a pending motion to preclude the same. Indeed, Kutchek and Kitzes present the same deficiencies as the expert in *Yoder v. Sportsman's Guide, Inc*., 2015 U.S. Dist. LEXIS 153094, at *27 (W.D. Pa. Nov. 12, 2015) (McVerry, J.)–an expert retained by counsel to the plaintiff in this case, and ultimately excluded by the Judge McVerry in connection with his granting summary judgment to the defendant manufacturer. In *Yoder,* the plaintiff's expert opined in respect of alleged warning defects in product labels and documentation. *Id.* at *24-25. The defendant manufacturer argued, and the Judge McVerry agreed, that the clarity of the instructions belied the plaintiff's expert's opinion that the product labels and documentation constituted a warning defect. *Id.* at *25. More importantly though, plaintiff's expert "does not allege that additional or more conspicuous warnings would have changed [plaintiff's] behavior or reduced or prevented the incident." *Id.* at *27. After excluding the expert's opinions, the Court granted summary judgment: "Without expert testimony or an independent knowledge of mechanical engineering, a juror could, at most, speculate as to Plaintiffs' theory of liability." *Id.*

at *33.

In this case, the same counsel retained Kutchek and Kitzes as the plaintiff's expert in *Yoder*. Kutchek and Kitzes offered, or failed to offer, similar opinions to the expert that counsel retained in *Yoder*–Kutchek and Kitzes opine that HP's warnings were defective, notwithstanding the clarity of the Elitebook 8730w warning labels and product documentation, but do not allege that additional or different warnings would have changed plaintiff's behavior. Facts, ¶¶ 16, 21. In fact, both admit that they undertook no effort to determine what HP warnings the plaintiff had received, or what other warnings would have changed plaintiff's behavior. *Id.* Their inadmissible testimony justifies the entry of summary judgment against the plaintiff. *See, e.g. White, supra* at *8-9 (excluding plaintiff's expert and granting summary judgment where expert failed to explain why existing warnings did not adequately warn a user, and why a greater level of specificity was required, preventing only conclusory assertions); *Nelson, supra* at *20-21 (rejecting Kitzes' testimony that a warning label was inadequate as without foundation, entirely speculative, and absent a testable methodology and granting summary judgment). These deficiencies justify Kutchek and Kitzes' exclusion under Fed. R. Evid. 702–and these deficiencies are further fatal to plaintiff's warning defect claim. The Court should accordingly grant the motion for summary judgment.

**2. Plaintiff has otherwise failed to adduce evidence that he would have avoided the risk of his injury had he received a battery authentication warning**

Notwithstanding plaintiff's failure to adduce admissible expert testimony on the causation of his failure to warn claim, the plaintiff adduced **no** other evidence that a different warning would have prevented his injury, and so his claim still fails.

A defendant may be liable in failure-to-warn claims "only when there is sufficient

evidence that additional warnings or reminders may have made a difference." *Conti v. Ford Motor Co*., 743 F.2d 195, 199 (3d Cir. 1984). "Where the theory of liability is failure to warn adequately, the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning may have prevented the accident before the issue of causation may be submitted to the jury." *Id.,* at 198; *see also Chandler v. L'Oreal USA, Inc.,* 340 F. Supp. 3d 551, 561-63 (W.D. Pa. 2018) (Fischer, J.), *aff'd* 2019 U.S. App. LEXIS 17604 (3d Cir. Pa., June 12, 2019).

"In this case, Plaintiff has failed to present sufficient evidence to establish a genuine dispute of material fact for trial on [his] failure to warn claims, as a reasonable jury could not conclude that the warnings provided were inadequate and **no evidence has been presented to demonstrate that an adequate warning may have prevented [his] injury**." *Chandler, supra* at 561 (emphasis added). That is, the plaintiff has never articulated what warnings he received, the warnings he allegedly should have received, or how those warnings would have affected his behavior. *See White, supra* at *9. Kutchek and Kitzes undertook no effort to ascertain the same from plaintiff. Facts, ¶¶ 16, 21. Here, plaintiff purchased the Elitebook 8730w from an eBay seller, who in turn had acquired it at the end of another's two-year lease. Facts, ¶¶ 2-3. It is undisputed that, when the Elitebook left HP's hands, it was equipped with multiple warnings, including warnings specific to batteries.  While plaintiff may argue that the original warnings were not provided to him from the *eBay* seller, Pennsylvania products liability law requires that the defect (here, the alleged failure to warn) exist at the time the product leaves the seller's hands (*see High, supra at* 345-46), not when the product changes hands for the third time.  Moreover, plaintiff previously owned the exact same model of notebook computer, which indisputably had

the warnings described above when it left HP's hands. Thus, plaintiff cannot argue that the

warnings were never conveyed to him.

