# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS POWER, | Civil Division |
| *Plaintiff*, | Docket No. 2:17-CV-00154-MRH |
| v. | |
| HEWLETT-PACKARD COMPANY, | Hon. Mark R. Hornak |
| *Defendant*. | Friday, May 13, 2022 |

### LOCAL RULE 56(B)(1) STATEMENT OF UNDISPUTED MATERIAL FACTS

The Defendant HP, Inc., improperly named as Hewlett-Packard Company, ("HP") hereby submits its Local Rule 56(b)(1) statement of undisputed material facts in support of its Motion for Summary Judgment.

1. Prior to April 2013, the plaintiff, Thomas Power, purchased a used HP Elitebook 8730w notebook computer. Pl. Tr., App'x. Ex. A, at 31. He did not recall if he received product documentation with the Elitebook 8730w. *Id.*

2. On April 29, 2013, plaintiff purchased a replacement HP Elitebook 8730w on eBay.com for $ 230 because he had broken his screen. Pl. Tr., App'x. Ex. A, at 33-4, 37. The sales listing on eBay.com stated that the seller had purchased several Elitebook 8730w notebooks after they had been leased for a period of two years. Pl. Tr., App'x. Ex. A, at 35.

3. The replacement Elitebook 8730w did not come with product documentation. Pl. Tr., App'x. Ex. A, at 42. Plaintiff received a $ 100 refund due to a discrepancy in the listed processor speed of the computer, paying a total of $ 130 for the Elitebook 8730w. Pl. Tr., App'x. Ex. A, at 44.

4. The Elitebook 8730w included a warning on the battery pack that was shipped with the at-issue notebook that read "Replace with HP spares". Aff. of Christopher Betke, App'x. Ex. B, ¶ 3, *citing* Pipho Tr. at 94. The Elitebook 8730w product documentation provided to end-users and

made available to the public at-large on HP.com included warnings that stated: "⚠WARNING! To reduce potential safety issues, use only the battery provided with the computer, a replacement battery provided by HP, or a compatible battery purchased from HP". Aff. of Christopher Betke, App'x. Ex. B, ¶ 5, *citing* Report of Quinn Horn, PhD, P.E, at 9.

5. "Multiple warnings to only use HP-approved battery packs were provided with the HP 8730W notebook computer as sold by HP," and "when the HP 8730W notebook computer was designed, industry standards did not prohibit the use of third-party accessories, nor require an end-user alert when a third-party battery pack was installed." Aff. of Christopher Betke, App'x. Ex. B, ¶ 5, *citing* Report of Quinn Horn, PhD, P.E. at 11 (referring to IEEE 1625-2008 and IEEE 1725-2006). As a battery design engineer, Dr. Horn is qualified to offer opinions on lithium ion battery cells in notebook computers. *See e.g. Gopalratnam v. Hewlett-Packard Co*., 2017 U.S. Dist. LEXIS 40386, at *34 (E.D. Wis. Mar. 21, 2017) (Pepper, J.).

6. In the period of more than two years that plaintiff owned the Elitebook 8730w that he alleges caused his injuries, he never received any type of warning on the notebook. Pl. Tr., App'x. Ex. A, at 57. He never received an error message concerning the battery's end of life or other issue. *Id.*

7. On June 20, 2015 at 1:00 a.m., the plaintiff was using his computer at Club Julian, a 24-hour gym. Pl. Tr., App'x. Ex. A, at 47-9. The plaintiff had used his computer for 20 to 60 minutes, searching for apartments. Pl. Tr., App'x. Ex. A, at 58. Suddenly, the laptop exploded into flame, burning plaintiff's legs. Pl. Tr., App'x. Ex. A, at 59.

8. For the 20 to 60 minutes before the explosion, the plaintiff had the laptop directly on his lap, with most of it resting on the bare skin of his legs. Pl. Tr., App'x. Ex. A, at 58-9, 68. The

Elitebook 8730w product documentation instructs users "⚠WARNING: To reduce the possibility of heat-related injuries or of overheating the computer, do not place the computer directly on your lap or obstruct the computer or vents." Aff. of Christopher Betke, App'x. Ex. B, ¶ 8.

9. After receiving emergency medical care at the hospital and begin discharged the same day, plaintiff returned the following week and was admitted through July 10, 2015. Pl. Tr., App'x. Ex. A, at 74-6. He was treated with a skin graft, hydrotherapy, catheterization, and intravenous antibiotics. Pl. Tr., App'x. Ex. A, at 78.

10. Plaintiff treated with Paul Ogagan, MD to address complaints of bladder incontinence. Pl. Tr., App'x Ex. A, at 81-2. Dr. Ogagan concluded that he was "uncertain of the etiology of [Power's] bowel and bladder incontinence as I do not suspect any relationship between his chemical burn and his bladder and bowel incontinence." Pl. Tr., App'x. Ex. A, at 82.

11. The plaintiff ceased medical treatment related to the June 20, 2015 incident in early 2016. Pl. Tr., App'x. Ex. A, at 89. He reported that as of July 30, 2018 his legs had healed, and his bowel incontinence was 90 % improved. Pl. Tr., App'x. Ex. A, at 86, 89.

12. "In his Complaint filed on January 18, 2017, Power raises several theories of liability against HP: (1) strict products liability; (2) negligence; and (3) breach of warranty." *Power v. Hewlett-Packard Co.*, 2021 U.S. Dist. LEXIS 68093, at *2-4 (W.D. Pa. Apr. 6, 2021) (Hornak, J.).

