**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS POWER, | Civil Division |
| *Plaintiff*, | Docket No. 2:17-CV-00154-MRH |
| v. | |
| HEWLETT-PACKARD COMPANY, | Hon. Mark R. Hornak |
| *Defendant*. | Friday, May 13, 2022 |

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PRECLUDE TESTIMONY**
**FROM WILLIAM F. KITZES, J.D.**

---

The Court is familiar with this products liability case and the plaintiff's proffered expert, William F. Kitzes, J.D, whose unqualified, unreliable and irrelevant opinions must be excluded. The plaintiff purchased a used HP notebook computer on eBay for $230, then received a $100 refund from the seller, ultimately paying $130 for the Elitebook 8730w. Thereafter, he alleges it caught fire during use. From the outset of the case, Defendant HP, Inc., improperly named as Hewlett-Packard Company, ("HP") asserted that the battery that caused the fire was not original to the notebook but was an aftermarket battery. Plaintiff refused to concede this point and maintained the notebook battery was a defective HP battery for over three years. With his expert disclosures, plaintiff finally conceded that the battery was, in fact, an aftermarket battery, and abandoned the theory that "a defective HP battery" caused the plaintiff's injuries. Through his experts, Plaintiff has pursued a different theory of liability, that HP failed to adequately prevent or warn Power from using non-HP approved batteries.

As the Court noted, "Power and his counsel did have the duty to supplement Power's prior discovery responses once they had concluded that the involved battery was not of HP origin, and the fact that HP already knew that fact would not relieve them of that duty." *Power v. Hewlett-Packard Co.*, 2021 U.S. Dist. LEXIS 68093, at *14-15 (W.D. Pa. Apr. 6, 2021) (Hornak,

J.). Indeed, plaintiff's other liability expert, Kenneth Kutchek, who stated in his report that he concluded the battery was an aftermarket battery on December 19, 2019, *see id.* at n. 6, later testified that he came to that conclusion even earlier, on September 24, 2019.

Unsurprisingly given plaintiff's tortured prosecution of this case, his experts are not qualified concerning battery and computer science, **and they admit it**. Kitzes' work is unreliable because it was limited to a search of documents that published on HP.com many years **after** the 8730w was manufactured. This is a willfully unreliable methodology that produced obviously irrelevant opinions–consistent with at least 20 other trial and appellate courts, including this Court and the Third Circuit Court of Appeals, that have excluded in whole or in part similar testimony by Kitzes' to that proffered here.[1] This Court should reject his unsubstantiated opinions as *ipse dixit. Hurd, et al. v. Yaeger, et al.*, 2009 U.S. Dist. LEXIS 72032, 11-12 (M.D.Pa. 2009), *citing General Electric v. Joiner*, 522 U.S. 136, 142 (1997) ("Nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert"); *see also Oddi v. Ford Motor Co.*, 234 F.3d 136, 156, 158 (3d Cir. 2000) (excluding expert testimony in products liability case

