IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS POWER, Civil Division              No.: 2:17-CV-00154-MRH

Plaintiff,

vs.

HEWLETT-PACKARD COMPANY.

Defendant.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF MICHAEL DREW**

Plaintiff, Thomas Power, by and through his counsel Friday & Cox, LLC, files the following Memorandum of Law in Opposition to Defendant's Motion to Exclude Testimony of Michael Drew, MD, FACS:

## I.      INTRODUCTION

On June 20, 2015, Thomas Power ("plaintiff") was using an HP Elitebook ("Elitebook") 8730w notebook computer when it exploded and caused burn injuries to his thighs. He was treated at the hospital for his injuries and discharged that day, but returned on June 22, 2015 after experiencing significant discomfort and intermittent episodes of chills and sweats. Cellulitis was diagnosed and plaintiff began receiving IV antibiotics, Vancomycin and Zosyn. Plaintiff started experiencing renal failure from the antibiotics, although it was ultimately resolved. On July 1, 2015, plaintiff underwent reconstructive surgery on his thighs and received a skin graft. During a follow-up visit, plaintiff was seen by Dr. Ogagan, the urologist, due to a complaint of urinary and fecal incontinence, which had begun since the laptop explosion.

Plaintiff has supported his claims in part through the expert testimony of Michael Drew, MD, FACS. Defendant has filed a Motion to Exclude Testimony of Michael Drew. Plaintiff

opposes defendant's Motion as Dr. Drew is a qualified medical expert and his opinions are grounded in reasonable and reliable methods.

## II.    TESTIMONY OF MICHAEL DREW

Dr. Michael Drew ("Dr. Drew") has been practicing as a general surgeon for almost forty years. He attended medical school from 1972-76 with a specialty in general surgery at Georgetown University School of Medicine. *See* CV of Dr. Drew attached hereto as **Exhibit A**. He started his own practice in 1981 and was certified by the American Board of Surgery in 1982. He has re-certified three times, most recently in 2013. **Exhibit A**. He was appointed the clinical instructor in surgery at The Mount Sinai School of Medicine from 1981-1987, until he was appointed the assistant clinical professor, a position he held for over thirty years. **Exhibit A.** He has also been the clinical assistant professor of surgery at the New York Institute of Technology since 2003. In addition to working at The Mount Sinai Medical Center and New York Institute of Technology, he also began working at LIJ Forest Hills Hospital in 2001. **Exhibit A.**

Dr. Drew prepared an export report concerning plaintiff's injuries after reviewing the medical records, accident report, deposition, and complaint. Based on his review of those materials, Dr. Drew opines to a degree of reasonable medical certainty that the injuries plaintiff suffered were directly related to the burns he sustained from the malfunction, fire and explosion of plaintiff's Elitebook. Plaintiff sustained second degree burns on both legs comprising of 3% of his total body surface area. Plaintiff also suffered acute tubular necrosis and renal failure, infection of his burn sites, urinary and fecal incontinence, and psychological trauma. Plaintiff had no prior history of urinary or gastrointestinal symptoms. Dr. Drew ultimately concluded that based on the injuries sustained and the lack of a previous history of incontinence, plaintiff's incontinence is clearly related to the injuries, whether physical, psychological, or a combination of the two. He

bases his opinion on his training, continuing education, and forty years of experience working in general surgery.

## III.    ARGUMENT

### A. Standard for Expert Testimony.

In order for an expert to testify he or she must first satisfy the requirements of Fed. R. Civ. P. 702. Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Civ .P. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the U.S. Supreme Court identified "reliability" and "helpfulness" as the primary requirements found within Rule 702. *United States v. Mitchell*, 365 F.3d 215, 234 (3d Cir. 2004). The *Daubert* opinion tasked the trial court with being a gatekeeper to ensure that expert testimony is based on a reliable foundation and is relevant to the issues in the case. 509 U.S. at 590.

