IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS POWER,                                             No.: 2:17-CV-00154-MRH

        Plaintiff,

vs.

HEWLETT-PACKARD COMPANY,

        Defendant.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Thomas Power, by and through his counsel, Friday & Cox, LLC, files the following Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment:

**I.    INTRODUCTION**

This matter arises out of the severe injuries sustained by Thomas Power ("plaintiff"). On June 20, 2015, plaintiff was using a Hewlett Packard Elitebook 8730w notebook computer, which he purchased on eBay.com on April 29, 2013. The plaintiff had used his notebook for 20 to 60 minutes when, suddenly, the notebook exploded into flames, burning the plaintiff's legs.

Plaintiff, Thomas Power, brought the following claims against defendant:

a.    COUNT I – Strict Liability: Failure to Warn

b.    COUNT II – Negligence

c.    COUNT III – Breach of Warranty

Plaintiff has supported his claims through the expert reports of Kenneth Kutchek, P.E., William Kitzes, J.D., and Michael Drew, M.D. This expert evidence, along with the testimony of Plaintiff establishes that there are genuine issues of material fact precluding summary judgment to be entered in favor of defendant. In further support of his position, plaintiff incorporates his

Responsive Concise Statement of Material Facts as well as each of his Memorandums of Law in Opposition to Exclude Testimony of each expert, as if stated fully herein.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Constitution Party of Pa. v. Cortes*, 824 F.3d 386, 393 (3d Cir. 2016) (*quoting* Fed. R. Civ. P. 56(a)). "The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact." *Plank v. Devereux Found.*, 89 F. Supp. 3d 705, 710 (E.D. Pa. 2015) *citing Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145-46 (3d Cir. 2004). "It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations." *Plank*, 89 F. Supp. 3d at 710 *citing Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). "Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party." *Plank*, 89 F. Supp. 3d at 710 *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.    ARGUMENT

**A. Plaintiff's expert evidence establishes a genuine issue of material fact as to whether defendant failed to adequately warn users that non-HP battery packs were not to be used with the 8730w notebook computer.**

Plaintiff's expert evidence is sufficient to set forth a *prima facie* case of strict products liability under the failure to warn theory. In order to maintain a strict products liability action, a plaintiff must establish that (1) the product was defective, (2) the defect proximately caused the plaintiff's injury, and (3) the defect existed at the time the product left the defendant's control. *Romeo v. Pittsburgh Assocs.*, 787 A.2d 1027, 1032 (Pa. Super. 2001). There are three different

strict products liability claims: failure to warn, design defect, and manufacturing defect. *Phillips v. A-Best Products, Co.*, 665 A.2d 1167, 1170 (Pa. 1995). The threshold question in all strict products liability cases is whether there is a defect which renders the product unreasonably dangerous. *Weiner v. American Honda Motor Co., Inc.*, 718 A.2d 305, 307-08 (Pa. Super. 1998). In this case, plaintiff has presented evidence sufficient to establish a failure to warn claim.

      i. *Failure to Warn*

Under a failure to warn theory, a plaintiff may recover for the defendant's failure to provide adequate instructions to the user on how to use the product as the product was designed. *Barton v. Lowe's Home Ctrs., Inc.*, 124 A.3d 349, 355 (Pa. Super. 2015). A plaintiff raising a failure to warn claim must show that a warning of a particular danger was either <u>inadequate</u> or altogether lacking, and that this deficiency in warning made the product "unreasonably dangerous." *Phillips v. A-Best Products C*o., 665 A.2d 1167, 1171 (Pa. 1995) (emphasis added); *see Daniel v. Wyeth Pharmaceuticals, Inc.*, 15 A.3d 909 (Pa. Super. 2011) (holding that the adequacy of a drug manufacturer's drug warning label was an issue for the jury where plaintiff presented expert testimony that the warning was not sufficient).

A warning is inadequate if the manufacturer does not disclose a risk that is not otherwise known to the user. *See Pledger by Pledger v. Janssen Pharmaceuticals, Inc.*, 198 A.3d 1126, 1135 (Pa. Super. 2018). There is no law in Pennsylvania which mandates that an expert offer an opinion about: 1) where a warning should be placed, and 2) what that warning should say. *Walton v. Avco Corp.*, 610 A.2d 454, 458 (Pa. 1992); *Phillips*, 665 A.2d at 1171.

Bill Kitzes, a product safety expert, prepared an expert report that comprehensively lists the ways in which defendant failed to act reasonably and prudently as a manufacturer to adequately protect computer users from harm resulting from the foreseeable use of replaceable batteries in

3

defendant's laptop computers. Kitzes opined that defendant specifically failed to apply the accepted principles of product safety management to adequately: a) protect computer users from severe burn injuries associated with the foreseeable use defendant's notebooks with replaceable batteries; b) warn notebook users of the dangers of fire, burns and explosions associated with defendant's belief that non-compatible placement battery packs created potential safety issues; c) identify compatible and non-compatible battery packs; d) utilize a battery authentication system to identify "counterfeit" battery packs and e) take corrective actions to assist users in using only defendant approved replacement battery packs. **Plaintiff's Appendix 2**, at pp. 12-13.

