IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS POWER,                                       No.: 2:17-CV-00154-MRH

        Plaintiff,

vs.

HEWLETT-PACKARD COMPANY,

        Defendant.

**PLAINTIFF'S RESPONSIVE CONCISE STATEMENT OF MATERIAL FACTS**

    Plaintiff, Thomas Power, by and through her counsel, Peter D. Friday, Esquire and Friday & Cox, LLC, files the following Responsive Concise Statement of Material Facts:

1. Paragraph 1 of defendant's Statement of Material Facts is admitted.

2. Paragraph 2 of defendant's Statement of Material Facts is admitted.

3. Paragraph 3 of defendant's Statement of Material Facts is admitted.

4. Paragraph 4 of defendant's Statement of Material Facts is admitted.

5. Paragraph 5 of defendant's Statement of Material Facts is admitted in part and denied in part. It is admitted that certain warnings were provided with the HP 8730W notebook computer. The remaining portion of Paragraph 5 of defendant's Statement of Material Facts concerning industry standards states a legal conclusion to which no response is required. To the extent that a response is required, this portion of Paragraph 5 is denied. The remaining portion of Paragraph 5 of defendant's Statement of Material Facts concerning Dr. Horn's qualifications states a legal conclusion to which no response is required.

6. Paragraph 6 of defendant's Statement of Material Facts is admitted.

7. Paragraph 7 of defendant's Statement of Material Facts is admitted.

8. Paragraph 8 of defendant's Statement of Material Facts is admitted.

9. Paragraph 9 of defendant's Statement of Material Facts is admitted.

10. Paragraph 10 of defendant's Statement of Material Facts is admitted.

11. Paragraph 11 of defendant's Statement of Material Facts is admitted.

12. Paragraph 12 of defendant's Statement of Material Facts is admitted.

13. Paragraph 13 of defendant's Statement of Material Facts is denied as stated. Specifically, it is denied that Plaintiff "previously" based his claims solely on a defect of the laptop, lithium ion battery and/or charger. Plaintiff plead a failure to warn claim against Defendant. See Complaint at paragraphs. 16, 32, 34, 40(d), 40(h), and 46(i).

14. Paragraph 14 of defendant's Statement of Material Facts is admitted.

15. Paragraph 15 of defendant's Statement of Material Facts is admitted.

16. Paragraph 16 of defendant's Statement of Material Facts is denied as stated. In response to Defense Counsel's question about whether plaintiff needed the proposed warning, Kutchek answered, "Well, you give warnings to users to remind them. So even if they read it five years prior doesn't mean they remember it. So the purpose of pop up warnings is to remind you there for whatever the purpose of the warning is." *See* Kutchek Deposition at p. 58.

17. Paragraph 17 of defendant's Statement of Material Facts is admitted.

18. Paragraph 18 of defendant's Statement of Material Facts is admitted.

19. Paragraph 19 of defendant's Statement of Material Facts is admitted.

20. Paragraph 20 of defendant's Statement of Material Facts is admitted.

21. Paragraph 21 of defendant's Statement of Material Facts is admitted.

22. Paragraph 22 of defendant's Statement of Material Facts is admitted.

23. Paragraph 23 of defendant's Statement of Material Facts is admitted.

24. Paragraph 24 of defendant's Statement of Material Facts is admitted.

25. Paragraph 25 of defendant's Statement of Material Facts is admitted.

26. Paragraph 26 of defendant's Statement of Material Facts is denied as stated. During the deposition, Dr. Drew explained that there is both a psychological and physical component to the development of plaintiff's incontinence. **Plaintiff's Appendix 8**, at pp. 48-49. Dr. Drew could not offer an opinion to reasonable degree of medical certainty as to the degree to which plaintiff's incontinence was psychological or physical. **Plaintiff's Appendix 8**, at p. 37. But Dr. Drew had no hesitation in opining that the burns caused or contributed to plaintiff's incontinence. Dr. Drew stated, "it is my opinion beyond a reasonable doubt that these injuries [chemical burns] contributed and caused his urinary and fecal incontinence, absolutely." **Plaintiff's Appendix 8**, at pp. 48-49.

