## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS POWER,                          )
                                       )
            Plaintiff,                  )
                                       )          2:17-cv-00154
            v.                          )
                                       )
HEWLETT-PACKARD COMPANY,               )
                                       )
            Defendant.                  )

## <u>OPINION</u>

**Mark R. Hornak, Chief United States District Judge**

This products liability case arises out of injuries sustained by Plaintiff, Thomas Power ("Power"), when his HP Elitebook 87030w notebook, which had a non-HP battery installed, exploded on his lap. Defendant, HP, Inc. ("HP"), is the manufacturer of the notebook. Now before the Court, as addressed in this Opinion, are four Motions in total—three from Defendant and one from Plaintiff.

 All three of Defendant's such Motions are Motions in Limine seeking to preclude the testimony—either in whole or as to a particular topic—of one of Plaintiff's experts: HP's Motion to Preclude Plaintiff's Medical Expert, Michael Drew, MD, FACS, from Offering an Opinion regarding Plaintiff's Alleged Incontinence (ECF No. 139); HP's Motion to Preclude Testimony from Kenneth W. Kutchek, P.E. (ECF No. 141); and HP's Motion to Preclude Testimony from William F. Kitzes, J.D. (ECF No. 142, also on the docket at ECF No. 153). These Motions go hand-in-hand with Defendant's Motion for Summary Judgment (ECF No. 143), which relies on a hoped-for grant of its Motions to exclude the testimony of Plaintiff's proffered experts.

The Court heard argument on Defendant's three Motions in Limine on October 12, 2022.

(*See* ECF No. 191.) At that hearing, counsel for the Plaintiff stated his desire to expand the record and conduct a testimonial *Daubert* hearing, and Plaintiff filed an appropriate Motion on October 19, 2022 (ECF No. 193).

For the reasons stated below, the Court **GRANTS** Defendant's Motion to Preclude Plaintiff's Medical Expert, Michael Drew, MD, FACS, from Offering an Opinion regarding Plaintiff's Alleged Incontinence (ECF No. 139); **GRANTS IN PART AND DENIES IN PART** HP's Motion to Preclude Testimony from Kenneth W. Kutchek, P.E. (ECF No. 141); **DENIES** HP's Motion to Preclude Testimony from William F. Kitzes, J.D. (ECF No. 142, also on the docket at ECF No. 153); and **DENIES** Plaintiff's Motion for a further *Daubert* hearing (ECF No. 193). An appropriate Order will issue.

## I.  BACKGROUND

### a.  Factual background

The basic facts giving rise to this case are for these purposes not disputed, and the Court describes them only as relevant here. Prior to April 2013, Plaintiff purchased a used HP Elitebook 8730w notebook computer. (Defendant's Statement of Undisputed Material Facts, ECF No. 145 [hereinafter Def.'s SMF] ¶ 1; Plaintiff's Responsive Concise Statement of Material Facts [hereinafter Pl.'s SMF] ECF No. 183 ¶ 1.) Plaintiff does not recall whether he received product documentation with the pre-2013 computer. (*Id.*) On April 29, 2013, Plaintiff purchased a second HP Elitebook 8730w on eBay.com because he had broken the first computer's screen. (Def.'s SMF ¶ 2; Pl.'s SMF ¶ 2.)

The second Elitebook, also referred to here as the "at-issue" computer/notebook, did not come with product documentation. (Def.'s SMF ¶ 3; Pl.'s SMF ¶ 3.) However, it was shipped with a warning on the battery pack that read "Replace with HP Spares." (Def.'s SMF ¶ 4; Pl.'s SMF ¶

4.) Moreover, the product documentation provided to end users and made available to the public at large on HP.com included a warning that stated: "⚠WARNING! To reduce potential safety issues, use only the battery provided with the computer, a replacement battery provided by HP, or a compatible battery purchased from HP." (*Id.*)

Plaintiff owned and used the at-issue computer for more than two years. (Def.'s SMF ¶ 6; Pl.'s SMF ¶ 6.) During that time, he never received any type of warning on the notebook itself, any type of error message concerning the battery, or such a warning concerning any other issue. (*Id.*) However, on June 20, 2015 at approximately 1:00 am, Plaintiff was using his computer at a 24-hour gym, with the computer positioned directly on top of his lap. (Def.'s SMF ¶ 7; Pl.'s SMF ¶ 7.)  After using the computer for approximately 20–60 minutes, the laptop exploded into flame, burning his legs. (Def.'s SMF ¶¶ 7–8 ; Pl.'s SMF ¶¶ 7–8.) He sustained serious injuries, including burns for which he required a skin graft, hydrotherapy, catheterization, and intravenous antibiotics. (Def.'s SMF ¶ 9; Pl.'s SMF ¶ 9.) After the accident, Plaintiff began to experience urinary and bowel incontinence. (Def.'s SMF ¶ 10; Pl.'s SMF ¶ 10.)

### b.  Legal background

The history of this litigation is extensive, so the Court recounts it only as relevant to the disposition of the Motions at issue here. Fact discovery in this case concluded in 2019, and expert discovery took place in 2020. (*See* ECF Nos. 71; 106) During expert discovery, Plaintiff engaged three experts to support his claims for relief:

(1) Dr. Michael Drew, MD FACS, who prepared a report concerning Plaintiff's injuries, the treatment he received, and the connection between the accident and Plaintiff's maladies (*see* ECF No. 155);

(2) Kenneth W. Kutchek, P.E., an electrical engineer and certified fire and explosion investigator who prepared a report offering an opinion regarding the cause of the battery explosion and the technological feasibility of the at-issue computer having been designed to display a real-time pop-up warning when a non-HP battery was installed

(*see* ECF No. 166-2); and

(3) William F. Kitzes, J.D., a lawyer and Board-Certified Product Safety Manager and Hazard Control Manager who prepared a report offering his opinion regarding the adequacy of HP's warnings related to third-party battery packs (*see* ECF No. 164-1).