Nor can plaintiff articulate why the multiple warnings to only use HP-approved battery

packs with the Elitebook 8730W notebook were "inadequate," such that HP was required to

provide an additional battery authentication warning. *White, supra* at \*9, *citing Salvio v. Amgen

Inc.*, 2012 U.S. Dist. LEXIS 19009, 2012 WL 517446, at \*6 (W.D. Pa. Feb. 15, 2012) (rejecting

negligent failure to warn claim against manufacturer of prescription drug because the warning

was adequate as a matter of law, since it advised of the exact injury that occurred, even though it

warned of risk of infection generally, and decedent contracted a fungal infection). There is no

genuine dispute of material fact that at this juncture, plaintiff's evidence does not even support a

guess, much less a reasonable inference, that the existence of an adequate warning may have

prevented the accident. *Conti, supra* at 198. The Court should grant the motion for summary

judgment.

**C. The plaintiff failed to establish causation of his incontinence**

"To succeed on any of his claims, [Plaintiff] must prove the Defendants' products caused

his [urinary incontinence]. *Hoefling v. U.S. Smokeless Tobacco Co., LLC*, 2021 U.S. Dist. LEXIS

242783, at \*47-48 (E.D. Pa. Dec. 21, 2021) (Pappert, J.), *citing Mellon v. Barre-Nat'l Drug Co.*,

431 Pa. Super. 175, 636 A.2d 187, 191 (Pa. Super Ct. 1993) ("Proof of causation is a necessary

element in a products liability action as well as in a negligence action."). "Expert testimony is

generally required to prove causation of a medical condition." *Hoefling, supra* at \*48, *citing Feit

v. Great W. Life & Annuity Ins. Co.*, 271 F. App'x 246, 252 (3d Cir. 2008);  *Cohen v. Albert

Einstein Med. Ctr.*, 405 Pa. Super. 392, 592 A.2d 720, 723 (Pa. Super Ct. 1991) (explaining that

expert testimony is necessary where the case's facts are beyond an ordinary layperson's knowledge). Here, the plaintiff cannot establish injury causation because he has adduced no admissible expert evidence as to injury causation of his incontinence, nor has he otherwise adduced any competent evidence of causation of his incontinence. There is no genuine issue of material fact concerning the plaintiff's failures to establish injury causation, and this is fatal to his damages claim for incontinence. Accordingly, the motion for summary judgment should be granted.

Plaintiff's claim that he suffered incontinence as a result of the June 20, 2015 incident that is the subject of this lawsuit requires admissible expert testimony to be established–expert testimony the plaintiff failed to adduce. **His claim for damages for incontinence therefore fails and summary judgment should be granted for this reason alone.**

Further, even if the plaintiff had adduced admissible expert testimony concerning his claim as to incontinence, there is no reported evidence of injury to plaintiff's genitourinary system and the opinion of Dr. Ogagan, plaintiff's treating urologist, that he did not "suspect any relationship between [plaintiff's] chemical burn and his bladder and bowel incontinence." Accordingly, the urinary incontinence issues "suffered by plaintiff are not due to damage from the burns he sustained after the explosion of his computer on June 20, 2015." Facts, ¶ 10. There is no genuine issue of material fact concerning the absence of causation evidence for the plaintiff's urinary incontinence. Summary judgment on these damages is proper.

1. **Plaintiff has failed to adduce admissible expert testimony concerning causation of his urinary incontinence which is fatal to his claim for related damages**

As set forth more fully in the motion to exclude the report and testimony of Dr. Drew filed herewith, the report and testimony of Dr. Drew is inadmissible in view of his unreliable

methods and unsupported conclusions, which is the subject of a pending motion to preclude the same. Dr. Drew acknowledges that Dr. Ogagan concluded the plaintiff's incontinence was not due to damage from the burns he sustained on June 20, 2015, and further acknowledges that there was no reported evidence of injury to plaintiff's genitourinary system. He did not examine or interview the plaintiff, conduct any research or testing, view photos of plaintiff's injuries, or consult medical treatises or articles. Yet, Dr. Drew nevertheless opines on the causation of plaintiff's urinary incontinence and bases his opinion solely on *a post hoc ergo propter hoc* fallacy: because the plaintiff presented with urinary incontinence after the June 20, 2015 incident, the two events must be causally related.