13. Plaintiff previously maintained his "claims are based on the fact that defendant manufactured, marketed and sold a laptop, lithium ion battery and charger, one of which caused

the laptop and lithium ion battery to overheat, ignite and explode on plaintiff causing him to suffer severe burns." Doc. 53-4 at 4.

14. However, on October 30, 2020, at the close of expert disclosures, the plaintiff disclosed the expert reports of William Kitzes, JD, Kenneth Kutchek, PE, and Michael Drew, MD. *See* ECF Nos. 112-5, 112-6.

15. Kutchek did not offer an opinion as to a design or manufacturing defect. Instead, Kutchek opined in his report that: "HP failed to inform or warn the user of a non-HP approved battery pack installed in its notebook computers." ECF No. 112-5 at 21. Kutcheck also opined: "HP failed to authenticate battery packs installed in its notebook computers." ECF No. 112-5 at 21.

16. During his deposition on January 4, 2022, Kutchek testified that his "opinion in this case is that the technology existed to warn a user like Mr. Power, through a pop up window, that a non-HP approved battery pack being used posed a potential risk of harm." Kutchek Tr., App'x Ex. C, at 93-4. Kutchek also testified that he did not know if the plaintiff "even needed that warning", had received user warnings prior to the June 20, 2015 incident, or had such warnings in mind at the time of the incident. Kutchek Tr., App'x Ex. C, at 58-9.

17. However, Kutchek further testified during his deposition that while he undertook to determine "whether any notebook computers in the marketplace in 2009 used battery authentication," he ultimately was unsuccessful. Kutchek Tr., App'x Ex. C, at 82-3.

18. Kutchek instead referred to five patents in his report in support of the proposition that "authentication technology was available at the time." ECF No. 112-5 at 20.

19. However, four of the five patents Kutchek found in his "Google search" and listed in his report were allegedly after the Elitebook at issue in this case was manufactured. Kutchek Tr., App'x Ex. C, at 78 (conceding patent issue dates after manufacture date of August 18, 2009); *compare* ECF No. 112-5 at 19-20 (referencing patent issue dates of October 28, 2014; March 6, 2012; May 12, 2011; September 8, 2009; and May 18, 2005).

20. Further, four of the five patents Kutchek found in his "Google search" concerned products other than notebook computers, including mobile phones and inkjet cartridges. *See* ECF No. 112-5 at 19-20.

21. Kitzes did not offer an opinion as to a design or manufacturing defect. Kitzes instead opined in his report that: "HP failed to warn HP notebook owners of the dangers of fire, burns and explosions associated with HP's belief that "non-compatible" replacement battery packs create "potential safety issues." HP never warned notebook users that use of "noncompatible" battery packs would increase the risk of fire and explosion." ECF No. 112-6 at 16. However, he testified that he did not "make any assessment about whether or not Mr. Power needed a warning." Kitzes Tr., App'x Ex. D, at 27.

22. Kitzes also opined: "By late 2008, HP developed a battery authentication system for certain laptops to identify "counterfeit" battery packs, yet the subject HP EliteBook did not include such system to identify non-HP batteries." ECF No. 112-6 at 17.

23. During his deposition on March 14, 2022, Kitzes testified that the source of his belief in that in 2008 "there was pop-up technology that would alert someone to a counterfeit battery is HP — is support.hp.com," specifically a document entitled "HP Notebook PCs-601 or 60X error

displays on a black screen" that included a reference to a "605 — Battery Counterfeit Check Error." Kitzes Tr., App'x Ex. D, at 67-69, 95, 124; ECF No. 112-6 at 15, 19-20.

24. The document entitled "HP Notebook PCs-601 or 60X error displays on a black screen" that Kitzes relied on was published on September 29, 2020, over ten years after the manufacture of the subject Elitebook 8730w, and three years after the incident giving rise to this lawsuit. Affidavit of Theresa Klusendorf, ECF No. 142-2, ¶¶ 5-7.

25. Drew opined: "The incontinence… is clearly related to the injuries whether physical, psychological or a combination of the two." *See* ECF No. 139, at 6.

26. At Drew's deposition on March 8, 2022, however, he testified that he was "unable to render an opinion within a reasonable degree of scientific or medical certainty that Mr. Power's incontinence is psychological versus physical, some combination thereof." *See* ECF No. 139, at 7.

27. Consistent with Dr. Ogagan's conclusion, Herman Bagga, MD opined: "the urinary incontinence issues suffered by Mr. Power are not due to damage from the burns he sustained after the explosion of his computer on June 20, 2015. This opinion is based on the fact that there has been no reported evidence of injury to the genitourinary system." Aff. of Christopher Betke, App'x. Ex. B, ¶ 7, *citing* Bagga Rept. at 2-3. Dr. Bagga is qualified to offer this opinion as the Medical Director of Urology at Allegheny Valley Hospital and Director of the Center for Men's Health and Genitourinary Reconstruction at the Allegheny Health Network. Aff. of Christopher Betke, App'x. Ex. B, ¶ 6.

/s/ Michael A. Weiner

Michael A. Weiner, Esquire
PA I.D. #93640
Bennett, Bricklin & Saltzburg LLC
707 Grant Street, Suite 1800
Pittsburgh, PA 15219
Phone: (412) 894-4101
Fax: (412) 894-4111
weiner@bbs-law.com

Christopher G. Betke
*Pro Hac Vice*
Coughlin Betke LLP
175 Federal Street
Boston, MA 02110
(617) 988-8050
(617) 988-8005
cbetke@coughlinbetke.com

Attorneys for HP, Inc.

**Certificate of Service**

I hereby certify that on May 13, 2022, a true and accurate copy of the foregoing was served via the Court's Electronic Case Filing System to all counsel of record.

/s/ Michael A. Weiner
Michael A. Weiner