---

[1] *See e.g. Ruggiero v. Yamaha Motor Corp., U.S.A.*, 778 F. App'x 88, 93-94 (3d Cir. 2019) (affirming exclusion of Kitzes); *Nelson v. Am. Honda Motor Co.*, 2021 U.S. Dist. LEXIS 93503, at *17 (W.D. Pa. May 17, 2021) (Lanzillo, J.); *Ruggiero v. Yamaha Motor Corp., U.S.A.*, 2017 U.S. Dist. LEXIS 213635, at *10-11 (D.N.J. Dec. 29, 2017); *Ruggiero v. Yamaha Motor Corp.*, 2017 U.S. Dist. LEXIS 48908, at *33 (D.N.J. Mar. 31, 2017) (Simandle, J.); *Masterson v. B.J. Stores, Inc.*, 2007 U.S. Dist. LEXIS 98485, at *21 (D.N.J. Mar. 20, 2007) (Bumb, J.); *Schmidt v. Conagra Foods, Inc.*, 2020 U.S. Dist. LEXIS 222731, at *80 (D. Conn. Nov. 30, 2020) (Underhill, J.); *Schall v. Suzuki Motor of Am.*, 2020 U.S. Dist. LEXIS 43118, at *7 (W.D. Ky. Mar. 12, 2020) (McKinley, J.); *Jackson v. E-Z-GO Div. of Textron, Inc.*, 326 F. Supp. 3d 375, 399 (W.D. Ky. 2018) (Russell, J.); *Miller v. Coty, Inc.*, 2018 U.S. Dist. LEXIS 46911, at *45 (W.D. Ky. Mar. 21, 2018) (Simpson, J.); *Walker v. Bell Sports, Inc.*, 2018 U.S. Dist. LEXIS 233891, at *7-8 (N.D. Ga. Aug. 24, 2018) (Story, J.); *Landis v. Hearthmark, LLC*, 2014 U.S. Dist. LEXIS 5576, at *19 (N.D.W. Va. Jan. 16, 2014) (Bailey, J.); *S.S. v. Leatt Corp.*, 2013 U.S. Dist. LEXIS 98366, at *62 (N.D. Ohio July 15, 2013) (Gaughan, J.); *In re Yamaha Motor Corp. Rhino Atv Prods. Liab. Litig.*, 816 F. Supp. 2d 442, 457-58 (W.D. Ky. 2011) (Coffman, J.); *Rosa v. City of Seaside,* 675 F. Supp. 2d 1006, 1014 n.2 (N.D. Cal. 2009) (Fogel, J.); *Kent v. Robert Bosch Tool Corp.*, 2009 U.S. Dist. LEXIS 124536, at *5-6 (D. Mass. Jan. 23, 2009) (Zobel, J.); *Landrin v. MGA Entm't, Inc.*, 2006 U.S. Dist. LEXIS 97335, at *25-26 (S.D. Fla. Jan. 3, 2006) (Simonton, J.); *Lockridge v. Scripto-Tokai Corp.*, 2005 U.S. Dist. LEXIS 47962, at *63 (M.D. Tenn. Mar. 16, 2005); *Flock v. Scripto-Tokai Corp.*, 2001 U.S. Dist. LEXIS 26561, at *3-4 (S.D. Tex. Sep. 28, 2001) (Crone, J.); *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 520-21 (6th Cir. 1998); *Clark v. Shores*, 201 W. Va. 636, 639 n.9 (1997).

where expert engaged in a "haphazard, intuitive inquiry" using "little, if any, methodology beyond his own intuition" because his "*ipse dixit* [did] not withstand Daubert's scrutiny").

Kitzes' testimony was purportedly offered to "opine that HP failed to authenticate battery packs installed in its notebook computers, and that HP failed to adequately prevent or warn Power from using non-HP approved batteries." *Power, supra* at *2-4, *citing* ECF Nos. 112, at 6; 112-6. However Kitzes is not qualified to offer such an opinion, and did not employ a reliable methodology. HP accordingly moves to preclude the opinion and testimony of Kitzes under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). HP requests a *Daubert* hearing.

## I.   BACKGROUND

Power filed suit against HP on January 18, 2017. In his complaint, he alleged, "[w]hile Power was using the laptop, Power suffered severe thermal and chemical burns as a result of the lithium ion battery cells contained in the subject laptop short circuiting, overheating, igniting, and exploding on Power's arms, hands, torso, and lower extremities." *Power, supra* at *2. He raised three theories of liability against HP: (1) strict products liability; (2) negligence; and (3) breach of warranty. *Id.*

For nearly four years, Powers persisted in his theory that an HP battery caused the subject explosion, despite HP's repeated representations that the Elitebook contained aftermarket batteries from an unknown origin. On October 30, 2020, Power disclosed two expert reports. In both reports, the experts opine that HP failed to authenticate battery packs installed in its notebook computers, and that HP failed to adequately prevent or warn Power from using non-HP approved batteries. *Power, supra* at *2, *citing* ECF Nos. 112-5; and 112-6. Changing his theory

of liability nearly four years into this litigation, plaintiff's experts admitted that the battery at issue here was not an HP-approved battery. *Id.*

## A.  William Kitzes' Report

Kitzes stated the following opinions in his report:

> 1. Hewlett-Packard Company (HP) failed to act as a reasonably prudent manufacturer to adequately protect computer users from severe burn injuries associated with the foreseeable use of their laptop/notebook computers with replaceable batteries.
>
> 2. HP failed to warn HP notebook owners of the dangers of fire, bums and explosions associated with HP's belief that "non-compatible" replacement battery packs create "potential safety issues." HP never warned notebook users that use of "noncompatible" battery packs would increase the risk of fire and explosion.
>
> 3. HP never clearly identified which battery packs were compatible and which were not compatible. Many aftermarket battery packs were advertised and promoted as HP replacement batteries or HP "spares," and at least one reseller included the HP logo on their website.
>
> 4. By late 2008, HP developed a battery authentication system for certain laptops to identify "counterfeit" battery packs, yet the subject HP EliteBook did not include such system to identify non-HP batteries.
>
> 5. There is no readily available evidence that HP took corrective steps to assist users in selecting only HP approved replacement or "spare" battery packs. Many resellers advertise and promote "HP replacement batteries" specific to HP notebook models. Resellers, including WalMart, use specific HP part number, such as HP 458274-421 for use with the EliteBook 8730w. These batteries are marked CE and RoHS certified.

ECF No. 112-6 at 12-13. Aside from having no relevant training, education or experience, Kitzes' opinion should be stricken because it is not based on any reliable data or methodology, and indeed is wholly speculative. Kitzes essentially searched the internet, found one document that he believed supported his argument, ignored the fact that the document was irrelevant, and used that as a jumping off point to assume that certain technology existed back in 2008 when the

Elitebook was designed, without taking any steps to confirm whether it in fact did.

**B. The motion to strike the plaintiff's expert disclosures**

Prior to the expert disclosures, "Power repeatedly pled in his Complaint that the battery in the involved laptop was an HP battery" and "never conceded that HP did not design, approve, or manufacture the at-issue battery." *Power, supra* at *8-9. Power only reversed this position in his expert disclosures years into the litigation, prompting HP to file a motion to strike his expert disclosures pursuant to Rules 26(e)(1)(A) and 37©. ECF Nos. 111, 112. On April 6, 2021, the Court, Hornak, J., denied the motion. *Id*. at *15.

**C. Kitzes' deposition revealed that he is unqualified and that his opinions are not based on reliable facts, data, principles or methodology**

On March 14, 2022, Kitzes was deposed. *See* Deposition Transcript of William F. Kitzes, J.D., Exhibit A. His deposition testimony revealed that (1) he is unqualified to offer an opinion in this case and (2) his opinions, such as they are, are entirely speculative and inadmissible. *See* Kitzes Tr., Ex .A.

**i.      Kitzes is unqualified to offer an opinion in this case**

Kitzes is educated as an attorney. He has no education, training, or professional experience in notebook computer design or manufacture, battery pack design and manufacture, or notebook computer or battery safety warning label design. Ex. A at 17-18. He has not published any peer-reviewed articles about notebook computers or lithium ion batteries. Ex. A at 23.

**ii.     Kitzes' opinions are wholly speculative and are not based on reliable facts, data, principles or methodology**

Kitzes opines that there was technology that could have alerted someone like Powers to a

counterfeit battery. However, his *only* source for this opinion is a document published on September 29, 2020, entitled, "HP Notebook PCs-601 or 60X error displays on a black screen." Ex. A at 68-69; ECF No. 112-6 at 15; Ex. B, Decl. of Theresa Klusendorf, ¶¶ 4-7. This document could not have any relevance to the Elitebook at issue in this case, which was designed in 2008 and sold in 2009. There is no indication the document references what technology, if any, existed at the relevant timeframe. Further, Kitzes did nothing to ascertain whether there was a market for non-approved batteries in 2008 or 2009, and, if so, the extent of that market. Ex. A at 70. He had no knowledge or expertise concerning the defeat of authentication. Ex. A at 75. In fact, Kitzes could not identify those portions of his opinion that pertain to the time period before the Elitebook was manufactured. Ex. A at 94. He admitted that the HP.com document he referenced could have been posted after the incident that is the subject of this lawsuit (as it in fact was). Ex. A at 98-99; ECF No. 112-6 at 16-19. Thus, Kitzes's opinions are premised on a document published **over a decade** after the Power notebook was designed and manufactured.