However, the trial court does not have unfettered authority to exclude experts. The Third Circuit has explained that *Daubert* should be liberally construed to allow the admissibility of expert testimony. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). The exclusion of testimony is the exception to the rule because, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate

means of attacking shaky but admissible evidence.*" Keller v. Feasterville Family Health Care Ctr.*, 557 F. Supp. 2d 671, 674, (E.D. Pa. 2008) *citing* Fed. R. Evid. 702 (advisory committee notes).

**B. Dr. Drew is qualified as a medical expert.**

Based on almost forty years of experience as a board-certified surgeon, Dr. Drew is qualified to testify as to plaintiff's causes of urinary and fecal incontinence. In order to be qualified as an expert, a witness must possess specialized expertise, which encompasses a broad range of knowledge, skills, and training. *Pineda*, 520 F.3d at 244. The Third Circuit has interpreted "specialized knowledge" liberally to comply with Rule 702's general principle of admissibility. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994). A court should not exclude expert testimony simply because the expert is without the appropriate specialization. *Keller*, 557 F.Supp.2d. at 675, *citing Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782, (3d. Cir. 1996). Such credibility determinations are better left for jurors to weigh. *Id.*

Here, Dr. Drew has a vast amount of experience in the medical field. He has been certified as a general surgeon since 1982, and has served on the faculty of two schools of medicine. He currently works at a men's health clinic as the medical director and has been doing so for the past two years. *See* Deposition of Dr. Drew attached hereto as **Exhibit B,** at p. 11.[1]  During his time as a surgeon, he primarily focused on appendectomies, gallbladder, hernias, colon resections, bowel obstructions, and bowel tumors, among other things. **Exhibit B,** at p. 12. In his capacity as a general surgeon, he has specialty training in bowel incontinence and has taken a course on laparoscopic bowel resection. **Exhibit B,** at p. 13. Dr. Drew has consistently dealt with patients

---

[1] Given this Court's Order granting defendant's application for leave to file Dr. Drew's deposition transcript and expert report under seal, plaintiff has filed the entire portion of Dr. Drew's transcript under seal as well as the expert report.

who have presented urinary issues, including urinary incontinence. **Exhibit B,** at p. 15. He has also given expert testimony for cases involving chemical burns. **Exhibit B,** at p. 20. This shows that Dr. Drew is qualified to present testimony regarding plaintiff's urinary and fecal incontinence resulting from chemical burns and reconstructive surgery. Dr. Drew has been certified by courts in the past as an expert and has given testimony as to the cause of either bowel or bladder incontinence in numerous previous cases. **Exhibit B,** at p. 22.

Defendant attempts to disqualify Dr. Drew simply because he is a general surgeon and did not specifically handle patients with urinary or fecal incontinence. However, *Keller* makes it clear that a certain degree or background is not a prerequisite to being qualified as an expert. 557 F.Supp.2d. at 675. Dr. Drew has a background in urinary incontinence from being a general surgeon. This Court should look to the substance of Dr. Drew's knowledge within the medical field and his specialized training in fecal incontinence. After doing so, it is evident that Dr. Drew is qualified to provide testimony that plaintiff's incontinence is related to the burns sustained upon the explosion and fire of plaintiff's Elitebook. Defendant's objections to Dr. Drew's qualifications go to the credibility of Dr. Drew, which defendant can challenge on cross examination. See *Keller*, 557 F.Supp.2d. at 675. Dr. Drew has demonstrated that he has satisfied the threshold for being qualified as a medical expert.

**C. Dr. Drew's testimony is reliable.**

Dr. Drew employed a reliable methodology in reaching his conclusion that the remaining incontinence is clearly related to the injuries plaintiff sustained whether physical, psychological, or a combination of the two. *See* Expert Report of Dr. Drew filed under seal as **Exhibit C**. In doing so, Dr. Drew relied on his extensive medical practice, experience and knowledge relating to incontinence.