Kitzes noted that defendant incorporated a battery authentication system in some of its notebooks, to inform users if a non-HP battery was in use and directed users to contact defendant. Mr. Kitzes concluded that defendant could have used this authentication system to inform users to remove the battery and turn off the computer if defendant believed that the counterfeit battery created an unreasonable risk of fire and/or an explosion. **Plaintiff's Appendix 2**, at p. 34, 35. Even worse, defendant instructed users to use third-party battery packs when defendant knew of the risks in doing so. **Plaintiff's Appendix 2**, at p. 12, 13.

Ken Kutchek, a professional engineer, also noted that HP was aware of authentication technology for replaceable components and had held patents for such technology, specifically US Patent No. '8A1, with an application date of May 29, 2008 and issue date of May 12, 2011. **Plaintiff's Appendix 4**, at p. 14-15. Despite this technology, Kutchek explained that the HP notebook did not authenticate installed battery packs, have interlocks to prevent use of non-HP approved battery packs nor did the notebook warn users of the installation of a non-HP battery pack. **Plaintiff's Appendix 4**, at p. 15. Kutchek summarized that had defendant installed this technology to prevent the use of non-HP approved battery packs, the incident would have been

4

prevented. **Plaintiff's Appendix 4**, at p. 16. Kutchek based this opinion on the fact that, "there was little to no communication to the user about the battery pack…the notebook user can not access information regarding the status of the battery back temperature. The user could only access information regarding the charge level and amount of running time." **Plaintiff's Appendix 4**, at p. 14.

The opinions of Kitzes and Kutchek, at a minimum, create an issue of fact as to whether defendant failed to adequately warn of the danger associated with using a non-HP approved battery pack. Defendant could have feasibly installed the software to alert users when a non-HP battery pack was being used. Defendant claims that it did warn users to not use non-HP approved battery packs. But the inquiry is not whether warnings were given, but rather the adequacy of said warnings. Defendant's warnings were inadequate for two main reasons. First, defendant did not disclose the risk of harm to users if they continued to use non-HP approved battery packs. A laptop catching fire is not a known risk to a user without specialized knowledge of how computers and batteries work. Second, the warnings referenced by defendant are inadequate because plaintiff's experts explained that it was feasible for defendant to directly warn users as they were using non-HP approved battery packs.

Defendant also claims that neither Kitzes nor Kutchek provided a specific warning that should have been provided. However, an expert is not required to state with specificity what the warning should say. *Walton*, 610 A.2d at 458; *Phillips*, 665 A.2d at 1171. The specific language of the proposed warning is not material to Kitzes or Kutchek's opinions. Rather it is the manner of warning that Kitzes and Kutchek both say was lacking from the product. Kitzes and Kutchek both explain that defendant failed to warn users in real time of the danger in using non-HP approved battery packs.

Both Kutchek and Kitzes have identified specific alternatives that would have alerted and warned users to the danger in using a non-approved HP battery pack. A jury should hear this evidence and determine whether the warnings given by defendant were sufficient under the circumstances.

> **B. The evidence presents an issue of fact as to whether additional warnings as suggested by plaintiff's experts would have caused plaintiff to avoid using the notebook computer with a non-approved HP charger.**

In order to sustain a failure to warn claim, the plaintiff must demonstrate causation, in that he or she would have avoided the risk had he or she been warned of it. *French v. Commonwealth Assocs.*, 980 A.2d 623, 632 (Pa. Super. 2009). Causation is generally a question for the jury, only to be removed when reasonable minds could not differ on the issue. *Jones v. Port Auth. of Allegheny County*, 583 A.2d 512 (Pa. Cmwlth. 1990). To create a jury question on causation in a failure to warn claim, "the evidence introduced must be of sufficient weight to establish ... some reasonable likelihood that an adequate warning would have prevented the plaintiff from [using the product]." *Demmler v. SmithKline Beecham Corp.*, 671 A.2d 1151, 1155 (Pa. Super. 1996)

The opinions of Kitzes and Kutchek establish that defendant was able to alert users in real time of the danger of using non-HP approved battery packs. Kutchek opined that had this warning been given to plaintiff, the incident would have been prevented. **Plaintiff's Appendix 4**, at p. 16. Per *Demmler*, the plaintiff only needs to show a reasonable likelihood that the proposed warning would have prevented the plaintiff from using the product. 671 A.2d at 1155. A jury could certainly find that a real time alert would have caused plaintiff to discontinue using the laptop with the battery pack. Therefore, the question of causation should be decided by a jury.