27. Paragraph 27 of defendant's Statement of Material Facts states expert conclusions to which no response is required. To the extent that a response is necessary, it is admitted that this paragraph restates the opinions of Dr. Ogagan, which conflict with the opinions of Dr. Michael Drew.

## ADDITIONAL MATERIAL FACTS

### I.  Testimony of William Kitzes

28. William Kitzes is a Board-Certified Product Safety Manager and Hazard Control Manager who has provided risk assessment and product safety management services to attorneys, corporations and government organizations for the past 30 years. *See* Kitzes CV attached hereto as **Plaintiff's Appendix 1** and Kitzes' Expert Report attached hereto as **Plaintiff's Appendix 2**, at pp. 7-8.

29. Mr. Kitzes holds an Executive Certificate in Safety Management from the American Society of Safety Engineers and is a member of the Human Factors and Ergonomics Society. **Plaintiff's Appendix 2**, at pp. 7-8.

30. Mr. Kitzes maintains a Certificate in Risk Communication from the Harvard School of Public Health. **Plaintiff's Appendix 2**, at p. 8.

31. Mr. Kitzes has developed on-product warnings and instructions for numerous manufacturers including Whisper Communications for electrocution hazards. **Plaintiff's Appendix 2**, at p. 9.

32. Mr. Kitzes prepared an expert report for plaintiff that comprehensively lists the ways in which defendant failed to act reasonably and prudently as a manufacturer to adequately protect computer users from harm resulting from the foreseeable use of replaceable batteries in defendant's laptop computers. **Plaintiff's Appendix 2**.

33. Mr. Kitzes opined that defendant specifically failed to apply the accepted principles of product safety management to adequately: a) protect computer users from severe burn injuries associated with the foreseeable use defendant's notebooks with replaceable batteries; b) warn notebook users of the dangers of fire, burns and explosions associated with defendant's belief that non-compatible placement battery packs created potential safety issues; c) identify compatible and non-compatible battery packs; d) utilize a battery authentication system to identify "counterfeit" battery packs and e) take corrective actions to assist users in using only defendant approved replacement battery packs. **Plaintiff's Appendix 2**, at pp. 12-13.

34. Mr. Kitzes employed a reliable methodology in reaching his conclusion that defendant failed to apply accepted principles of product safety management. **Plaintiff's Appendix 2**, at pp. 11-12.

35. First, Mr. Kitzes determined that defendant knew of the numerous dangers of fires, explosions and burns associated with laptop or notebook computers starting in at least 2006, including the dangers of the at-issue Elitebook 8730w, specifically. **Plaintiff's Appendix 2**, at pp. 33.

36. Mr. Kitzes cited to a variety of sources which showed that over 400,000 HP laptops were recalled in connection with over 100 incidents, and that battery packs manufactured by Sony and installed in the Elitebook 8730w, were subject to the vast majority of battery recalls. **Plaintiff's Appendix 2,** at p. 33.

37. Mr. Kitzes also demonstrated defendant was aware of the marketing and selling of third-party batteries specified for use in defendant's notebooks as defendant's official store advises customers with older to notebooks to "search on a third-party website" for replacement batteries. **Plaintiff's Appendix 2**, at p. 34.

38. Next, Mr. Kitzes examined how defendant incorporated a battery authentication system in some of its notebooks, to inform users if a non-HP battery was in use and directed users to contact defendant. Mr. Kitzes concluded that defendant could have used this authentication system to inform users to remove the battery and turn off the computer if defendant believed that the counterfeit battery created an unreasonable risk of fire and/or an explosion. **Plaintiff's Appendix 2**, at p. 34, 35.

39. Further, Mr. Kitzes reviewed defendant's user guides and product safety handbook and guidelines. Based on this analysis, and importantly in conjunction with his extensive industry practice, experience and knowledge of product safety, Mr. Kitzes opined that defendant failed to apply accepted principles of product safety management. **Plaintiff's Appendix 2**, at pp. 12-13.

40. Mr. Kitzes describes not only defendant's long-standing knowledge of the dangers of the battery pack, to which their own products had been subject to recalls, but also that defendant itself instructed users to use third-party battery packs when defendant knew of the risks in doing so. **Plaintiff's Appendix 2**, at p. 12, 13.