Defendants filed Motions in Limine to preclude the testimony, either in whole or in part, of each of Plaintiff's Experts. (ECF No. 139 (Drew); ECF No. 141 (Kutchek); ECF Nos. 142 and 153 (Kitzes)). Plaintiffs filed a Response in Opposition and accompanying memorandum of law responding to each of Defendant's Motion in Limine. (ECF No. 167, 168 (Drew); ECF No. 165, 166 (Kutchek); ECF No. 163, 164 (Kitzes)). Though Defendant did not file a Reply in further support of their motions regarding Drew and Kutchek, they filed a Reply in further support of their motion to preclude the testimony of Kitzes. (ECF No. 187.)

The Court held oral argument on October 12, 2022. The Order scheduling argument directed counsel to "be prepared to argue all pending motions" (ECF No. 188)—which, at the time, were the three Motions of Limine discussed above and Defendant's Motion for Summary Judgment.

## II.   LEGAL STANDARD

Federal Rule of Evidence ("FRE") 702 provides the legal standard for evaluating a *Daubert* motion. Under FRE 702, testimony by a qualified expert is admissible if (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the is the product of reliable principles and methods; and (4) the witness has applied the principles and methods reliably to the facts of the case.

More broadly, FRE 702 embodies a trilogy of restrictions on expert testimony: (1) qualification; (2) reliability; and (3) fit. *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citing

*Daubert v. Merrell Dow Pharms., Inc*, 509 U.S. 579 (1993)). That is, the expert must have the specialized expertise necessary to assist the trier of fact, the testimony that the expert offers must be based on the methods and procedures of science (rather than subjective belief or unsupported speculation), and the testimony that the expert offers must fit the issues in the case.

When a district court conducts a *Daubert* hearing, it "acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability[,] and fit from reaching the jury." *Schneider*, 320 F.3d at 404. However, the FRE "embody a strong preference for admitting any evidence that may assist the trier of fact," and "Rule 702 . . . has a liberal policy of admissibility." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir 1997)).

At a *Daubert* hearing, the burden of proof is on the proponent of the expert testimony to establish the admissibility of that testimony by a preponderance of the evidence. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 & n.10 (3d Cir. 1994) (citing *Daubert*, 509 U.S. at 592 & n.10).

## III.    DISCUSSION

### a.    *Daubert* Motions

#### (1) Drew

Dr. Michael Drew, MD FACS ("Drew") is a board-certified physician with a specialty in general surgery and approximately forty years of experience teaching in medical schools. (*See* ECF No. 168-1.) After reviewing Plaintiff's medical records, the accident report, Plaintiff's deposition, the Complaint, and other materials, Drew prepared an expert report concerning Plaintiff's injuries. (*See* ECF No. 155.) In that report, Drew opines that the cause of Plaintiff's alleged fecal and urinary incontinence is the burns he suffered when the at-issue Elitebook exploded on his lap. (*Id.* at 4.)

Defendant seeks to preclude Drew from offering any opinion testimony regarding Plaintiff's alleged incontinence. (ECF No. 139, at 11.) Additionally, at oral argument, counsel for Defendant argued that—because the only *opinion* Drew offers in his report concerns Plaintiff's alleged incontinence, and that opinion is improper under Rule 702—Drew should be barred from testifying at trial altogether.

The Court dispenses with the second of Defendant's arguments first because its factual premise is false. Drew's report contains opinions aside from those regarding Plaintiff's alleged incontinence: Drew opines that "the injuries that [Power] sustained were directly related to the malfunction and resultant explosions and fire of the laptop," that the burns "resulted in the need for hospitalization, caused significant pain and suffering, and required reconstructive surgery to treat them," that the "burns led to the development of . . . transient renal failure," that Plaintiff's "scarring is permanent" and that Plaintiff's medical "bills . . . are consistent with the treatment he received and required." (ECF No. 155, at 4.)

The Court sees no reason to conclude that Drew should be prohibited from offering testimony regarding such opinions. Those opinions are formally proper in that they were fairly disclosed pursuant to Fed. R. Civ. P. 26(a)(2)(B)(i), and the Court concludes—hearing no argument from the Defense to the contrary—that they meet the substantive requirements of Rule 702. The opinions enumerated above concern Plaintiff's injuries and medical treatment, which Drew is well qualified to offer based on his training as a physician and professional experience as a surgeon and a faculty member at medical schools. Drew's conclusions are based, inter alia, on his review of Plaintiff's medical records and testimony, and no one has disputed that such a method is a reliable manner for forming medical opinions as required by *Daubert*.

However, the Court concludes that Drew cannot, consistent with Rule 702, offer an opinion

regarding Plaintiff's alleged incontinence. Under Pennsylvania law, "a doctor can give an opinion about the cause of a plaintiff's illness if he or she can do so with a reasonable degree of medical certainty." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 n.4 (3d Cir. 1999). "To determine whether an expert has reached an opinion with the requisite degree of medical certainty, the court must consider the expert's testimony in its entirety." *Hartle v. FirstEnergy Generation Corp.*, No. 08-cv-1019, 2014 WL 868913, at *8 (W.D. Pa. Mar. 5, 2014). Moreover, the methodology underlying the testimony must be reliable in that it must be derived from the scientific method, not merely the say-so (or "*ipse dixit*") of the expert, *General Elec. Co v. Joiner*, 522 U.S. 136, 146 (1997), nor from the unsupported inference that because the alleged effect came after the alleged cause, there must be a causal relationship between the two, *In re Zostavax Prods. Liab. Litig.*, 579 F. Supp. 3d 675, 683 (E.D. Pa. 2021).