Indeed, this kind of opinion evidence is inadmissible. "Under Pennsylvania law, experts on medical causation must testify to a reasonable degree of medical certainty. This is not merely an evidentiary requirement; it forms part of the plaintiff's burden of proof. If a plaintiff lacks evidence to satisfy this standard, summary judgment is appropriate." *Hoefling, supra* at *48, *citing Paoli, supra* at 750-2 (quotation marks omitted). Dr. Drew's report and testimony is rife with equivocation that renders his opinions inadmissible. *See, e.g.* ECF No. 139 at 6 ("The incontinence… is clearly related to the injuries whether physical, psychological or a combination of the two"); *id.* ("I don't think there's a specific mechanism of injury here, physical, that would explain purely the incontinence"); *id.* ("I would probably say more – more psychological than physical … [plaintiff] was, as most of us would be, sort of freaked out, if you will, by seeing an explosion … that's where my opinion comes from."). This vague and equivocal testimony is inadmissible on the issue of injury causation.

The vague and equivocal testimony, of course, resulted from a vague and equivocal

process. "Physicians may base their opinions on the cause of a person's illness on a properly

performed differential etiology." *Hoefling, supra* at \*34, *quoting Heller v. Shaw Indus., Inc.*, 167

F.3d 146, 154 (3d Cir. 1999). "When conducting such an analysis, the expert must "rule in" then

"rule out" possible causes of the illness. Experts are not required to address all possible causes,

but obvious alternative causes need to be ruled out." *Hoefling, supra*, at \*35 (alteration omitted),

*quoting In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 176 F. Supp. 3d 483, 494

(E.D. Pa. 2016) (Rufe, J.). "Once a defendant points to a plausible alternative cause of the

plaintiff's illness, the expert must "offer a good explanation as to why his or her conclusion

remains reliable." *Hoefling, supra* at \*35, *quoting Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d

802, 808 (3d Cir. 1997). "A physician need not perform every possible test to confirm his

opinion, but he must "employ[] sufficient diagnostic techniques to have good grounds" for his

conclusion. *Hoefling, supra* at \*35, *quoting Paoli*, *supra* at 761. Dr. Drew conducted no

differential diagnosis. He admitted that plaintiff had a long history of PTSD, depression, and

other psychological conditions that predated the accident. ECF No. 139, at 4. Yet, he disregarded

these records in arriving at his opinion that plaintiff's incontinence might have been the result of

some unspecified psychological reaction to the accident. Dr. Drew's opinions are unreliable, so

they are inadmissible. F.R.E. 702. "Because Dr. [Drew's] expert opinions are inadmissible, no

genuine issues of fact with respect to causation remain for the jury." *Hoefling, supra* at \*48,

*citing In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 785 (3d Cir. 1994).

**2. Plaintiff has failed to otherwise adduce competent evidence of causation of his incontinence**

Even if Dr. Drew's report and testimony were admissible as to plaintiff's claimed

incontinence, there is no reported evidence of injury to plaintiff's genitourinary system. Facts, ¶

10. Similarly, in the opinion of Dr. Ogagan, plaintiff's treating urologist, there was no relationship between plaintiff's chemical burn and his incontinence. *Id.* Ultimately, the incontinence issues "suffered by plaintiff are not due to damage from the burns he sustained after the explosion of his computer on June 20, 2015." Facts, ¶ 10. There is simply no competent evidence in plaintiff's medical records or otherwise that would establish this claim. There is no genuine issue of material fact concerning the absence of causation evidence for the plaintiff's incontinence. The Court should therefore grant the motion for summary judgment on these damages.

## IV. CONCLUSION

There is no genuine dispute of material fact that the plaintiff has failed to establish a prima facie case of strict liability, negligence and breach of warranty, because he has failed to establish a defect, causal connection, or injury causation by admissible expert testimony. Further, it is undisputed that HP gave **multiple** warnings to only use HP-approved battery packs with the Elitebook 8730W notebook. The plaintiff could not show that he would have avoided the risk of his injury had he received a battery authentication warning. The plaintiff could not contravene the record evidence showing he had no genitourinary injury. As the plaintiff has failed to establish that the Elitebook 8730w had a battery authentication warning defect; that the alleged defect caused his injuries; and that those causally related injuries included his alleged incontinence, the motion for summary judgment should be granted under Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure 56.

/s/ Michael A. Weiner

Michael A. Weiner, Esquire
PA I.D. #93640
Bennett, Bricklin & Saltzburg LLC
707 Grant Street, Suite 1800
Pittsburgh, PA 15219
Phone: (412) 894-4101
Fax: (412) 894-4111
weiner@bbs-law.com

Christopher G. Betke
*Pro Hac Vice*
Coughlin Betke LLP
175 Federal Street
Boston, MA 02110
(617) 988-8050
(617) 988-8005
cbetke@coughlinbetke.com

Attorneys for HP, Inc.

### Certificate of Service

I hereby certify that on May 13, 2022, a true and accurate copy of the foregoing was served via the Court's Electronic Case Filing System to all counsel of record.

/s/ Michael A. Weiner
Michael A. Weiner