Kitzes opined that HP failed to warn users of certain alleged hazards, but he admitted that he did not know whether the Elitebook contained any warnings when it left HP's hands Ex. A at 72-73. Kitzes also ignored the deposition testimony of HP's corporate representatives (which Kitzes claimed to review), which proved that the original battery pack contained a warning label stating, "replace with HP spares." ECF No. 112-5 at 10. Despite allegedly reviewing this deposition transcript in which the warning label was discussed, Kitzes made no reference to it in his report. Ex. A at 73. Equally, he admitted that a warning to use HP spare batteries was provided to the original purchaser and that such documentation was also available on the internet. Ex. A at 73-74. In sum, Kitzes opined in his report that HP failed to provide warnings,

but his deposition testimony and the evidence in this case show that his opinion is completely baseless.

Further demonstrating the speculative and unsupported nature of his opinions, Kitzes testified that: (a) he had no knowledge about what the eBay seller may have done to the notebook computer (Ex. A at 75, 80); (b) he never spoke to Power and did not make any assessment about whether Power actually needed a warning (Ex. A at 26-27); © he was not aware of any standards or guides concerning warnings to be placed on notebook computers or battery packs for sale to consumers (Ex. A at 103); (d) he did no research to determine if there was a problem with non-approved batteries being used in notebook computers in and around 2008 and 2009 (Ex. A at 116); and (e) he was not aware of UL standards for notebook computers, he did not review them, and they did not impact his opinion. Ex. A at 122–123.

## II.  LEGAL STANDARDS

Expert witness testimony is governed by Fed. R. Evid. 702, which "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit":

> Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that a broad range of knowledge, skills, and training qualify an expert.

> Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his on her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity.

> Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.

*Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003), *citing In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 749 (3d Cir. 1994), *Daubert*, 509 U.S. 579 (1993). "Evaluating the reliability of an expert's methodology is not a credibility determination but a critical gatekeeping function for judges — not juries — to perform." *Wood v. Showers*, 822 F. App'x 122, 125 (3d Cir. 2020), *citing Kumho Tire v. Carmichael*, 526 U.S. 137, 147 (1999).

## III. ARGUMENT

### B. The testimony of William F. Kitzes, J.D. should be precluded

### 1. Kitzes is an attorney unqualified to make scientific and technical analyses to determine what hazards the HP Elitebook 8730w presented as a consumer product

Courts confronted with Kitzes' testimony in products liability matters have found that he is unqualified to offer opinions, as here, on the hazards of consumer products. "Determining what hazards a consumer product presents involves scientific and technical analyses a "warnings" expert, such as Kitzes claims to be, is unqualified to make." *Landis, supra* at *17-18 ; *see also Walker, supra* at *5-6 ("The Court agrees that Mr. Kitzes is not qualified … This is because Mr. Kitzes has formed no such defensible opinion from his own experience and research. Nor could he, given that Mr. Kitzes has no experience related to the design, engineering, inspecting, or safety of bicycle helmets. Mr. Kitzes's only experience with bicycle helmets appears to be in this case."); *Kent, supra* at *5 ("Defendant objects to testimony from plaintiffs' expert William Kitzes opining that Bosch should have adopted safety measures such as an alternate guard system and SawStop technology. Kitzes has no technical, mathematical or statistical training and he has no familiarity with table saws or woodworking."); *Clark v, supra* at 639, n.6 ("nothing contained in his affidavit or elsewhere in the record supports his alleged expertise in industry procedures for allowing minors to test drive vehicles … Kitzes' affidavit, at

best, is conclusory and lacks any relevant analysis.").

Here, Kitzes admitted that he has no education, training, or professional experience in notebook design or manufacture, battery pack design and manufacture, or notebook computer or battery safety warning label design. Ex. A at 17-18. He has not published any peer-reviewed articles about notebook computers or lithium ion batteries. Ex. A at 23. He was not aware of any standards or guides concerning warnings to be placed on notebook computers or battery packs for sale to consumers. Ex. A at 103. He has no familiarity with UL standards for notebook computers, did not review them, and they did not impact his opinion. Ex. A at 122–123. Therefore, Kitzes is unqualified to make analyses to determine what hazards the Elitebook 8730w presented as a consumer product, and his testimony should accordingly be precluded under Federal Rule of Evidence 702.