First, Dr. Drew determined that plaintiff had no prior history of incontinence based on his review of the medical records. After plaintiff sustained the burns and underwent reconstructive surgery, he began experiencing urinary and fecal incontinence. During his follow-up to urologist Dr. Ogagan, plaintiff had to wear diapers out of fear of wetting or soiling himself. Dr. Drew determined that the incontinence could be from sensory issues of the perineum and the pelvis resulting from the scarring from the sustained burns and skin grafting on his legs. Plaintiff did not have incontinence issues prior to sustaining the burns, and then later had to wear diapers due to the incontinence. Based on these facts, Dr. Drew reliably came to the conclusion that a combination of physical and psychological injuries likely led to plaintiff's incontinence. **Exhibit B,** at p. 29.

Defendant argues that Dr. Drew's methodology is not reliable because he did not run any tests on plaintiff or personally examine him. An expert is not required to perform such tests in order for his or her testimony to be admissible.  An expert's methodology does not need to fit a specific form in order to be admissible. Reliability is a threshold question. The Third Circuit has held that the reliability of evidence goes more to the weight of evidence than to the admissibility of the evidence. *United States v. Velasquez*, 64 F.3d 844, 848, (3d. Cir. 1995) *citing United States v. Jakobetz*, 955 F.2d 786, 800 (2d Cir. 1992). Additionally, where an expert has already been qualified, it will weigh in favor of the expert's opinions being reliable. *Boring v. Cabela's, Inc.*, Civil Action No. 08-1574, 2011 U.S. Dist. LEXIS 1165, at *10 (W.D. Pa. Jan. 6, 2011). Dr. Drew has given expert testimony in many other cases, including those that involved urinary and fecal incontinence, showing that his opinion should be seen as reliable in this case. The issues that defendant takes with Dr. Drew's methodology can be addressed on cross-examination.

Defendant also argues that Dr. Drew's testimony is not reliable because he cannot articulate a specific causal connection. *See* Def.'s Memorandum at p. 8.  Dr. Drew states that while he does

not know the exact cause of the incontinence, he believes that sensory issues resulting from the burns, along with the psychological effects of the accident, likely led to incontinence. Experts are not required to give their opinions as an absolute certainty. Dr. Drew only needs to hold his opinions to a reasonable degree of medical certainty, which he has done in this case. Again, this statement by Dr. Drew goes to his credibility, which should be left to the trier of fact to weigh. *Keller*, 557 F.Supp.2d. at 675, citing *Holbrook*, 80 F.3d 777.

**D. Dr. Drew's testimony is relevant.**

There is a strong preference for admitting any evidence that has some potential to assist the trier of fact. *DeLuca v. Merrell Dow Pharmaceuticals, Inc.*, 911 F.2d 941, 956 (3d Cir. 1990). Dr. Drew's testimony is directly relevant to plaintiff's urinary and fecal incontinence claim. Here, plaintiff is relying on Dr. Drew's testimony to show that the explosion of the laptop caused plaintiff's incontinence. Because Dr. Drew's opinions are both reasonable and reliable, his testimony regarding plaintiff's incontinence is relevant and essential to plaintiff's claims.

## IV.    CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that this Honorable Court deny defendant's Motion to Exclude Testimony of Michael Drew in its entirety.

Respectfully submitted,

FRIDAY & COX LLC


/s/ Peter D. Friday
Peter D. Friday, Esquire
Pa. I.D. # 48746
pfriday@fridaylaw.com

Joshua S. Licata, Esquire
Pa. I.D. # 318783
jlicata@fridaylaw.com

1405 McFarland Road
Pittsburgh, PA  15216
Phone: (412) 561-4290
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on May 27, 2022, that a copy of the foregoing

***Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Exclude Testimony***

***of Michael Drew*** was served upon the following via the Court's CM/ECF system:

Michael A. Weiner, Esquire
Bennett, Bricklin & Saltzburg LLC
707 Grant Street, Suite 1800
Pittsburgh, PA 15219
weiner@bbs-law.com


/s/ Peter D. Friday
Peter D. Friday, Esquire
Pa. I.D. # 48746
pfriday@fridaylaw.com

Joshua S. Licata, Esquire
Pa. I.D. # 318783
jlicata@fridaylaw.com

1405 McFarland Road
Pittsburgh, PA  15216
Phone: (412) 561-4290
*Counsel for Plaintiff*