### C. Plaintiff's medical expert has opined within a reasonable degree of medical certainty that the at issue incident caused or contributed plaintiff to suffer urinary incontinence.

Dr. Drew prepared an export report concerning plaintiff's injuries after reviewing the medical records, accident report, deposition, and complaint. Based on his review of those materials, Dr. Drew opines that the injuries plaintiff suffered were directly related to the burns he sustained from the malfunction, fire and explosion of plaintiff's Elitebook. *See* **Plaintiff's Appendix 7**. Dr. Drew explained during his deposition that his opinion is primarily based on the timeline of plaintiff developing inconsistence. Plaintiff did not suffer from incontinence prior to the incident, but began experiencing incontinence shortly after the incident. **Plaintiff's Appendix 8**, at pp. 26-27; 46-47. Dr. Drew ultimately concluded that based on the injuries sustained and the lack of a previous history of incontinence, plaintiff's incontinence was caused by the incident. **Plaintiff's Appendix 7**, at p 3. Dr. Drew opined, to a reasonable degree of medical certainty, that the chemical burns caused or contributed to plaintiff's incontinence. **Plaintiff's Appendix 8**, at pp. 48-49.

In reaching his opinions, Dr. Drew first determined that plaintiff had no prior history of incontinence based on his review of the medical records. After plaintiff sustained the burns and underwent reconstructive surgery, he began experiencing urinary and fecal incontinence. During his follow-up to urologist Dr. Ogagan, plaintiff had to wear diapers out of fear of wetting or soiling himself. Dr. Drew determined that the incontinence could be from sensory issues of the perineum and the pelvis resulting from the scarring from the sustained burns and skin grafting on his legs. Plaintiff did not have incontinence issues prior to sustaining the burns, and then later had to wear diapers due to the incontinence. Based on these facts, Dr. Drew reliably came to the conclusion that the laptop burns caused or contributed to his incontinence. **Plaintiff's Appendix 7**, at pp. 2-

3; **Plaintiff's Appendix 8**, at pp. 48-49.

Defendant argues that Dr. Drew's opinion is not held to a reasonable degree of medical certainty, however, this mischaracterizes Dr. Drew's deposition testimony. During the deposition, Dr. Drew explained that there is both a psychological and physical component to the development of plaintiff's incontinence. **Plaintiff's Appendix 8**, at pp. 48-49. Dr. Drew could not offer an opinion to reasonable degree of medical certainty as to the degree to which plaintiff's incontinence was psychological or physical. **Plaintiff's Appendix 8**, at p. 37. But Dr. Drew had no hesitation in opining that the burns caused or contributed to plaintiff's incontinence. Dr. Drew stated, "it is my opinion beyond a reasonable doubt that these injuries [chemical burns] contributed and caused his urinary and fecal incontinence, absolutely." **Plaintiff's Appendix 8**, at pp. 48-49.

Experts are not required to give their opinions as an absolute certainty. Dr. Drew only needs to hold his opinions to a reasonable degree of medical certainty, which he has done in this case. Dr. Drew's testimony about the psychological and physical nature of the incontinence goes to his credibility, which should be left to the trier of fact to weigh. *Keller v. Feasterville Family Health Care Center*, 557 F.Supp.2d. 671, 675 (E.D. Pa. 2008).

Defendant also argues that it should be entitled to summary judgment because plaintiff's treating physician did not link the incontinence to the laptop incident. This only shows that two doctors disagree, which happens in almost every lawsuit. Trial, not a motion for summary judgment, is the appropriate mechanism to resolve such a dispute. Any issues that defendant takes with the methodology or opinions of Dr. Drew can be addressed on cross-examination.

## IV.   CONCLUSION

For the foregoing reasons, and those set forth in plaintiffs' Responsive Concise Statement of Material Facts and Memorandums of Law in Opposition to Defendant's Motions to Exclude

Testimony, plaintiffs respectfully request that this Honorable Court deny defendant's Motion for Summary Judgment in its entirety.

                Respectfully submitted,

                FRIDAY & COX LLC

                */s/ Peter D. Friday*
                Peter D. Friday, Esquire
                Pa I.D. # 48746

                1405 McFarland Road
                Pittsburgh, PA  15216
                Phone: (412) 561-4290
                *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on June 13, 2022 that a copy of the foregoing

***Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment***

was served upon the following via the Court's CM/ECF system:

Michael A. Weiner, Esquire
Bennett, Bricklin & Saltzburg LLC
707 Grant Street, Suite 1800
Pittsburgh, PA 15219
weiner@bbs-law.com

        /s/ Peter D. Friday_____
Peter D. Friday, Esquire
Pa I.D. # 48746

1405 McFarland Road
Pittsburgh, PA  15216
Phone: (412) 561-4290
*Counsel for Plaintiff*