### II.     Testimony of Kenneth Kutchek, P.E.

41. Kenneth Kutchek is a licensed professional engineer and certified fire and explosion investigator with thirty-four years of experience. *See* Kutchek CV attached as **Plaintiff's Appendix 3**.

42. Particularly, Kutchek's has been an expert in at least 20 cases involving lithium-ion batteries. See Deposition of Kutchek attached as **Plaintiff's Appendix 5**, at p. 35.

43. Many of these cases involved 18650 lithium ion battery cells present in vape devices, which short circuited while in the pocket and caused explosions or burns. **Plaintiff's Appendix 5**, at p. 36.

44. Kutchek holds a B.S. in electrical engineering and has training in fire and arson investigation and continued education in topics including, but not limited to: fire protection systems, battery and other electricity storage technologies and advanced fire investigation for professional engineers. **Plaintiff's Appendix 5**, at p. 5-7.

45. Kutchek prepared an expert report for plaintiff regarding the cause of the battery explosion and fire resulting in the injuries suffered by the plaintiff in this incident. *See* Plaintiff's Appendix 4 attached as **Plaintiff's Appendix 4**, at p. 1.

46. In preparing his report, Kutcheck reviewed deposition transcripts, HP documents, photographs, security video of the incident, physical evidence, notebook x-ray and CT scans. **Plaintiff's Appendix 4**, at p. 1.

47. Upon visual inspection of the notebook computer and battery pack, Kutchek observed heat damage in the location of the battery pack and that two of the eight battery cells, which did not appear to be the HP approved Sony 18650 cells, had experienced thermal runaway and exploded. **Plaintiff's Appendix 4**, at p. 12.

48. Further, Kutchek observed that the power adapter appeared to be manufactured by HP and found no evidence that the battery controller circuit had been replaced. **Plaintiff's Appendix 4**, at p. 12-14.

49. Kutchek explained that HP was aware of authentication technology for replaceable components and had held patents for such technology, specifically US Patent No. '8A1, with an application date of May 29, 2008 and issue date of May 12, 2011. **Plaintiff's Appendix 4**, at p. 14-15.

50. Kutchek also noted that other manufacturers of electronics, during the time period relevant to the incident, held patents relating to the authentication of replaceable components: Panasonic held US Patent No. '5A1 for battery authentication in notebook computers; BlackBerry held US Patent No. '5A1 for battery authentication in mobile phones; and Lexmark International held patents US Patent No. '2A1 and US Patent No. '3B2, relating to ink cartridge authentication. **Plaintiff's Appendix 4**, at p. 14-15.

51. Lastly, Kutchek indicated that the HP notebook did not authenticate installed battery packs, have interlocks to prevent use of non-HP approved battery packs nor did the notebook warn users of the installation of a non-HP battery pack. **Plaintiff's Appendix 4**, at p. 15.

52. Ultimately, Kutchek opined that had HP prevented the use of non-HP approved battery packs, this incident would have been prevented. **Plaintiff's Appendix 4**, at p. 16.

53.     Based on these findings, Kutchek opined that HP created an unreasonably dangerous condition for its notebook users in failing to ensure adequate safety protections, testing, and quality control for the use of non-approved battery packs and was aware of the potential safety hazards associated with such created condition. **Plaintiff's Appendix 4**, at p. 16.

54.     Mr. Kutchek opined that "there was little to no communication to the user about the battery pack. Wozniak stated that the notebook user can not access information regarding the status of the battery back temperature. The user could only access information regarding the charge level and amount of running time." **Plaintiff's Appendix 4**, at p. 14.

### III.     Testimony of Michael Drew, M.D.

55.     Dr. Michael Drew ("Dr. Drew") has been practicing as a general surgeon for almost forty years. He attended medical school from 1972-76 with a specialty in general surgery at Georgetown University School of Medicine. *See* CV of Dr. Drew attached as **Plaintiff's Appendix 6**.