Drew's proffered opinion on the cause of Plaintiff's alleged incontinence fails because by his own account, he was "unable to render an opinion within a reasonable degree of scientific or medical certainty that Mr. Power's incontinence is psychological versus physical, or some combination thereof." (ECF No. 156, at 14:16–22.) The speculative nature of Drew's causal analysis is evident throughout his deposition. Far from being able to identify a specific causal mechanism—or to even confidently identify a handful of specific, possible causal mechanisms—Drews says the basis for the opinion that the accident caused Plaintiff's incontinence is the "temporal relationship" between the accident and the incontinence. (*Id.* at 26:8–9.) That is: Power was continent before the accident and incontinent after the accident, so the accident must have caused the incontinence.

Drew's training and experience *as a physician* do nothing to assist the trier of fact in understanding the alleged causal relationship; any juror could infer that—because Plaintiff was

continent before the accident and incontinent after it—the accident must have caused the incontinence. Furthermore, though the Court need not decide this issue today, the Court doubts that, on the facts of this case, an opinion based solely on temporal correlation without supporting professional reasoning could be held with the requisite degree of *medical* certainty.

Therefore, the Court **GRANTS** Defendant's Motion to Preclude Plaintiff's Medical Expert, Michael Drew, MD, FACS, from Offering an Opinion regarding Plaintiff's Alleged Incontinence (ECF No. 139). However, Drew will be permitted to testify regarding the other opinions disclosed in his report.

(2) Kutchek

Kenneth W. Kutchek, PE ("Kutchek") is a licensed professional engineer and certified fire and explosion investigator, with an educational background in electrical engineering. (ECF No. 173.) After reviewing photographs of the computer, security video of the incident, x-ray and computer scans of the at-issue notebook, and various documents—including deposition transcripts, HP's responses to various discovery requests, and internet search results regarding the patents— as well as physically examining the at-issue notebook, Kutchek prepared a report for Plaintiff regarding the cause of the battery explosion and fire. (ECF No. 166-2.) The final page of Kutchek's report lists nine "findings." (S*ee* ECF No. 166-2, at 17.) The findings section states that "it is [Kutchek's] *professional opinion*" that:

1. HP was aware that non-HP approved battery packs were available for sale by third party retailers which could fit into their HP notebooks.

2. HP ensured that its approved battery packs contained various safety protections and underwent various levels of testing and quality control.

3. HP could not ensure any safety protections, testing and quality control for non approved battery packs. This created a risk for its notebook users.

4. HP was aware of the potential safety hazard of using non-HP approved battery packs in their HP notebooks and warned users against it. Power was exposed to this hazard.

5. This combination of hazard and risk created an unreasonably dangerous condition. Power's exposure to this dangerous condition was a cause of his injury.

6. HP failed to authenticate battery packs installed in its notebook computers.

7. HP failed to inform or warn the user of a non-HP approved battery pack installed in its notebook computers.

8. HP failed to have interlocks to prevent the use of non-HP approved battery pack in its notebook computers.

9. Had HP prevented the use of non-HP approved battery packs, this incident would have been prevented. (*Id.*) (emphasis added).

Defendant seeks to preclude Kutchek's testimony on three grounds: first, that Kutchek is not qualified to offer any opinion in this case; second, that his findings are "not based on reliable scientific data or methodology" in that "Kutchek conducted no tests, examinations or investigations" and, with respect to certain issues, his 'work' consisted of a Google search that uncovered patent information that Kutchek admitted was irrelevant;" and third that his opinion evidence is not a fit for the issues in the case because it is irrelevant. (ECF No. 141, at 6–7, 14.) Additionally, at oral argument, the Court raised, and Defendant echoed, the issue of whether Kutchek's "findings" are the appropriate subject of expert testimony under Rule 702—namely that many of them appear to be statements of fact not either within Kutchek's personal knowledge or professional expertise. The Court addresses this issue first as it narrows the scope of the issues to which Kutchek would be permitted to testify to at trial.

a. The form of Kutchek's findings

Generally speaking, it is not the role of an expert witness testifying under Rule 702 to testify to factual matters that are not already in the record and are not within their personal knowledge or a matter of their professional expertise. Rule 703 authorizes experts to *rely on* any information that is "perceived by or made known to the expert at or before the hearing" provided

that it is of a type that is reasonably relied upon by experts in the particular field. *In re TMI Litig.*, 193 F.3d 613, 697 (3d Cir. 1999). The information that an expert relies upon in forming their opinion need not be admissible into evidence, but otherwise inadmissible evidence cannot be disclosed to the jury—and therefore the expert cannot act as a proponent of such factual evidence in the first instance—unless the court determines that its probative value substantially outweighs its prejudicial effect. *Pineda*, 520 F.3d at 246. The fact that an expert reasonably relies on information therefore does not render the underlying facts admissible for substantive purposes, and—even if it can be disclosed to the jury under the "reverse 403" analysis described above—the opposing party may request that the Court give a limiting instruction clarifying that the otherwise inadmissible information cannot be considered as substantive evidence. *See, e.g.*, *United States v. Carey*, 337 F. App'x 256, 261–62 (3d Cir. 2009).