**2.   Kitzes did not employ any reliable methodology, test the effectiveness of any alternate warnings or identify any contemporaneous industry warning practice**

Courts confronted with Kitzes' testimony, even in cases where he was found to be qualified, have excluded that testimony "because it was unreliable and not sufficiently tied to the facts of the case." *See Ruggiero,* 778 F. App'x 88, 93-94 (3d Cir. 2019) ("Because Kitzes failed to perform any tests or focus groups, take any measurements, rely on any articles on location of warnings …, conduct any reenactments or even examine the PWC itself, his conclusions were mere speculation, not based on any reliable methodology."); *Schmidt supra,* at *77-80 ("Notwithstanding his qualifications, Kitzes does not mention or rely on any type of methodology in his report. He simply lists various regulations authorized by the Federal Hazardous Substances Act and notes that Conagra failed to comply … As Conagra highlights, Kitzes' methodology has been questioned before."), *citing Leatt Corp, supra*, at *18

("Even acknowledging that Kitzes has expertise in the field of "product safety management" and that such expertise is or could be relevant to some issue or issues raised in the case, there is insufficient information and analysis in Kitzes's report to conclude that Kitzes employed a "reliable" methodology in reaching his "conclusions" such that his opinions are admissible."); *see also id.* ("The "opinions" Kitzes purports to provide, set forth above, are not cogent (or cogently linked to the issues raised in the case) and are not supported by any discernible rationale or methodology. Kitzes, for example, does not substantively analyze any specific purported conduct (or omission) of Leatt"); *Masterson, supra* at *16 ("Specific to this case, and quite significantly, Kitzes does not rely on standards established by independent organizations; product design and accident history; illustrative charts and diagrams; data from scientific testing; the feasibility of the suggested modification; or the risk-utility of the suggested modification.").

Here, Kitzes' methodology comprised the following: he "looked at the warnings and instructions, took the injury data into account, and wrote my opinions." Ex. A at 26. That is, there is **no** methodology in Kitzes' report beyond Kitzes' "subjective beliefs or unsupported assertions", and where "there is no methodology for the Court to assess, and thus the testimony is unreliable." *White v. Stanley Black & Decker, Inc.* 514 F. Supp. 3d 684, 694 (W.D.Pa. January 22, 2021) (Ranjan, J.). There is no indicia of reliability in Kitzes' report: there is no testable hypothesis. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 746 (3d Cir. 2000). There were no industry standards consulted, much less expressly referenced. *See* Ex. A at 102-103, 122-123 *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 788 (3d Cir. 2009).

Kitzes never spoke to Power or made any assessment about whether Power actually needed a warning. Ex. A at 26–7. Kitzes had no knowledge about what the eBay seller may have

done to the notebook. Ex. A at 75, 80. Kitzes made no reference in his report to the physical warning provided on the product when it left HP's control. Ex. A. At 72-3. He did no research to determine if there was a market in 2008 or 2009 in non-approved batters or a problem with non-approved batteries being used in notebook computers in and around 2008 and 2009. Ex. A at 70, 116.

The **sole** source of Kitzes' subjective belief that there was technology that would alert someone to a counterfeit battery in 2008 is a document Kitzes claimed to have found on HP.com entitled, "HP Notebook PCs-601 or 60X error displays on a black screen" that included a reference to "605 — Battery Counterfeit Check Error." Ex. A at 68-69; ECF No. 112-6 at 15; Ex. A at 124. However, as Kitzes himself acknowledged, documents retrieved online could have been published at any time. Ex. A at 98-99. And in fact, the document Kitzes relied on was published on September 29, 2020–over **ten years after** the manufacture of the subject Elitebook 8730w, and three years after the incident giving rise to this lawsuit. Ex. B, ¶¶ 6-7. Kitzes also admitted that he did not know the date of manufacture of the Elitebook and thus could not determine if battery authentication was in fact available at that time. Ex. A. at 64. Thus, Kitzes has no basis whatsoever to support his claim that battery authentication even existed during the relevant timeframe.