56.     Dr. Drew started his own practice in 1981 and was certified by the American Board of Surgery in 1982. He has been re-certified three times, most recently in 2013. **Plaintiff's Appendix 6**. He was appointed the clinical instructor in surgery at The Mount Sinai School of Medicine from 1981-1987, until he was appointed the assistant clinical professor, a position he held for over thirty years. **Plaintiff's Appendix 6.**

57.     Dr. Drew has also been the clinical assistant professor of surgery at the New York Institute of Technology since 2003. In addition to working at The Mount Sinai Medical Center and New York Institute of Technology, he also began working at LIJ Forest Hills Hospital in 2001. **Plaintiff's Appendix 6.**

58.     Dr. Drew prepared an export report concerning plaintiff's injuries after reviewing

8

the medical records, accident report, deposition, and complaint. Based on his review of those materials, Dr. Drew opines that the injuries plaintiff suffered were directly related to the burns he sustained from the malfunction, fire and explosion of plaintiff's Elitebook. *See* Expert Report attached as **Plaintiff's Appendix 7**.

59. Plaintiff sustained second degree burns on both legs comprising of 3% of his total body surface area. Plaintiff also suffered acute tubular necrosis and renal failure, infection of his burn sites, urinary and fecal incontinence, and psychological trauma. **Plaintiff's Appendix 7**, at p. 1.

60. Plaintiff had no prior history of urinary or gastrointestinal symptoms. Plaintiff's **Appendix 7**, at p. 2.

61. Dr. Drew ultimately concluded that based on the injuries sustained and the lack of a previous history of incontinence, plaintiff's incontinence was caused by the incident. **Plaintiff's Appendix 7**, at p 3.

62. Dr. Drew explained that it is irrefutable that the burns resulted in the need for hospitalization, caused significant pain and suffering, and required reconstructive surgery to treat them. **Plaintiff's Appendix 7**, at p. 3.

63. Dr. Drew explained during his deposition that his opinion is primarily based on the timeline of plaintiff developing inconsistence. Plaintiff did not suffer from incontinence prior to the incident, but began experiencing incontinence shortly after the incident. *See* Dr. Drew Deposition Transcript attached as **Plaintiff's Appendix 8**, at pp. 26-27; 46-47.

64. Dr. Drew opined, to a reasonable degree of medical certainty, that the chemical burns caused or contributed to plaintiff's incontinence. **Plaintiff's Appendix 8** at pp. 48-49.

65. During the deposition, Dr. Drew explained that there is both a psychological and

physical component to the development of plaintiff's incontinence. **Plaintiff's Appendix 8**, at pp. 48-49. Dr. Drew could not offer an opinion to reasonable degree of medical certainty as to the degree to which plaintiff's incontinence was psychological or physical**. Plaintiff's Appendix 8**, at p. 37.

66. But Dr. Drew had no hesitation in opining that the burns caused or contributed to plaintiff's incontinence. Dr. Drew stated, "it is my opinion beyond a reasonable doubt that these injuries [chemical burns] contributed and caused his urinary and fecal incontinence, absolutely." **Plaintiff's Appendix 8**, at pp. 48-49.

67. In his practice, Dr. Drew has consistently dealt with patients who have presented urinary issues, including urinary incontinence. **Plaintiff's Appendix 8,** at p. 15.

68. Dr. Drew has also given expert testimony for cases involving chemical burns. **Plaintiff's Appendix 8,** at p. 20.

69. Dr. Drew has been certified by courts in the past as an expert and has given testimony as to the cause of either bowel or bladder incontinence in numerous previous cases. **Plaintiff's Appendix 8,** at p. 22.

Respectfully submitted,

FRIDAY & COX LLC

 /s/ *Peter D. Friday*
Peter D. Friday, Esquire
Pa I.D. # 48746
1405 McFarland Road
Pittsburgh, PA  15216
Phone: (412) 561-4290
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on June 13, 2022 that a copy of the foregoing *Plaintiff's Responsive Concise Statement of Material Facts* was served upon the following via the Court's CM/ECF system:

Michael A. Weiner, Esquire
Bennett, Bricklin & Saltzburg LLC
707 Grant Street, Suite 1800
Pittsburgh, PA 15219
weiner@bbs-law.com

    */s/ Peter D. Friday*_____
Peter D. Friday, Esquire
Pa I.D. # 48746

1405 McFarland Road
Pittsburgh, PA 15216
Phone: (412) 561-4290
*Counsel for Plaintiff*