Here, only three of Kutchek's nine "findings" are expert opinions within the meaning of Rule 702: numbers 3, 5, and 9. Number 3 describes Kutchek's assessment of HP's technical capability (or lack thereof) and the associated risk to users; number 5 expresses an opinion about whether the at-issue risk was unreasonably dangerous and the causal relationship between the dangerous condition and Plaintiff's injury; and number 9 expresses an opinion about whether—if HP had prevented the use of non-HP battery packs—this incident is likely to have occurred.

As set forth in detail in the next paragraph, the other six "findings" strike the Court as factual statements that are neither within the professional expertise nor personal knowledge of Kutchek.[1] To the extent that those facts have already been admitted into evidence at the time that Kutchek testifies and were fairly relied upon by him in forming the opinions to which he will

---

[1] Insofar as Plaintiff is able to show at trial that any of 1, 2, 4, 6, 7, or 8 are within the personal knowledge of Kutchek—for example, on the basis of his examination of the at-issue computer—or another witness who testifies, Kutchek shall be permitted to testify as to those facts and the analysis that follows will not apply.

testify, he can discuss them as part of his opinion testimony. However, to the extent that those factual statements have not been properly admitted into evidence at the time that Kutchek testifies and/or were not reasonably relied upon in forming the opinions he is qualified to offer, Kutchek will not be permitted to discuss them as part of his testimony unless they are permitted to be disclosed under the reverse 403 analysis described above.

Numbers 1 and 4 are factual statements about what HP was in fact aware of—not what it reasonably should have been aware of. Thus, they seem to be neither within Kutchek's personal knowledge nor within the ambit of his professional expertise. Numbers 2, 6, 7, and 8 are factual statements about what HP did or failed to do. Thus, similarly, they seem to be neither within the personal knowledge or professional expertise of Kutchek.  Though some of these "findings" may well come into evidence through other proponents or record materials, unless Plaintiff is able to demonstrate that—contrary to the Court's assessment—they are within the personal knowledge of Kutchek, the Court concludes that Kutchek cannot testify to them in the first instance.

b.  Qualifications

In sum and substance, HP argues that Kutchek is not qualified to testify as to the issues in this case because his training is in electrical engineering rather than design or manufacture of battery packs, battery cells, printers, and notebooks. (*See* ECF No. 141, at 11–12.) Although Kutchek has experience conducting forensic investigations of battery fires and explosions—and even has experience with 18650 lithium ion battery cells, the very type at issue in this case— Defendant argues that such experience does not qualify Kutchek to testify because his experience with 18650 cells is limited to vape pens, which have a single 18650 cell, while the at-issue computer has a series of 18650 battery cells. (*Id.*)

This argument is without merit. As long as an expert possesses relevant qualifications as

to a topic or area of knowledge, the fact that they do not have special skills in the most relevant subspeciality does not render them unqualified to testify. *See, e.g.*, *Pineda*, 520 F.3d at 245 (engineer with special knowledge of glass qualified to testify in failure to warn case involving a glass break on a Ford Explorer, despite not being a "warnings expert"); *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 781–82 (3d Cir. 1996) (doctor specializing in internal medicine qualified to render an opinion regarding the diagnosis of mesothelioma and related treatment even though he was not an oncologist, pathologist, or expert in definitive cancer diagnosis). It is an abuse of discretion for a trial court to exclude expert testimony simply because it "does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Pineda*, 520 F.3d at 244 (quoting *Holbrook*, 80 F.3d at 782. Those are issues that can be raised on cross-examination. *See, e.g.*, *Coleman v. Young*, No. 09-cv-1186, 2010 WL 3199889, at *2 (M.D. Pa. Aug. 12, 2010) (finding a vocational and economics expert qualified to testify and noting that "[d]efendant's contentions regarding [the] expert['s] qualifications are best addressed in his cross-examination").

Kutchek is an electrical engineer and certified fire and explosion investigator. He has had significant involvement with investigations of explosions of the very type of battery cells at issue in this case. His professional training and experience, though perhaps not uniquely tailored to the facts at issue here, clearly render him helpful to a layperson trying to understand how and why this explosion happened and what could have been done differently to prevent it. To the extent that Defendant believes that Kutchek's qualifications leave something to be desired, that is an issue that can be raised during his cross-examination.

    c.  <u>Reliability</u>

Defendant levels of a whole host of arguments designed to show that Kutchek's proffered

testimony is not based on a reliable methodology. Defendant argues that Kutchek's methodology fails to evince each *Daubert* indicia of reliability[2] in that Defendant did not conduct any experiments or tests, did not obtain an exemplar Elitebook, and never disassembled the Elitebook, and admitted to not knowing what safety features the Elitebok has, did not review an electrical schematic, and displayed ignorance at the deposition about several significant factual matters: when he was deposed, Kutchek did not know if Power bought the Elitebook that he owned before the at-issue computer new or used, and therefore did not know what warnings Power had received. (ECF No. 141, at 13.) Kutchek did not know, and made no attempt to learn, what the condition— either physically or in terms of software—of the at-issue computer was at the time that Power received it. (*Id.*) Defendant also cast aspersions on the fact that Kutchek's manner of researching the availability of certain technologies was to conduct a Google search regarding patents, arguing that a Google search "is not generally accepted science."[3]  (*Id.* at 14.)