"In addition to the general reliability criteria of *Daubert*, in a warnings case, where an expert proposes alternate warnings he should at least either test the effectiveness of those warnings or point to contemporaneous industry practice. Otherwise the reliability of the expert's testimony on the proposed warning is "extremely questionable." *Masterson, supra* at *13-16. Kitzes' testimony is extremely questionable. There is no competent record evidence that would

show either the effectiveness of the authentication warning that is the subject of Kitzes' opinion or that such authentication was a contemporaneous industry practice. His testimony on this score should accordingly be precluded under Federal Rule of Evidence 702.

**3. Kitzes' opinions concerning the warnings HP should have given are irrelevant because there is no record evidence that HP knew or should have known about any risk associated with aftermarket batteries in 2008**

Courts confronting the relevancy of Kitzes' testimony have excluded Kitzes' testimony concerning warnings a defendant manufacturer should have given where there is no evidence that the manufacturer should have known of the risk. In *Masterson, supra,* as here, Kitzes offered the opinion that an alternate warning–in *Masterson*, a new user instruction, and here, a battery authentication warning–would have prevented the injury. *Masterson, supra* at *17. In *Masterson,* as in this case, Kitzes improperly relied on a warning issued **after** the incident that was the subject of the lawsuit. *Id.* ("[T]he warning that post-dates the purchases of the bodyboard at issue here cannot be relied upon to demonstrate what Sunspecs knew or should have known the year prior."). The Court properly struck Kitzes' testimony in *Masterson* and should do so here as well.

Indeed, in this case, Kitzes has offered no evidence of any risk associated with aftermarket batteries, particularly in respect of their risk relative to HP approved batteries. He did no research to determine if there was a market in 2008 or 2009 in non-approved batteries or a problem with non-approved batteries being used in notebook computers in and around 2008 and 2009. Ex. A at 70, 116; *see also Masterson, supra* at *18 (Kitzes "has offered no evidence on why the placement of the board in relation to the user's body is more or less dangerous than other placements, i.e., the utility of the recommended warning."). Without any competent evidence concerning HP's knowledge of the risks of non-approved battery use in its notebook

computers, Kitzes' testimony is irrelevant. *See Rosa, supra* at 1014 n.2 ("Kitzes's testimony about the warnings TASER should have given, however, is relevant only if TASER should have known about the risk of metabolic acidosis in December 2003. As Kitzes is not qualified to opine as to this fact, but merely assumes it in forming his expert opinions with regard to warnings, his testimony cannot create a triable issue as to whether TASER should have known about the risk.").

Finally, "an expert witness is prohibited from rendering a legal opinion." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006). Kitzes states that the "failed to act as a reasonably prudent manufacturer to adequately protect computer users from severe burn injuries associated with the foreseeable use of their laptop/notebook computers with replaceable batteries," ECF No. 112-6 at 16, ¶ 1, a legal opinion that is not proper in terms of "fit." The motion to preclude Kitzes' testimony should therefore be granted.

## IV. CONCLUSION

Kitzes is not qualified to offer an opinion in this case. He did not employ a reliable methodology, improperly basing his opinions on a document that postdates the manufacture of the subject Elitebook. Further, he ignored evidence in the record indicating that the Elitebook did in fact come with warnings. Moreover, his opinions are irrelevant because there is no record evidence of HP's knowledge of any risk associated with aftermarket batteries in 2008. In view of Kitzes' errors, he has no good grounds for his opinions, and his testimony will not assist the trier of fact. *Schneider, supra* at 404; F.R.E. 702. The motion to preclude Kitzes' testimony should accordingly be granted.

/s/ Michael A. Weiner

Michael A. Weiner, Esquire
PA I.D. #93640
Bennett, Bricklin & Saltzburg LLC
707 Grant Street, Suite 1800
Pittsburgh, PA 15219
Phone: (412) 894-4101
Fax: (412) 894-4111
weiner@bbs-law.com

Christopher G. Betke
*Pro Hac Vice*
Coughlin Betke LLP
175 Federal Street
Boston, MA 02110
(617) 988-8050
(617) 988-8005
cbetke@coughlinbetke.com

Attorneys for HP, Inc.

### Certificate of Service

I hereby certify that on May 13, 2022, a true and accurate copy of the foregoing motion was served via the Court's Electronic Case Filing System to all counsel of record.

/s/ Michael A. Weiner
Michael A. Weiner