Having narrowed or clarified the scope of Power's testimony as described above, the Court concludes that the methodology underlying such testimony—though perhaps vulnerable to criticism on cross-examination—satisfies the reliability requirement of *Daubert*. A process is reliable if it is based on "good grounds," that is if it is "based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *In re Paoli*, 35 F.3d at 741–43 (citations omitted). There may be good grounds for an expert's conclusion "even if the judge

---

[2] In assessing the reliability of an expert's methodology under *Daubert*, the trial court must consider: (1) whether a method consists of a testable hypotheses; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness; and (8) the non-judicial uses to which the method has been put. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 746 (3d Cir. 2000).

[3] Defendant also points out that the evidence relating to patents that either related to authentication technology in products other than computers or that post-date the design and manufacture of the at-issue laptop. The Court treats this argument under its analysis of "fit."

thinks that there are better grounds for some alternative conclusion, and even if the judge thinks that a scientist's methodology has some flaws such that if they had been corrected, the scientist would have reached a different result." *Id.* at 744.

While a litigant must make more than a prima facie showing that their expert's methodology is reliable, "[t]he evidentiary requirement of reliability is lower than the merits standard of correctness." *Pineda*, 520 F.3d at 247 (quoting *In re Paoli*, 35 F.3d at 744). Though a trial court should consider the *Daubert* indicia of reliability set forth in n.2 above, a court has the discretion to consider other additional factors and to determine whether all of these designated factors must be considered in every case. *Elcock*, 233 F.3d at 746; *see also Pineda*, 520 F.3d at 248 (noting that the factors "are neither exhaustive nor applicable in every case") (citations omitted).

Kutchek reviewed sworn testimony from HP representatives regarding the type of technology that was used in the at-issue computer. (*See* ECF No. 166-2, at 2, 5–6.) Kutchek also examined the at-issue computer and analyzed scans of it, and observed that "[t]he evidence shows that two of the eight battery cells have experience[d] thermal runaway and exploded and have expelled their contents," further noting that there was no evidence indicating that the HP notebook battery controller circuit had been replaced. (ECF No. 166-2, at 13, 15.)

The Court is aware of no authority, and the Defendant cites none, to indicate that in order to opine about the cause and circumstances of such an explosion, an expert—who, the Court emphasizes, is an electrical engineer by training and fire/arson forensic investigator who has been involved in investigations of over twenty exploding lithium ion batteries—would need to run tests on the at-issue computer or a similar exemplar in order to draw conclusions about the cause of an explosion. Kutchek has a professional's knowledge of how batteries work and what causes them

to explode or prevents them from exploding. Having examined the at-issue computer, viewed scans of it, and read sworn testimony from HP's own representatives about the functioning of the computer, Kutchek concluded—in sum and substance—that HP could not ensure the safety of third-party battery packs such as the one at issue here, that the hazard posed by the situation here was unreasonably dangerous and caused Power's injury, and that if HP had prevented the use of non-HP battery packs, the situation would have been prevented. These opinions are hardly unsupported beliefs or speculation, and the Court concludes that the methodology underlying them is reliable. That Defendant has enumerated a number of ways in which, at least arguably, Kutchek could have rendered his analysis *more* thorough or reliable—for example by obtaining a similar exemplar computer and running experiments—is of no moment. The function of the Court at this point is as a gatekeeper, ensuring that testimony that does not reach the reliability threshold set by *Daubert* is not presented at trial. Here, that threshold is met, and such testimony will not be excluded on reliability grounds.

       d.  <u>Fit</u>

      The major issue as to the fit between Kutchek's testimony and the issues in this case relates to Kutchek's reliance on research regarding the existence of patents to draw conclusions about the availability of technology that—in his view—would have enabled HP to authenticate installed battery packs and therefore give users a real time on-screen pop-up warning alerting the user to the fact that a non-HP (and therefore unsafe) battery had been installed. Defendant argues[4] that such testimony should be precluded because all but one of the patents Kutchek relied upon pertained to inkjet printers and mobile phones (rather than computers) and furthermore that many

---

[4] Defendant casts this as an issue of reliability. Though it is not wholly incorrect to do so, *see, e.g.*, *Freedom Mortg. Corp. v. Loancare, LLC.*, No. 16-cv-2569, 2023 WL 2570201, at *3 (D.N.J. Mar. 20, 2023) (noting the overlap of fit and reliability requirements), the Court views it as more appropriately an issue of fit and analyzes it as such.

others, including the only patent relating to notebook computers, post-dated the design and manufacture of the at issue computer.[5] (*See* ECF No. 141, at 15.)

The "fit" element goes "primarily to relevance." *Daubert*, 509 U.S. at 591. However, "the standard for fit is higher than bare relevance," and it is primarily a requirement that the expert's scientific knowledge be "connected to the question at issue." *In re Paoli*, 35 F.3d at 745 n.13.

In short, the fit between Kutchek's analysis and the issues in this case is insufficiently tight.[6] The Parties agree that the at-issue laptop was manufactured on August 18, 2009. (*See* ECF Def.s' SMF ¶ 19; Pl.'s SMF ¶ 19.) Of the patents referenced, only three have application dates predating the manufacture of the at-issue computer—not to mention its design. (*See* ECF No. 166-2, at 16–17.) Of those three, all three relate not to authentication technology in laptop computers, but instead to ink cartridge authentication. (*See id.*)

The existence of patents that post-date the design and manufacture of the at-issue computer are irrelevant to the question of whether HP could or should have employed authentication technology to issue real-time pop-up warnings on the at-issue computer. Moreover, the fact that such technology existed, at the time of the design and manufacture of the at-issue computer, as to cartridge authentication in inkjet printers is not obviously relevant to the question of the feasibility of its use as to battery packs in laptop computers, and Kutchek's report does virtually nothing to

---

[5] With an eye toward the reliability of Kutchek's analysis, Defendant also argues that the Google search that Kutchek used to investigate the existence of patents is an "unverifiable internet search" and "not generally accepted science." (ECF No. 141, at 12.) With all due respect, the fact that Kutchek's method of gathering information was a Google search is not the problem here. If the patents that Kutchek found via a Google search were a good fit for the issues in this case, the fact that Kutchek's method for learning about the existence of those patents was Google would not, by itself, render his testimony unreliable.

[6] The Court notes that there is a further question—as discussed at Oral Argument—about whether such an opinion is fairly contained in the report under Fed. R. Civ. P. 26(a)(2)(B)(i). Plaintiff's position, as articulated at argument, is that it is a "fair extrapolation" from what is written in the report. Because the Court concludes that, even if fairly disclosed in the report, such an opinion is not a fit for the issues in this case, the Court does not decide whether it was fairly disclosed in the report in keeping with Rule 26 here.

explain the connection between the two.

Because of the lack of fit between the data underlying Kutchek's opinion regarding the existence of authentication technology that would have enabled HP to issue a real-time warning that a non-HP battery had been installed and the issues in this case, the Court concludes that Kutchek will not be permitted to offer any opinion as to the existence of such a technology, or offer any opinion that relies upon the existence of such technology.

The Court therefore grants in part and denies in part Defendant's Motion to Preclude the Testimony of Kenneth J. Kutchek, PE (ECF No. 141.) Kutchek will be permitted to testify only as to opinions 3, 5, and 9—unless (1) Plaintiff demonstrates that any of the other numbered "findings" listed in Kutchek's report are within Kutchek's personal knowledge; (2) those "findings" have otherwise been admitted into evidence and were appropriately relied upon by Kutchek in forming the opinions that he is permitted to offer; or (3) Kutchek testifies that he relied upon those "findings" in forming the opinions to which he is permitted to testify, doing so was legally proper, and Plaintiff shows that the probative value of their disclosure substantially outweighs the resulting prejudicial effect. Kutchek will not permitted to testify as to the existence or use of pop-up authentication technology or offer any opinion that relies upon the existence (or not) or use of such technology.

### (3) Kitzes

William F. Kitzes, J.D. ("Kitzes") is a lawyer by training who works as a Board-Certified Product Safety Manager and Hazard Control Manager. (ECF No. 184-1.) Kitzes' professional experience includes employment as a Legal Advisor at the U.S. Consumer Product Safety Commission and extensive consulting for private companies on product safety issues and the development of product safety warnings. (ECF NO. 164-1, at 5–8.) Kitzes prepared a report

detailing the ways in which, in his professional opinion, HP failed to act reasonably and prudently as a manufacturer to adequately protect computer users from the harm resulting from the foreseeable use of replacement batteries in their laptop computers. (*See id.* at 12–13.) Kitzes summarized his findings in five opinions. (*Id.*)

Defendant argues that Kitzes fails to meet all three pre-requisites for expert testimony under Rule 702 and therefore should be precluded from testifying. (ECF No. 154, at 8–13.)

      a.   Qualification

Defendant argues that Kitzes is an attorney who is unqualified to make the scientific and technical analyses necessary to determine which, if any, hazard(s) the at-issued computer posed to consumers. (*Id.* at 8.) Defendant makes much of the fact that Kitzes has been found by some other courts to be unqualified to offer opinions regarding product safety warnings, and further seems to argue that—in order to be qualified to offer opinions regarding what hazards were presented and which warnings should have been given—Kitzes would have to have specific education, training, and/or professional expertise in notebook design or manufacture, or battery pack design or manufacture. (*See id.* at 8–9.)

Plaintiff counters that Kitzes is qualified as an expert in product safety and control, pointing to his "wealth of experience with respect to product safety," and the fact that—although Kitzes has been found to be *un*qualified by some courts—he has been found to be qualified to opine on product safety and warning issues by other courts. (*See* ECF No. 164, at 6–7.)

Defendant's objection to Kitzes' qualifications are unavailing here. In short, given some fixed set of information about what accidents or incidents have occurred, one need not be an expert in battery pack design[7] to evaluate the hazards posed to consumers and formulate a strategy for

---

[7] The Court also notes that some of the cases that Defendant marshals to support their claim that Kitzes ought to be found to be unqualified to testify about every issue in this case are inapposite. For example, in *Walker v. Bell Sports,*

appropriately communicating those hazards to consumer. The fact that a product safety expert who *also* would had a technical background in computer or battery pack design/manufacture might be *better* positioned to offer an opinion in this case is of no moment. *See, e.g.*, *Keller v. Feasterville Fam. Health Care Ctr.*, 557 F. Supp. 2d 671, 675 (E.D. Pa. 2008) (citing *Holbrook*, 80 F.3d at 782).

     b.  <u>Reliability</u>

Defendant opposes Kitzes' proffered testimony on the grounds that it is not based on a reliable methodology. (ECF No. 154, at 9–12.) As relevant across the board, but particularly as to opinions 1, 2, 3, and 5, Defendant argues that the fact that Kitzes did not articulate a testable hypothesis, did not consult "much less expressly reference" industry standards, and did not speak to Plaintiff about the warnings he received render his methodology in general unreliable. (*Id.*) As with Defendant's objections to Kutchek, the Court finds these generalized objections unpersuasive. Rule 702 requires that an individual purporting to testify as an expert employ a reliable methodology. Here, we have a product safety management expert who reviewed the factual record regarding the information that was available to a company about specific issues with a particular product and applied his technical knowledge and experience to reach a conclusion about what a prudent manufacturer would do with the relevant information. Nothing further is required to render Kitzes' methodology reliable.

More significant, however, is Defendant's argument regarding the reliability of the methodology underlying opinion 4 in Kitzes' report—that "[b]y late 2007, HP developed a battery

---

*Inc.*, No. 17-cv-1483, 2018 WL 8140948 (N.D. Ga. Aug. 24, 2018), Kitzes was found to be unqualified to testify *as to the proper fit of bicycle helmets and alternative methods of showing consumers how to properly wear bicycle helmets. Id.* at *2. However, he was found to be qualified to testify regarding the adequacy of the defendant's warnings and, particularly, the sufficiency with which defendant communicated the relevant dangers to consumers. *Id.* at 3.

authentication system for certain laptops to identify 'counterfeit' battery packs, yet the subject HP EliteBook did not include such a system to identify non-HP batteries." According to Defendants, the methodology underlying that opinion is unreliable because the its "sole source . . . is a document [that] Kitzes claimed to have found on HP.com," which "was published on September 29, 2020—over ten years after the manufacture" of the at-issue computer. (ECF No. 154, at 11.)

Kitzes indeed admitted in his deposition that the source of his belief that pop-up authentication technology existed at the time of the at-issue's computer manufacture was the cited document (ECF No. 154-1, at 68:16–25, 69:1–4.) The cited document indicates that it "pertains to HP notebook computers with the HP Unified Extensible Firmware Interface beginning in late 2008." (*See* EF No. 154-2, at 5.) The document references error message number 605, which reads: "Battery Counterfeit Check Error (605)—a non-HP battery was detected. If you purchased the battery from a reseller, contact HP." (*Id.* at 6.)

Defendant submitted an affidavit from an HP representative averring that the at-issue document was created on or about September 29, 2020 and that error message 605 "did not exist in HP notebook computers in 2008 or in 2009. Rather, that message was added to HP computers in or around September 29, 2020." (*Id.* at 2–3.) Nowhere in the record has Plaintiff disputed the contents of the affidavit.

If that were the end of the story—that is if that the sole source of Kitzes' opinion about the existence of pop-up technology was a document whose contents, as relevant here and as indicated by uncontroverted evidence, postdates the manufacture of the at-issue computer by twelve years— then the Court would likely determine that the methodology underlying opinion 4 in Kitzes' report was unreliable and prevent him from testifying as to it.

However, HP's affidavit fails to comply with the requirements of Fed. R. Civ. P. 56(c)(4),

which requires that an affidavit used to support or oppose a motion for summary judgment—as ultimately this *Daubert* motion purports to do—be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. The affiant, Theresa Klusendorf, is Litigation & Disputes paralegal at HP. (*See* ECF No. 154-2 at 2.) Her knowledge of the state of the technology is admittedly second-hand in that it is based on a conversation with HP's unnamed Computing Operations Lead, who she says has personal knowledge of the contents of the affidavit. (*See id.*)

Because Kluseondorf's affidavit is in violation of Rule 56(c)(4), the Court denies Defendant's motion without prejudice as to Kitzes' testimony regarding the availability of pop-up authentication technology. If, at trial or at a pretrial hearing pursuant to FRE 104, HP can bring forward a witness with personal knowledge competent to testify on the matters addressed in the affidavit, the defense may renew its *Daubert* motion as to Kitzes' opinion regarding the availability of pop-up authentication technology. For now, the Court will strike Klusendorf's affidavit (ECF No. 154-2) from the record as being non-conforming with the relevant Rule and as failing to advance probative evidence.

c. <u>Fit</u>

Defendant's main argument regarding the fit/relevance of Kitzes' opinions appears to concern the "warnings a defendant manufacturer should have given." Defendant argues that Kitzes opinion on that front is irrelevant because there is no evidence that HP should have been aware of the risk associated with aftermarket batteries in 2008. (ECF No. 154, at 12–13.) On the Court's reading of the record, this contention is false: Kitzes' report cites to a number of press releases that concern fires and explosions involving HP notebooks (*see* ECF No. 164-1), and the record evidence—by Defendant's own admission—demonstrates that Defendant warned end-users of the

dangers associated with using non-HP batteries prior to the incident at issue here (*see* ECF No. 150, at 2). Thus, Defendant's argument that HP had no reason to be aware of the risks associated with aftermarket batteries is implausible, and Kitzes' opinions on the question of what warnings HP should have given are admissible unless otherwise noted.

Finally, HP argues that as to Kitzes, the law prohibits experts from rendering a legal opinion—that is from stating that HP failed to act as a reasonably prudent manufacturer under the circumstances. To support this argument, Defendant cites *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006). In *Berckeley*, the issue was whether a former SEC lawyer could testify regarding legal conclusions—particularly whether it was reasonable for the plaintiff in that case to have believed that it would be entitled to certain exemptions under Section 4(1) of the 1933 Securities Act. *Id.* at 217–19. *Berckeley* does nothing to advance Defendant's argument because the issue there was whether the legal expert's proffered testimony would run afoul of the prohibition on an expert testifying *as to the governing law of the case* because doing so would "usurp the District Court's pivotal role in explaining the law to the jury." *Id.* at 217 (concluding that an expert could testify as to industry standards and practices around the interpretation of a statute but not as to compliance with the substantive law).

Here, Kitzes does not purport to testify as to the law governing this case—that is, as to applicable principles of Pennsylvania products liability law. Instead, he is offering his opinion, as a products safety expert, regarding whether HP behaved as a reasonably prudent manufacturer would in the circumstances. This falls squarely within FRE 704, which permits an expert witness, subject to certain exceptions not relevant here, to give testimony that embraces an ultimate issue to be decided by the trier of fact. Thus, Kitzes opinions which essentially concern HP's negligence are not improper.

Defendant's Motion to preclude Kitzes' testimony is denied. Given the Court's ruling as to the Klusendorf affidavit, this denial is without prejudice as to Defendant's argument regarding the unreliability of the methodology underlying Kitzes' opinion that the technology existed to provide pop-up authentication warnings.

### b. Plaintiff's Motion to Expand the Record and Conduct a Testimonial Daubert Hearing

At oral argument, counsel for Plaintiff stated that, if the court is inclined to grant the *Daubert* motions, Plaintiff would request a testimonial *Daubert* hearing. Plaintiff supplemented that request with a written Motion to Expand the Record and Conduct a Testimonial *Daubert* Hearing (ECF No. 193), which Defendant opposes (*see* ECF No. 195). Plaintiff and Defendant both cite to cases that concern when a Court must hold a hearing on a *Daubert* motion in the first instance. (*See* ECF No. 193, at 3; ECF No. 196, at 2–3.) Even if that were the posture of this litigation, Plaintiff's arguments are unavailing.

Plaintiff correctly points out that, in some circumstances, failure to hold a *Daubert* hearing constitutes an abuse of discretion. *See Padillas v. Stork-Gamco Inc.*, 186 F.3d 412, 418 (3d Cir. 1999). However, *Padillas* stands for the proposition that a *Daubert* hearing is required "when the record does not clearly explicate the basis of the proffered expert opinion such that the reliability determination cannot be made." *Kerrigan v. Maxon Indus.*, 223 F. Supp. 2d 626, 633 (E.D. Pa. 2002). In *Padillas*, the district court apparently *only* had the expert report, which was conclusory and brief, but the record apparently did not contain a deposition of the at-issue expert. *See id.*; *Padillas*, 186 F.3d at 416–18.

However, in *Oddi v. Ford Motor Co.*, 234 F.3d 136 (3d Cir. 2000), the Third Circuit held that the district court did not abuse its discretion in denying the plaintiff's motion for a *Daubert* hearing because the plaintiff did not proffer that new or additional information would be offered

at the hearing, and there was a sufficient factual record (depositions and affidavits) on the experts. *Id.* at 154. "Nothing more was required" for the court to make the determinations required to rule on the defendant's *Daubert* motion, and plaintiffs were not entitled to "an open-ended and never-ending opportunity" to meet the *Daubert* challenge until "they get it right." *Id.*; s*ee also Senese v. Liberty Mut. Ins. Co.*, 661 F. App'x 771, 775–76 (3d Cir. 2016) (affirming district judge's decision not to hold a *Daubert* hearing, citing *Oddi*, where "the basis for the expert's testimony was clear and the record was adequate to support a determination on admissibility" and the plaintiff "had ample opportunity to explain to the [c]ourt the basis" for the expert's opinions through the submission of two expert reports and two briefs).

Here, as in *Oddi*, the record contains CVs, expert reports, and depositions from all three of Plaintiff's experts. Plaintiff also had the opportunity to seek leave to supplement the reports after the depositions were conducted. Therefore, there appears to be ample fodder for the Court to make a determination on the *Daubert* motion, and the Plaintiff has had a fair opportunity to meet the *Daubert* challenge. And here, as in *Oddi*, Plaintiff has not proffered with any specificity what additional information would be put into the record during the requested hearing that would nonetheless be within the four corners of the disclosed expert reports, so it's not clear to the Court what additional information it would glean from having the requested hearing. (*See* ECF No. 193, at 3) ("[I]f the Court believes that a *Daubert* hearing would be helpful to understand the methodology, reliability, and qualifications of [P]laintiff's preferred experts . . . [P]laintiff requests that this Court expand the record so that the *Daubert* hearing may be conducted.)  Thus, under *Padillas* and *Oddi*, even if the Court has not already held a hearing on the *Daubert* motions, it is not clear that it would be obligated to do so.

However, beyond that, the Court already held a *Daubert* hearing. The scheduling Order

for oral argument stated that "counsel shall be prepared to argue all pending motions," (*see* ECF No. 188)—three out of four of which were *Daubert* motions. Had Plaintiff wanted to put his experts on the stand to shore up their eligibility to testify under *Daubert* and Rule 702, he could have done so, or at least indicated his intention to do so prior to the hearing.

Therefore, Plaintiff's Motion to Expand the record and conduct a testimonial *Daubert* hearing is denied.

## IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's Motion to Preclude Plaintiff's Medical Expert, Michael Drew, MD, FACS, from Offering an Opinion regarding Plaintiff's Alleged Incontinence (ECF No. 139); **GRANTS IN PART AND DENIES IN PART** HP's Motion to Preclude Testimony from Kenneth W. Kutchek, P.E. (ECF No. 141); **DENIES** HP's Motion to Preclude Testimony from William F. Kitzes, J.D. (ECF No. 142, also on the docket at ECF No. 153); and **DENIES** Plaintiff's Motion for a further *Daubert* hearing (ECF No. 193). The denial of the motion regarding Kitzes is without prejudice as to Defendant's renewal at trial of its argument regarding the unreliability of the methodology underlying Kitzes' opinion regarding the availability of pop-up authentication warnings. The Court will strike the Klusendorf affidavit (ECF No. 154-2) from the record.

An appropriate Order will issue.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated:  March 30, 2023

25